**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JOHN WALDRON,** | Case No. 2:22-CV-03556 |
| Plaintiff, | |
| | Judge Edmund A. Sargus, Jr. |
| v. | Magistrate Judge Elizabeth P. Deavers |
| **CHRIS BROWN, ET AL.,** | |
| Defendant. | |

---

**DEFENDANT CHRIS BROWN'S**
**MOTION TO DISMISS, STAY, OR TO TRANSFER FOR IMPROPER VENUE**

---

Defendant Chris Brown ("Mr. Brown"), through undersigned counsel, moves the Court to dismiss this action in its entirety or, alternatively, to stay this action pending a resolution in parallel state court proceedings. Should the Court decide that a stay is improper, the case should be transferred to the Southern District of New York.

As discussed more thoroughly in the attached Memorandum in Support, the action should be dismissed pursuant to the Supreme Court of the United States' decision in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or at the very least, stayed pursuant to the *Colorado River* doctrine and this Court's inherent authority.

If the Court entertains jurisdiction and decides that this case must proceed forward now, the Court should dismiss this case pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. Plaintiff John Waldron ("Plaintiff") failed to join a necessary, indispensable party, and a just adjudication is impossible without that party's presence. Alternatively, should the Court

1

permit Plaintiff the opportunity to join that absent party, the Court should order the absent party joined.

Even if Plaintiff overcomes these obstacles, or even if Plaintiff joins the absent party, the Complaint [Doc. No. 1] fails to state a cognizable cause of action. Accordingly, pursuant to Rule 12(b)(6), the Complaint should be dismissed for the failure to state a claim upon which relief can be granted.

Finally, the case should be dismissed, or alternatively transferred, because of improper venue pursuant to Rule 12(b)(3). This case concerns contractual obligations, and the contract outlining those obligations requires any dispute arising out of or related to the contract to be litigated in New York. Accordingly, this case should be dismissed or, alternatively, transferred to the U.S. District Court for the Southern District of New York.

Respectfully submitted,

*/s/ William M. Mattes*
William M. Mattes (0040465)
Justin M. Burns (0093686)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Tel: (614) 628-6880
Fax: (614) 628-6890
Email: bill.mattes@dinsmore.com;
justin.burns@dinsmore.com

*Counsel for Defendants CBE Touring, LLC
and Chris Brown*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOHN WALDRON,** | Case No. 2:22-CV-03556 |
| Plaintiff, | Judge Edmund A. Sargus, Jr. |
| | Magistrate Judge Elizabeth P. Deavers |
| v. | |
| **CHRIS BROWN, ET AL.,** | |
| Defendant. | |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT CHRIS BROWN'S
MOTION TO DISMISS, STAY, OR TO TRANSFER FOR IMPROPER VENUE**</u>

## TABLE OF CONTENTS

SUMMARY OF ARGUMENTS ........................................................................................ v

MEMORANDUM IN SUPPORT ....................................................................................... 1

I.     BACKGROUND ...................................................................................................... 3

       A.    Multiple Parties Become Involved in First-Filed Matters in the State of Texas Concerning DML Real Estate's Cancellation of The One Night Only Tour ........................................................................................................ 3

             1.    DML Real Estate Files Suit in Texas – *Texas Action One* ......................... 3

             2.    Non-Party 7 Kings 1 Limited Liability Company Files Suit in Texas (*Texas Action Two*) and the Suits Are Consolidated (*Consolidated Texas Action*) ............................................................................................. 5

       B.    Plaintiff Files Suit in the Southern District of Ohio Based Upon Factual Allegations That Contradict Allegations Made in the *Consolidated Texas Action* ...................................................................................................... 7

II.    LEGAL STANDARD ............................................................................................. 8

III.   DISCUSSION AND ANALYSIS ............................................................................ 9

       A.    The Court Should Dismiss or Stay the Case Pursuant to *Colorado River* Abstention or the Court's Inherent Authority ....................................................... 10

             1.    The Court should stay the matter under the *Colorado River* doctrine ....... 10

                   a.    The *Federal Action* is parallel to the *Consolidated Texas Action* ............................................................................................ 11

                   b.    The factors relevant to *Colorado River* abstention lean in favor of abstention ........................................................................ 14

                         i.    First Factor: Whether property is at issue is largely irrelevant ......................................................................... 15

                         ii.   Second Factor: The convenience of the federal forum weighs in favor of abstention, albeit slightly ................... 15

                         iii.  Third Factor: Avoiding piecemeal litigation – a "paramount" factor in the analysis – leans heavily in favor of abstention .......................................................... 17

ii

iv.     Fourth Factor:  Texas state courts have the first-filed action regarding the dispute and have also had more progress than this Federal Action, thereby causing the jurisdictional issue to weigh in favor of abstention ..........19

v.     Fifth Factor:  Because no federal claims exist, the source of governing law favors abstention .......................20

f.     Sixth Factor:  The adequacy of the Texas forum may weigh against abstention, but only because Plaintiff filed contradictory allegations in this Federal Action. ...............21

g.     Seventh Factor:  The Texas state court is further ahead and already issued an order in one of the underlying matters, and therefore the seventh factor weighs in favor of abstention....................................................................22

h.     Eighth Factor:  Because state and federal courts have concurrent jurisdiction, the eighth factor weighs in favor of abstention....................................................................22

c.     Dismissal rather than a stay is appropriate under the circumstances. ................................................................23

2.     The Court should stay the matter under its inherent authority..................24

B.     If the Court  Elects  Not to Dismiss or Stay the Action in Light of the *Consolidated Texas Action*, Plaintiff's Complaint Should Be Dismissed for the Failure to Join a Necessary and Indispensable Party .......................................27

1.     DML Real Estate is a necessary party to this *Federal Action* ..................28

2.     Joinder of DML Real Estate is feasible ....................................................32

3.     Alternatively, if joinder is not feasible, the case should be dismissed ......32

C.     If the Court Proceeds with This Action Despite the Risk of Inconsistent Judgments, Then Plaintiff's Complaint Should Be Dismissed for the Failure to State a Claim .......................................................................................................35

1.     Count One:  Plaintiff's unjust enrichment Claim fails because, among other things, plaintiff failed to allege facts plausibly suggesting such enrichment exists and because Plaintiff attempts to improperly convert a contract-based claim into a separate quasi-contract claim .........36

2.    Count Two:  Plaintiff's promissory estoppel claim fails because a
      contract governs the subject matter of this dispute ....................................39

3.    Count Three:  Plaintiff's fraud claim should be dismissed because it is
      duplicative of a contract-based claim and, in any event, fails to state or
      otherwise state a claim with particularity ...................................................40

      a.    Plaintiff cannot convert a contract-based claim into a tort ...........40

      b.    Plaintiff fails to allege his fraud claim with particularity .............41

4.    Count Four:  Plaintiff failed to allege the conversion of specific,
      identifiable funds, and thus his conversion claim fails as a matter of
      Law ............................................................................................................44

D.    Should This Court Hear Any Claim in This *Federal Action* That Survives
      Dismissal, the Case Should Be Transferred To a Federal Court in New York
      County ...........................................................................................................45

IV.   CONCLUSION .........................................................................................................49

## SUMMARY OF ARGUMENTS

Pursuant to S.D. Ohio Civ. R. 7.2(a)(3), Defendant Chris Brown ("Mr. Brown") submits the following summary of argument together with citations to supporting authority. This case should be dismissed, stayed, or transferred for several reasons:

**Abstention** (*pages 10–27*). As Defendant CBE Touring, LLC ("CBE Touring") explained its Motion to Dismiss, Stay, or to Transfer for Improper Venue (the "CBE Touring Motion"), this case should be dismissed or stayed pursuant to the *Colorado River* doctrine and this Court's inherent authority. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court of the United States held that "federal courts may abstain from hearing a case solely because there is similar litigation pending in state court." *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (unpublished) (citing *Colorado River*, 424 U.S. at 800). *Colorado River* abstention is appropriate here because this federal matter is parallel to a pending state court matter in Texas (*pages 11–14*) and because the factors this Court considers lean in favor of abstention (*pages 14–23*). Indeed, the "paramount" factor in the analysis – piecemeal litigation – undoubtedly weighs strongly in favor of abstention considering the contradictory allegations in the various proceedings, the risk of duplication, and the serious risk that parties to this case could face conflicting, inconsistent, and/or duplicative judgments in the two jurisdictions should this case proceed (*pages 17–19*). *See Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998)

Additionally, this Court has the inherent authority to stay this action while parallel action in Texas proceeds (*pages 24–27*). *See Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936). This authority exists even if the Court finds that *Colorado River* abstention is inapplicable. *See Rosenbuaer America, LLC v. Advantech Service & Parts, LLC*, 437 F. Supp. 2d 1081, 1084 (D.S.D. 2006) ("The inapplicability of abstention doctrines in this case does not preclude a stay."). Such a stay is appropriate to conserve resources and, most notably, to prevent

inconsistent judgments and duplicative judgment obligations. Without that stay, two cases litigating the same subject matter will engage in discovery in different forums, litigate the same issues before different judges with different rules of procedure and legal standards, and reach conclusions at different times. This situation risks different courts reaching inconsistent conclusions regarding the same factual matters.

**Failure to Join a Necessary, Indispensable Party** (***pages 27–35***). Plaintiff acknowledges the existence of a contract between a non-party and CBE Touring. That contract controls the core subject matter of this dispute: in exchange for payment of a specified sum, a music artist would perform at a concert in Houston, Texas. That non-party, however, is not a party to this case, even though that non-party will be affected by any judgment in this case. Additionally, because the artist's performance arises out of the contract, Plaintiff's claim that the artist failed to appear necessarily requires the Court to interpret and apply that contract, and it is well-established that all parties to the contract must be named parties before such interpretation and application can occur. *See, e.g., Sch. Dist. v. Sec'y of the United States Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation."). Accordingly, that non-party is a necessary party and must be joined to this case (***pages 28–32***). Fed. R. Civ. P. 19(a)(1).

Joining that non-party is also feasible (***page 32***). Based upon the Complaint, it would appear this Court has jurisdiction over that non-party (any argument otherwise undermines Plaintiff's allegations) and there does not appear to be a subject matter jurisdiction concern. Accordingly, the Court should order that non-party's joinder or otherwise dismiss the case.

Finally, if joining that non-party is not feasible because of jurisdictional concerns or Plaintiff otherwise fails to join that non-party to this case, the case should be dismissed (***pages 32–***

*35*). Without that party, the absent party and Mr. Brown (and CBE Touring) will be prejudiced – prejudice that cannot be mitigated here in light of the threat of "multiple litigation [or] inconsistent relief." *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109, 88 S. Ct. 733 (1968). Indeed, without joinder of that non-party here, it appears different parties will litigate the same fundamental issues in different forums, thereby risking inconsistent and contradictory decisions and judgments.

**Failure to State a Claim** (*pages 35–45*). The Complaint should also be dismissed because Plaintiff failed to state a cognizable claim. First, Plaintiff cannot transform a contractual obligation into a quasi-contractual claim (*pages 36–39*). *See RLFShop, LLC v. Am. Express Co.*, No. 3:17-CV-405, 2019 U.S. Dist. LEXIS 20506, at *21 (S.D. Ohio Feb. 8, 2019) ("It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact."). Plaintiff's attempt to do so here undermines the development of the unjust enrichment doctrine itself, and if the Court allows Plaintiff's claim to proceed, concerning precedent emerges that places contractual obligations in jeopardy.

Second, Plaintiff's promissory estoppel claim fails because a contract covers the dispute (*pages 39–40*). The Complaint is clear that his alleged payment arose out of a contractual obligation. Nothing in the Complaint suggests that contract is invalid or unenforceable. The law is clear that "[a] claim for promissory estoppel cannot be pursued where there is a contract covering the same subject matter." *Han v. Univ. of Dayton*, 2015-Ohio-346, 28 N.E.3d 547, ¶ 46 (2d Dist.).

Third, his fraud claim fails because it is duplicative of a contract-based claim and, in any event, he failed to plead with particularity (*pages 40–44*). As an initial matter, Plaintiff's fraud claim focuses on an alleged breach of a contractual duty (the non-appearance of a musical

performer) and assertions that the duty would be fulfilled. When that contractual duty was allegedly breached, Plaintiff alleges that he suffered damage in the amount of consideration paid under the contract, thereby demonstrating that he suffered no damages that are not otherwise embraced by a contract-based claim. In other words, he has improperly attempted to convert a contract action into a tort action, which requires dismissal. *See, e.g., Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir. 2000); *Ebenisterie Beaubois Ltee. v. Marous Bros. Constr., Inc.*, No. 02-CV-985, 2002 U.S. Dist. LEXIS 26625, at *29–30 (N.D. Ohio Oct. 17, 2002).

The fraud claim is also subject to dismissal because it was not pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff's Complaint contains little information about alleged misrepresentations, and in any event, he wholly failed to plead the minimum requirements of "time, place, and content of the alleged misrepresentation[s]." *See Cadence Bank, N.A. v. Hurl*, No. 2:20-CV-6403, 2022 U.S. Dist. LEXIS 44213 at *5 (S.D. Ohio Mar. 14, 2022) (quotation omitted). Indeed, he improperly states fraud "generally as to all defendants," which under this Court's prior decisions, fails to meet the Rule 9(b) standard. *See United States ex rel. Kramer v. Doyle*, No. 1:18-CV-373, 2022 U.S. LEXIS 92919, at *22 (S.D. Ohio Apr. 21, 2022). Plaintiff compounds that problem by also suggesting that unidentified "agents and/or representatives" were involved, which courts also find fails to satisfy Rule 9(b). *See, e.g., Hamilton v. Fid. Warranty Servs.*, No. 2:15-CV-01142, 2016 U.S. Dist. LEXIS 104473, at *3–4 (N.D. Ala. Aug. 9, 2016) (finding statements attributed to unknown representative fails to allege who was responsible for making the statement). Finally, with respect to fraud, Plaintiff fails to plead *facts* to plausibility (let alone particularly) allege an intent to defraud. *See Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 3d 879, 882 (N.D. Ohio 1998) ("[C]ourts require plaintiffs in

fraudulent misrepresentation cases to allege facts that either show direct evidence or provide a strong inference of fraudulent intent.").

Finally, Plaintiff's claim for conversion fails because he failed to identify specific, identifiable money that has been converted (***page 44***). *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 U.S. Dist. LEXIS 41649, at *86 (N.D. Ohio Mar. 5, 2021) (a conversion claim exists only when there is "specific money capable of identification").

**<u>Venue</u>** (***pages 45–49***).  Finally, even if the Court finds that some claim survives and that all necessary parties are present here, the case cannot be heard here because of a forum selection clause.  A contract controls the subject matter of this action.  Even though Plaintiff is not a signatory on that contract, non-signatories are still bound by forum-selection clauses when they are "closely related" to signatories. *See H.H. Franchising Sys. v. Brooker-Gardner*, No. 1:14-CV-651, 2015 U.S. Dist. LEXIS 94827, at *9 (S.D. Ohio July 21, 2015).  Plaintiff's Complaint makes clear that he paid funds pursuant to a contractual requirement, and in any event, his close relationship with a signatory is clear, if for no other reason than Plaintiff's allegations concede the existence of the controlling contract, the connection between his action and a contractual obligation, and the relationship between his damages and contractual obligations.  This case is thus controlled by that forum-selection provision, which requires this case to be dismissed or otherwise transferred to the Southern District of New York.

For these reasons, Mr. Brown asks that the Court dismiss the action or otherwise stay the proceeding pending resolution of parallel state court proceedings.

## MEMORANDUM IN SUPPORT

Plaintiff John Waldron ("Plaintiff") alleges that this case is about what someone "*agreed*" and "*contracted*" to do. It is thus unclear how Plaintiff can allege quasi-contract claims when he concedes this is a contract case, and it is equally unclear how the law allows him to enforce some provisions in that agreement or contract but nevertheless ignore a forum-selection clause in that same agreement or contract. Of course, those issues are only part of the problem for Plaintiff.

Defendant CBE Touring, LLC ("CBE Touring") already filed a motion to dismiss, stay, or to transfer for improper venue (the "CBE Touring Motion") highlighting the significant legal and substantive problems with Plaintiff's Complaint. [*See* Mot. Dismiss, Doc. No. 19.] As CBE Touring argued, this case cannot go forward for many reasons. First, this case should be dismissed or stayed pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and this Court's inherent authority. Not only would litigation here duplicate efforts currently underway in state court, but Plaintiff's case effectively undermines that state court litigation. Indeed, if Plaintiff's allegations are true, a state court party demanding return of the same funds at issue in this litigation will be undermined, and in doing so, Plaintiff's underlying justification for return is undermined as well. Accordingly, in the interest of judicial economy, this case should not proceed.

Second, Plaintiff failed to join Non-Party DML Real Estate Investors and Construction, LLC ("DML Real Estate") – the party that Plaintiff alleges entered into a contract to secure the appearance of Defendant Chris Brown ("Mr. Brown"), which Plaintiff alleges was the impetus for his claims. Plaintiff alleges that his case arises out of an alleged expectation to have Mr. Brown appear at The One Night Only Tour, which as Plaintiff conceded in the Complaint, was part of a contract with DML Real Estate. As the CBE Touring Motion explained, that contract will play a central role in this litigation, as will the interpretation and application of that contract.

1

Furthermore, if Plaintiff's allegations here are true, then DML Real Estate obviously breached the underlying contract by failing to pay as required by that contract, thereby undermining any expectation that Mr. Brown appear pursuant to that contract.  In either scenario, DML Real Estate is a necessary, indispensable party, and thus the Complaint should be dismissed.

Third, even if Plaintiff can escape these hurdles, his claims are substantively flawed and should be dismissed.  His quasi-contract claims are flawed because as Plaintiff acknowledges, a contract controls any obligations to perform, and any attempt to argue around that reality asks this Court to undermine the bedrock principles behind quasi-contract claims and, in turn, place existing contracts between other litigants in jeopardy.  Additionally, Plaintiff failed to plead his claims with plausibility, and his fraud claim is pled vaguely and without particularity. Accordingly, whether because his claims are substantively flawed or he failed to meet the Court's requisite pleading standards, the conclusion is the same: the Complaint should be dismissed.

Finally, even if Plaintiff has some claim that this Court will consider in DML Real Estate's absence, the case should be dismissed for improper venue or transferred to the Southern District of New York.  No matter Plaintiff's theory, the expectation to have Mr. Brown appear arises out of a contract involving DML Real Estate.  That contract contains a venue-selection provision requiring this case to be litigated in New York.  Plaintiff cannot enforce a provision in that contract requiring Mr. Brown's appearance, only to ignore a provision requiring any suit related to that requirement be filed in New York.  To the extent this case goes forward, it should go forward in the Southern District of New York.

Mr. Brown therefore joins the CBE Touring Motion.  Out of an abundance of caution, however, Mr. Brown reiterates arguments previously made by CBE Touring below, together with additional discussion as matters would apply to Mr. Brown.

# I. BACKGROUND

## A. Multiple Parties Become Involved in First-Filed Matters in the State of Texas Concerning DML Real Estate's Cancellation of The One Night Only Tour

### 1. DML Real Estate Files Suit in Texas – *Texas Action One*.

On August 15, 2022, DML Real Estate filed suit against Mr. Brown, CBE Touring, and Clutch City Sports & Entertainment, LP ("*Texas Action One*"). [*See* Plaintiff's Original Petition, *Texas Action One*, Doc. No. 19-1, Page ID# 131–158.][1] DML Real Estate alleged that it entered into a "Live Performance Agreement" (the "Performance Agreement") with CBE Touring. [Plaintiff's Amended Petition ¶ 10, *Texas Action One*, Doc. No. 19-1, Page ID# 104.][2] The Performance Agreement provided that Mr. Brown would perform at "The One Night Only Tour" to take place at the Toyota Center in Houston, Texas on November 21, 2021, in exchange for a $1,000,000 performance fee (the "Performance Fee"). [*Id.* ¶¶ 10, 13, Page ID# 104–105.] DML Real Estate alleged that it paid an initial $500,000 "as the first installment of the $1 million [P]erformance [F]ee that was due under the [Performance Agreement]" to CBE Touring by wire transfer (the "First Performance Fee Payment"). [*Id.* ¶ 13, Page ID# 105.]

The One Night Only Tour was later rescheduled to March 19, 2021. [*Id.* ¶ 27, Page ID# 109.] Allegedly, on March 15, 2022, a demand was made for the "back end" of the remaining Performance Fee – *i.e.*, the remaining $500,000. [*Id.* ¶ 46, Page ID# 113.] DML Real Estate

---

[1] As CBE Touring explained in the CBE Touring Motion, DML Real Estate filed suit on August 15, 2022, but thereafter amended its petition. Like CBE Touring, Mr. Brown referes to DML Real Estate's amended petition.

[2] Mr. Brown's references to the Performance Agreement refer to "Exhibit 2" to the CBE Touring Motion. As CBE Touring explained, "[A]lthough a court typically cannot consider matters outside of the pleadings when deciding a motion to dismiss . . . a court . . . can consider documents not attached to a plaintiff's complaints when those documents are referenced in the complaint and central to the plaintiff's claim." *Farm Bur. Gen. Ins. Co. of Michigan v. Blue Cross Blue Shield of Michigan*, 655 F. App'x 483, 486 (6th Cir. 2016), fn. 3 (quotation omitted). Plaintiff's claims here focus on an "appearance and performance fee" of "$1,000,000," and Plaintiff tendering one-half of that fee to secure Mr. Brown's appearance at a concert. [Compl. ¶¶ 7–8, Doc. No. 1, Page ID# 2.] Those fee and appearance obligations come from the Performance Agreement, which Plaintiff unambiguously references in Paragraph 7 of the Complaint. This Performance Agreement is also referenced throughout *Texas Action One* (and *Texas Action Two*). [*See, e.g.,* Plaintiff's Amended Petition ¶ 98, Doc. No. 19-1, Page ID# 102–130.]

alleged that DML Real Estate "wired [CBE Touring] another $500,000 on or about March 15, 2022" (the "Second Performance Fee Payment"). [*Id.* ¶ 48, Page ID# 113.]

DML Real Estate alleges that various disagreements and disputes arose concerning the Performance Agreement, including whether modifications to The One Night Only Tour were properly made under the Performance Agreement such that the agreement had terminated. [*See, e.g., id.* ¶ 53 (alleging the right to cure an alleged breach of the Performance Agreement with respect to an improper modification of artist performances), Page ID# 115.] In any event, DML Real Estate alleges that Mr. Brown allegedly made an announcement about not performing at The One Night Only Tour, and DML Real Estate made its own unilateral decision to "cancel the entire event." [*Id.* ¶ 59, Page ID# 117.] Suffice it say, the concert did not take place.

DML Real Estate sued for, among other things, (a) fraud, (b) breach of the Performance Agreement, and (c) vicarious liability. Regarding the fraud claim, DML Real Estate alleged that Mr. Brown (and CBE Touring) had a duty to disclose certain information but failed to do so and that Mr. Brown (and CBE Touring) "did not intend to perform" at the concert which, among other things, allegedly caused payment of the Second Performance Fee Payment. [*Id.* ¶¶ 66–69, Page ID# 118–120.] With respect to the breach of contract claim, DML Real Estate alleged that Mr. Brown "never provided a live performance for [DML Real Estate]" as required under the Performance Agreement, and because DML Real Estate paid the $1 million Performance Fee[3], DML Real Estate suffered damages in the amount of the Performance Fee as consideration for the Performance Agreement. [*See id.* ¶¶ 73–75, Page ID# 120–121.]

---

[3] DML Real Estate also alleges that it paid additional funds. Because that issue is largely irrelevant to this Motion, Mr. Brown only focuses on the Performance Fee.

DML Real Estate also requested injunctive relief. DML Real Estate asked a Texas state court to enjoin Mr. Brown (and CBE Touring) from going forward with another concert in August 2022, which notably, was premised upon DML Real Estate's allegation that it (rather than someone else or someone else acting on DML Real Estate's behalf) had paid the Performance Fee in full. [*See id.* ¶ 103 ("Unless immediately restrained, Defendants CBE TOURING, LLC and BROWN will no doubt give a live performance . . . under the conflicting contract the Defendants have . . . without having specifically performed under the [Performance Agreement] with [DML Real Estate]."), Page ID# 126.] Within two days, a Texas state court judge rejected DML Real Estate's request. [Order Denying Temporary Restraining Order, Doc. No. 19-1, Page ID# 160.]

### 2. Non-Party 7 Kings 1 Limited Liability Company Files Suit in Texas (*Texas Action Two*) and the Suits Are Consolidated (*Consolidated Texas Action*).

On October 6, 2022, Non-Party 7 Kings 1 Limited Liability Company ("7 Kings") sued DML Real Estate in Texas state court ("*Texas Action Two*"). [7 Kings Original Petition ("7 Kings Complaint"), Doc. No. 19-1, Page ID# 162–166.] 7 Kings alleged that it had rights to sue upon an agreement entered into between 7 Kings' predecessor and DML Real Estate. [*Id.* ¶ 9, Page ID# 163] 7 Kings alleged that $40,000 had been loaned to DML Real Estate for The One Night Only Tour, but DML Real Estate failed to pay. [*Id.* ¶¶ 10, 14, Page ID# 163–164.] Upon DML Real Estate's motion, *Texas Action Two* was consolidated with *Texas Action One*. [*See* Doc. No. 19-1, Page ID# 168–175 (DML Real Estate's motion to consolidate and order of consolidation).]

On November 17, 2022, DML Real Estate responded to the allegations made in *Texas Action Two*, which at that point, had been consolidated into *Texas Action One* to create what is referred to herein as the "*Consolidated Texas Action*." DML Real Estate denied the allegations alleged in the 7 Kings Complaint and asserted that any damages were caused by third-parties.

[DML Real Estate General Denial, Doc. No. 19-1, Page ID# 177–180.] The next day, DML Real Estate filed a third-party complaint against CBE Touring and Mr. Brown, which duplicates the allegations made in *Texas Action One*.[4] [*See*, DML Real Estate's Third-Party Petition ("DML Real Estate's Third-Party Petition"), Doc. No. 19-1, Page ID# 182–209.] In other words, if the allegations in the 7 Kings Complaint had merit, DML Real Estate will defend by arguing that Mr. Brown (and CBE Touring) are at fault, and separately, Mr. Brown (and CBE Touring) owe DML Real Estate damages arising out of the Performance Agreement and the cancelled concert.

DML Real Estate's third-party complaint mirrors DML Real Estate's Amended Petition. DML Real Estate's Third-Party Petition again claimed damages arising out of the Performance Agreement and The One Night Only Tour. [*See, e.g., id.* ¶¶ 13–14, Page ID# 184–185.] As was the case in *Texas Action One*, DML Real Estate again alleged that on March 15, 2022, DML Real Estate paid CBE Touring the Second Performance Fee Payment. [*Id.* ¶ 51, Page ID# 194–195.] Consequently, setting aside other issues, DML Real Estate continued claiming damages related to Mr. Brown's failure to appear at the concert and DML Real Estate's position that the entire Performance Fee – First Performance Fee Payment *plus* Second Performance Fee Payment – must be reimbursed to DML Real Estate. [*Id.* ¶ 76 (referencing contract consideration in the full amount of the Performance Fee together with other expenses), Page ID# 202]

DML Real Estate recently provided additional context about its claims in the *Consolidated Texas Action*. On January 20, 2023, DML Real Estate's "Initial Disclosures" were filed to the docket. [*See* Exhibit A.] In those initial disclosures, DML Real Estate again represented that DML Real Estate (not Plaintiff) "wired [CBE Touring] another $500,000 on or about March 15,

---

[4] It appears that according to Texas procedure, DML Real Estate had to non-suit at least a portion of *Texas Action One*. In any event, it appears that after the Texas state court rejected the request for injunctive relief, DML Real Estate nevertheless re-filed its claims against Mr. Brown (and CBE Touring) under the same case number for *Texas Action One*, which was initiated on August 15, 2022. [*See* Docket Sheet, Doc. No. 19-1, Page ID# 211.]

2022." [*Id.* at 12.] DML Real Estate also represented that it is owed the full Performance Fee ($1,000,000 – *i.e.*, First Performance Fee Payment *plus* Second Performance Fee Payment) as damages. [*Id.* at 21.] Finally, DML Real Estate represents that Plaintiff is a witness to the Performance Fee that DML Real Estate represents was paid and the Performance Fee that DML Real Estate claims as damages in the *Consolidated Texas Action*. [*Id.* at 24.]

**B.** **Plaintiff Files Suit in the Southern District of Ohio Based Upon Factual Allegations that Contradict Allegations Made in the *Consolidated Texas Action*.**

On November 23, 2022 – 100 days after *Texas Action One* began and 48 days after *Texas Action Two* began – Plaintiff filed suit in this Court. [*See* Compl., Doc. No. 1.] Plaintiff alleges that his case also arises out of The One Night Only Tour to be held on March 19, 2022 at the Toyota Center in Houston, Texas. He alleges that Mr. Brown did not appear at that concert, and that appearance was controlled by a contract entered into by DML Real Estate. [*Id.* ¶ 7, Page ID# 2.] Specifically, he alleges that in return for a $1,000,000 fee (the Performance Fee), Mr. Brown would perform. [*Id.*] That much, at least, is consistent with the *Texas Consolidated Action*.

Plaintiff alleges that on March 15, 2022, he (not DML Real Estate) paid $500,000 to Mr. Brown, which he alleges was "one-half" of the Performance Fee. [*Id.* ¶ 8; *see also id.* ¶ 12 (Second Performance Fee Payment was intended to secure Mr. Brown's attendance).] Contrary to what DML Real Estate alleged in the *Consolidated Texas Action*, he alleges that <u>he</u> paid that Second Performance Fee Payment (rather than DML Real Estate) and that the payment was made to Mr. Brown (not CBE Touring). [*See id.* ¶ 8.] Additionally, as pled, his payment was part of the same Performance Fee understood under the Performance Agreement between CBE Touring and DML Real Estate. [*See id.* ¶¶ 7–8.] In other words, whomever paid the Second Performance Fee Payment, that payment was made pursuant to the Performance Agreement, and the payor expected Mr. Brown to appear for the concert because the Performance Agreement allegedly

7

required that appearance. [*See id.* ¶ 8 (payment of one-half of the fee was for Mr. Brown to "appear and to perform" at the concert).] Because Mr. Brown did not appear, Plaintiff filed suit.

Plaintiff alleges four claims. First, he alleges "quantum meriut/unjust enrichment," which he alleges was based upon payment of the Second Performance Fee Payment (paid by either Plaintiff or DML Real Estate). [Compl. ¶ 7, Page ID# 2.] Second, he alleges "promissory estoppel," which he alleges was based on certain promises regarding Mr. Brown's planned performance on March 19, 2022. [*Id.* ¶ 17, Page ID# 4.] Third, he alleges "fraud," apparently based on Mr. Brown having "no intention of appearing or performing" at The One Night Only Tour, which he alleges resulted in damages totaling the same amount as the Second Performance Fee Payment. [*Id.* ¶ 27, Page ID# 5.] Plaintiff also claims that various "agents and/or representatives" were allegedly involved in any such representations and solicitations for payment, but the Complaint does not disclose the identity of those individuals or any details about the alleged statements and solicitations. [*See, e.g., id.* ¶ 8, Page ID# 2–3.] Finally, he alleges "conversion" of the Second Performance Fee Payment because allegedly, Mr. Brown did not refund the Second Performance Fee Payment to him. [*Id.* ¶ 31.]

## II.   <u>LEGAL STANDARD</u>

This motion seeks dismissal and/or a stay for multiple reasons. First, as described below, dismissal or a stay is warranted pursuant to *Colorado River* and this Court's inherent authority. The legal standard for these doctrines is described more thoroughly below. [*See* Part III(A), *infra*.]

Second, Mr. Brown moves for dismissal for the failure to join a necessary party. [*See* Part III(B), *infra*.] Rule 12(b)(7) provides for dismissal when, as is the case here, a necessary,

indispensable party must be joined as provided by Rule 19. *See Reilly v. Meffe*, 6 F. Supp. 3d 760, 773 (S.D. Ohio 2014). The rules governing this analysis are thoroughly discussed below.

Third, Mr. Brown moves for dismissal on all claims for the failure to state claim. [*See* Part III(C), *infra*.] Rule 12(b)(6) provides for dismissal when, as is the case here, a complaint fails to state a claim upon which relief can be granted. "To avoid dismissal under Rule 12(b)(6) . . . [the Complaint] 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Assasepa v. JP Morgan Chase Bank*, No. 1:11-CV-156, 2012 U.S. Dist. LEXIS 3491, at *3 (S.D. Ohio Jan. 11, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotation omitted)). Although <u>*factual*</u> allegations in a complaint are accepted as true, "a legal conclusion couched as a factual allegation" does not receive the same presumption of truthfulness. *Id.* (quotation omitted). After ignoring conclusory allegations, there must be sufficient "<u>*factual content*</u>" in the complaint to draw the reasonable inference that the defendant is liable. *Id.* (emphasis added, quotation omitted).

Fourth, Mr. Brown moves for dismissal for improper venue. Rule 12(b)(3) permits dismissal of an action when venue is either "wrong" or "improper." *Arbor Bev. Co. v. Phillips Farms, LLC*, 2015 U.S. Dist. LEXIS 12901, *8 (E.D. Mich. Feb. 4, 2015). Plaintiff "bears the burden of proving that venue is proper." *Rajapakse v. Internet Escrow Servs.*, 2022 U.S. Dist. LEXIS 160271, *4 (E.D. Tenn. Sept. 6, 2022).

### III. DISCUSSION AND ANALYSIS

Mr. Brown joins CBE Touring's motion to dismiss, stay, or to transfer for improper venue [Doc. No. 19]. Mr. Brown therefore analyses the same arguments below, together with additional arguments as they relate to Mr. Brown or reflect developments that occurred after CBE Touring filed the CBE Touring Motion.

**A.** **The Court Should Dismiss or Stay the Case Pursuant to *Colorado River* Abstention or the Court's Inherent Authority.**

The Court should dismiss or otherwise stay this action for two reasons. First, the Supreme Court's *Colorado River* abstention doctrine applies, primarily because there is a risk of conflicting results as between the *Consolidated Texas Action* and this *Federal Action*. The two actions have contradictory factual allegations, and a ruling against Mr. Brown in one forum would necessarily mean that the conflicting allegation in the other is false, thereby not only creating the potential for conflicting results, but if both actions end against Mr. Brown (or CBE Touring), the risk of duplicative judgments and a windfall for others results. Because these concerns are "paramount" in the *Colorado River* analysis, abstention is appropriate. *See Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388, 395 (6th Cir. 2017) (quoting *Romine*, 160 F.3d at 341).

Second, even if the Court declines *Colorado River* abstention, the Court has the inherent authority to stay this action. A stay is appropriate considering the overlapping and duplicative nature of the actions. A stay not only preserves judicial economy, but it also guards against patent unfairness, duplicative judgments, and the possibility of inconsistent verdicts and decisions.

Accordingly, as explained below, the Court should either dismiss this *Federal Action*, or in any event, stay this action unless and until the *Consolidated Texas Action* is resolved.

**1.** **The Court Should Stay The Matter Under the *Colorado River* Doctrine.**

In *Colorado River*, "the Supreme Court held that federal courts may abstain from hearing a case solely because there is similar litigation pending in state court." *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (unpublished) (citing *Colorado River*, 424 U.S. at 818); *Taylor v. KKR & Co., L.P.*, No. 3:21-29-KKC, 2022 U.S. Dist. LEXIS 35577, at *9–10 (E.D. Ky. Mar. 1, 2022) (citing *Bates* for same premise). The power to abstain is a product of "wise judicial administration" focused on the "conservation of judicial resources" and the desire to have a

"comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817.  Even if a court has the power to hear a case, "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Healthcare Co. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019) (quotation omitted) (unpublished).

Deciding whether *Colorado River* abstention applies involves a two-step process.  First, the Court determines whether the *Consolidated Texas Action* and this *Federal Action* are "parallel" actions.  *Romine*, 160 F.3d at 339.  Second, the Court considers various factors and the circumstances of the actions to decide whether abstention is appropriate.  *Id.*  As explained below, *Colorado River* abstention is appropriate here

### a.  This *Federal Action* is parallel to the *Consolidated Texas Action*.

Parallelism for *Colorado River* purposes does not require that the *Consolidated Texas Action* and the *Federal Action* be carbon-copies of one another.  *See Preferred Care of Delaware, Inc. v. Vanarsdale*, 676 F. App'x 388, 393–94 (6th Cir. 2017) ("[T]his court has never held that only a perfect, or even near-perfect symmetry of parties and causes of action would satisfy this requirement.").  As the Sixth Circuit said in *Romine*, "[e]xact parallelism is not required; it is enough if the two proceedings are substantially similar."  160 F.3d at 339–40 (quotation omitted).  This means that actions do not need to have the same claims or even the same parties.  *See Bates*, 122 Fed. Appx. at 806 (citing *Romine*, 160 F.3d at 340).  Rather, actions are "parallel" when the claims center on the "same material facts" or the "same allegations."  *Romine*, 160 F.3d at 340.

The *Consolidated Texas Action* and the *Federal Action* are clearly parallel.  Both actions concern the same material facts and core subject matter – *i.e.*, whether Mr. Brown was obligated to perform at The One Night Only Tour, and if he was obligated to do so and failed to appear,

what the appropriate award of damages is proper under the circumstances and who is entitled to those damages.  [*Compare* DML Real Estate's Third-Party Petition ¶ 12, Doc. No. 19-1, Page ID# 184 (demanding damages because of Mr. Brown's "failure to appear and perform as contractually agreed," which also forms the basis of 7 Kings' "claims against [DML Real Estate]"), *with* Compl. ¶ 12, Doc. No. 1, Page ID# 3 (alleging Second Performance Fee Payment is at issue after the failure to appear).]

The actions will also focus on who actually contracted to secure Mr. Brown's appearance. In the *Consolidated Texas Action*, DML Real Estate alleged that the Performance Agreement was with CBE Touring, whereby in exchange for the Performance Fee paid pursuant to the terms of that Performance Agreement, Mr. Brown would appear at The One Night Only Tour.  [DML Real Estate's Third-Party Petition ¶¶ 13, 16, Doc. No. 19-1, Page ID# 184–185.]  But yet, Plaintiff alleges here that the Performance Agreement was actually with Mr. Brown rather than CBE Touring.  [*See* Compl. ¶ 7, Doc. No. 1, Page ID# 2.]  Naturally, therefore, both actions will focus on the Performance Agreement, and apparently, who contracted with DML Real Estate.

The actions will also both involve defenses regarding any argument that Mr. Brown was contractually obligated to appear, including whether DML Real Estate's actions or (if Plaintiff's allegations are correct) non-payment of the Second Performance Fee Payment excused any further performance by CBE Touring such that Mr. Brown had no obligation to appear.  For example, this would include whether DML Real Estate's allegations about there being no set date by which to tender the Second Performance Fee Payment was indeed true such that DML Real Estate's failure to provide that payment was a breach of the Performance Agreement, thereby rendering any future performance by CBE Touring unnecessary.  [*See, e.g.,* DML Real Estate's Third-Party Petition ¶ 49 (stating no "new date" was agreed for that payment, but not alleging that any original

deadline date had been waived), Doc. No. 19-1, Page ID# 194.]  This would also include arguments about whether DML Real Estate's decision to unilaterally cancel the concert at issue, even if Mr. Brown did not appear, unnecessarily increased DML Real Estate's damages or should otherwise justify reducing any alleged reimbursement amount.  Finally, there will be considerable overlap in the communications between those involved with respect to *who* paid the Second Performance Fee Payment at issue in this litigation, including whether Plaintiff actually paid it on DML Real Estate's behalf, thereby negating Plaintiff's claims here.

The actions are also similar in that both DML Real Estate and Plaintiff seek return of the same funds.  The *Consolidated Texas Action* alleges that on March 15, 2022, DML Real Estate "wired" CBE Touring $500,000, which DML Real Estate alleges completed its $1 million contractual obligation to secure Mr. Brown's appearance, while also allegedly resulting in damages for fraud based on misrepresentations.  [*See* DML Real Estate's Third-Party Petition. ¶ 51, EXHIBIT 1-F.]  DML Real Estate seeks return of the full $1,000,000 performance fee (both $500,000 payments) and other damages as well.  DML Real Estate's recent filing of initial disclosures illustrates that at least from DML Real Estate's perspective, any reimbursement of the Second Performance Fee Payment must be made to DML Real Estate, and to advance that narrative, DML Real Estate will apparently call on Plaintiff here to testify on DML Real Estate's behalf.  [*See* EXHIBIT A at 21, 24.]

This *Federal Action* mirrors those allegations.  Plaintiff alleges that *he* – apparently on his own accord and not on behalf of DML Real Estate – "wire[d]" $500,000 on March 15, 2022, which was "one-half" of the same $1,000,000 performance fee that DML Real Estate had negotiated.  [*See* Compl. ¶¶ 7–8, Doc. No. 1, Page ID# 2–3.]  Just as DML Real Estate did in the *Consolidated Texas Action*, Plaintiff alleges that Mr. Brown did not perform as expected, and

13

Plaintiff seeks return of moneys paid – one-half of the performance fee, or $500,000. [*Id.* ¶ 12.] As was the case with DML Real Estate, Plaintiff alleges fraud and seeks to recoup that $500,000. [*Id.* ¶ 27.]

The *Consolidated Texas Action* and *Federal Action* obviously overlap. They involve the same subject matter, the same obligations and core legal questions, the same circumstances and defenses, the same general narrative and blame, and apparently, some of the same witnesses. The only difference is that Plaintiff alleged a completely different allegation in this *Federal Action* – one that, if true, could very well doom DML Real Estate's action in the *Consolidated Texas Action* and likewise result in excusing any obligations related to The One Night Only Tour and Performance Agreement. Accordingly, there can be no question that Plaintiff's allegations are "underpinned by the same factual circumstances as the state case" such that the *Consolidated Texas Action* and this *Federal Action* are parallel to one another. *Comau, LLC v. Bayview Elec. Co.*, No. 20-12865, 2021 U.S. Dist. LEXIS 50860, at *6 (E.D. Mich. Mar. 17, 2021) (describing federal complaint and determining it was parallel to different state action).

> **b.    The factors relevant to *Colorado River* abstention lean in favor of abstention.**

This Court balances eight core factors when determining whether abstention is appropriate. These factors include, but are not limited to: (1) whether a state court assumed jurisdiction over any res or property; (2) whether a federal forum is less convenient; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the proceedings; and (8) the presence or absence of concurrent jurisdiction. *Healthcare Co., Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 395 (6th Cir. 2019) (quoting *Romine*, 160 F.3d at 340–41). The factors are not a "mechanical

checklist," *Romine*, 160 F.3d at 341, but rather, balanced in light of case-specific circumstances, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16, 103 S. Ct. 927 (1983). Accordingly, the Court is not limited to these factors and can consider other factors relevant to the analysis.

### i.    *First Factor: Whether property is at issue is largely irrelevant.*

Mr. Brown agrees with CBE Touring that the first factor – whether a state court assumed jurisdiction over any res or property – is largely irrelevant because property is not at issue. *See Almetals, Inc. v. Marwood Metal Fabrication, Ltd.*, No. 19-13254, 2020 U.S. Dist. LEXIS 105286, at *8 (E.D. Mich. June 17, 2020) ("The Ontario court has not assumed jurisdiction over any res or property, so the first factor is irrelevant."); *Morris v. City of Shepherdsville*, No. 08-374-C, 2009 U.S. Dist. LEXIS 16894, at *12 (W.D. Ky. Mar. 4, 2009) ("The first factor is irrelevant since property is not at issue.").

### ii.    *Second Factor:  The convenience of the federal forum weighs in favor of abstention, albeit slightly.*

Mr. Brown also agrees with CBE Touring that the second factor – the convenience of the federal forum – leans in favor of abstention. As pled, both the *Consolidated Texas Action* and this *Federal Action* focus on a concert that was to take place in Texas. [Compl. ¶ 6, Doc. No. 1, Page ID# 2; DML Real Estate's Third-Party Petition ¶ 13, Doc. No. 19-1, Page ID# 184–185.] According to Plaintiff, that concert was set up by individuals working on behalf of DML Real Estate, which is a Texas corporation. [Compl. ¶ 6, Doc. No. 1, Page ID# 2; DML Real Estate's Third-Party Petition ¶ 2, Doc. No. 19-1, Page ID# 182.] It appears that Texas has a connection to this dispute, and it appears that, at least at this stage, Texas is the focus of the parties' claims.

Accordingly, Texas appears to be a more convenient forum than Ohio federal court, or at the very least, Texas appears to have the greater connection to the dispute than Ohio.[5]

In fact, Plaintiff already demonstrated that Texas is a convenient forum. He suggests that he had no problem associating with DML Real Estate, a Texas company, with respect to The One Night Only Tour. [*See* Compl. ¶ 7–8, Doc. No. 1, Page ID# 2.] He also alleges that he had no problem funneling a half-million dollars to allegedly ensure that Mr. Brown would appear in Texas to perform at a Texas venue. [*Id.* ¶¶ 6, 7.] If Texas was a convenient forum for Plaintiff's business purposes, it should be a convenient forum to litigate as well. *See, e.g.*, *Stepan Co. v. Callahan Chem. Co.*, 2007 U.S. Dist. LEXIS 74261, at *10 (N.D. Ill. Oct. 3, 2007) (party "cannot reasonably claim that New Jersey is an overly inconvenient forum, considering the amount of business that it does in the state.").

Of course, in a digital age and with the ability to travel from Ohio to Texas, the convenience of litigating in Texas is likely a minor concern. The parties can conduct some discovery remotely and travel to Texas to meet with witnesses, obtain documents, or otherwise coordinate service of subpoenas and other discovery. Consequently, Mr. Brown agrees with CBE Touring that between the two forums, the second factor leans in favor of abstention because the federal forum presents no more convenient forum than a state court, especially one in Texas.

---

[5] Like CBE Touring, Mr. Brown questions many of the allegations in the Complaint, including allegations suggesting Mr. Brown did anything to permit this Court to assert personal jurisdiction over it in Ohio. By way of example, Mr. Brown is concerned by Plaintiff's allegation that the Performance Agreement was a contract between DML Real Estate and Mr. Brown when it is obviously between DML Real Estate and CBE Touring. [*See, e.g.,* DML Real Estate's Third-Party Petition ¶ 10, Doc. No. 19-1, Page ID# 104.] In addition to questioning whether there is a basis to allege such an allegation, Mr. Brown is also unable to properly investigate the nature of Plaintiff's other allegations, including who allegedly contacted Plaintiff, when that contact was made, and whether those contacts were actually by someone who Plaintiff now believes was acting as an undisclosed agent or representative of Mr. Brown (as suggested by Plaintiff in the Complaint). Mr. Brown has been deprived of the opportunity to investigate and determine whether he has a good-faith basis to challenge personal jurisdiction at this time. Mr. Brown does not believe this court has jurisdiction over him. Mr. Brown reserves the right to request further relief from the Court, including relief related to whether any allegations in the Complaint should have not been asserted in the first place.

>           ***iii.***     <u>***Third Factor***</u>***:  Avoiding piecemeal litigation – a "paramount"***
>           ***factor in the analysis – leans heavily in favor of abstention.***

The third factor – avoiding piecemeal litigation – is a "paramount" consideration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).  Piecemeal litigation occurs when "different courts adjudicate identical issues, thereby duplicating judicial effort and potentially rendering conflicting results."  *Romine*, 160 F.3d at 341.  This factor weighs heavily in favor of abstention.

Here, the gravamen of both the *Consolidated Texas Action* and this *Federal Action* is the Performance Agreement – a contract between DML Real Estate and CBE Touring – and whether under that contract, Mr. Brown was obligated to perform under the circumstances.  As Plaintiff alleged, his claims focus on his alleged payment of $500,000, which he paid as "one-half" of the Performance Fee required by that Performance Agreement.  [*See* Compl. ¶¶ 7–8, Doc. No. 1, Page ID# 2.]  That Performance Agreement, together with any defenses to non-performance, is at the heart of the *Consolidated Texas Action*.  [*See, e.g.*, DML Real Estate's Third-Party Petition ¶¶ 12–13, Doc. No. 19-1, Page ID# 184–185.]  There is no need for those issues to be litigated in two places, by different parties, with each party claiming entitlement to the same Second Performance Fee Payment.

The problem with this type of piecemeal litigation is best illustrated by the contradictory allegations in the two actions.  In Plaintiff's Complaint here, he alleges that <u>he</u> – not DML Real Estate – wired the Second Performance Fee Payment on March 15, 2022.  [Compl. ¶ 8, Doc. No. 1, Page ID# 2.]  But in the *Consolidated Texas Action*, DML Real Estate alleges that DML Real Estate – not Plaintiff – wired that same Second Performance Fee Payment on March 15, 2022.  [DML Real Estate's Third-Party Petition ¶ 51, Doc. No. 19-1, Page ID# 194–195.]  Which is it?

Relatedly, the two actions will also focus on whether Plaintiff was actually working on behalf of DML Real Estate when he allegedly paid the Second Performance Fee Payment.  In Plaintiff's Complaint here, he alleges that _he_ – apparently not acting on behalf of DML Real Estate and thus acting in his individual capacity – wired the Second Performance Fee Payment to Mr. Brown on March 15, 2022.  [Compl. ¶ 8, Doc. No. 1, Page ID# 2.]  But in the _Consolidated Texas Action_, DML Real Estate alleges that DML Real Estate – not Plaintiff – wired that same Second Performance Fee Payment on March 15, 2022 to CBE Touring (not Mr. Brown).  [DML Real Estate's Third-Party Petition ¶ 51, Doc. No. 19-1, Page ID# 194–195.]  Which is it?

Because both Plaintiff and DML Real Estate claim entitlement to the same Second Performance Fee Payment, and the actions will obviously conflict and overlap with respect to who made the payment and to whom, the two actions overlap and will undoubtedly duplicate efforts.  Even worse, should _both_ Plaintiff and DML Real Estate succeed, Mr. Brown could be subjected to inconsistent judgments in light of the competing allegations about who allegedly received the Second Performance Fee Payment, and together with CBE Touring, conflicting judgments could result in a double-payment of the Second Performance Fee Payment in damages to two completely different parties.

There is also a question of how the resolution of one case will affect the other in light of both parties claiming entitlement to the same $500,000.  If Plaintiff wins here, he will have demonstrated that _he_ – not DML Real Estate – paid the Second Performance Fee Payment.  He would have also demonstrated that he paid Mr. Brown and not CBE Touring, and thus a question will arise about whether DML Real Estate properly paid CBE Touring as required under the Performance Agreement.  But in either case, it would be impossible for DML Real Estate to have also paid that Second Performance Fee Payment to CBE Touring, which means DML Real Estate

failed satisfy all provision of the Performance Agreement before Mr. Brown was expected to perform. And if DML Real Estate failed to fulfill its contractual obligations such that CBE Touring was excused from performance, Plaintiff cannot argue that the circumstances here are "unjust" in light of Mr. Brown's failure to appear because, simply put, Mr. Brown did not need to appear in light of DML Real Estate's failure to pay. This logic is certainly circular, and the intertwinement of actions creates a complicated scenario to understand and dissect – but that is why *Colorado River* abstention is appropriate and why this third factor weighs heavily in favor of abstention.

> iv. **_Fourth Factor_: Texas state courts have the first-filed action regarding the dispute and have also had more progress than this Federal Action, thereby causing the jurisdictional issue to weigh in favor of abstention.**

Mr. Brown agrees that the fourth factor – the order in which jurisdiction was obtained – also weights in favor of abstention, albeit only slightly. *Texas Action One* began on <u>August 15, 2022</u>, which was the first-filed action related to Mr. Brown (and CBE Touring), the Performance Agreement, the Second Performance Fee Payment at issue here, and Mr. Brown's participation in The One Night Only Tour. [*See* Doc. No. 19-1, Page ID# 211–213 (docket sheet); Doc. No. 19-1, Page ID# 131–158 (Original Petition).] *Texas Action Two*, which was initiated by 7 Kings, began on <u>October 6, 2022</u>. [7 Kings Complaint ¶ 8, Doc. No. 19-1, Page ID# 162–166.] *Texas Action One* and *Texas Action Two* were consolidated on <u>October 25, 2022</u>, with DML Real Estate filing a third-party complaint against Mr. Brown (and others) again in *Texas Action Two* on <u>November 18, 2022</u> in response to the 7 Kings Complaint. [*See generally*, DML Real Estate's Third-Party Petition, Doc. No. 19-1, Page ID# 182–209).] The *Consolidated Texas Action* now involves multiple parties, including other parties not present in this *Federal Action*, which has emerged as the more comprehensive litigation regarding the subject matter at issue here.

This *Federal Action* was not filed until <u>October 3, 2022</u> – over one month after DML Real Estate initiated *Texas Action One* and over one month after a Texas start court rejected DML Real Estate's request for injunctive relief.  [*See* Doc. No. 19-1, Page ID# 211–213 (docket sheet); Doc. No. 19-1, Page ID# 160 (order denying injunction).]  Little, if any, activity has taken place in this *Federal Action*.  By all accounts, the *Consolidated Texas Action* was the first-filed action, has the most parties affected, and already contains the necessary parties for adjudication.  *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21, 103 S. Ct. 927 (1983) ("Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").[6]

Accordingly, the fourth factor weighs in favor of abstention because the Texas state courts first acquired jurisdiction.

### v.     *Fifth Factor:  Because no federal claims exist, the source of governing law favors abstention.*

Mr. Brown agrees with CBE Touring in that the fifth factor – governing law – weighs in favor of abstention.  Plaintiff presents no federal claims, but rather only quasi-contract and tort claims under state law.[7]  Only "the presence of federal issues . . . [would] weigh against surrender of federal jurisdiction in deference to state proceedings."  *See Romine*, 160 F.3d at 342 (quotation omitted).  Because there are no federal issues, this fifth factor weighs in favor of abstention.

---

[6] The *Consolidated Texas Action* is also very much at the pleadings stage, largely due to how DML Real Estate filed its suit and how a later party filed *Texas Action Two*.  The ruling on injunctive relief, however, in *Texas Action One* is an important development, as DML Real Estate already tested its ability to succeed on the merits before a Texas judge – *and lost*.

[7] Because Plaintiff alleges both quasi-contract and tort claims, this case will undoubtedly require a choice-of-law analysis to decide which state's law controls the various claims, which could very well mean that different states will supply different governing standards for different claims.  In light of the length of this Motion at this juncture, Mr. Brown opted to focus on Ohio law for simplicity, largely because the gravamen of Mr. Brown's arguments, as was the case with CBE Touring's arguments, focus on pleading standards and facial issues.  Any further analysis is difficult in light of the lack of facts in the Complaint.

      ***vi.***      ***Sixth Factor:***  ***The adequacy of the Texas forum may weigh against abstention, but only because Plaintiff filed contradictory allegations in this Federal Action.***

The sixth factor – the adequacy of the Texas state court forum – may weigh against abstention, but only because of how Plaintiff framed his lawsuit here.  Plaintiff and DML Real Estate obviously dispute who paid the Second Performance Fee Payment.  Interestingly, Plaintiff has not alleged that he was acting as DML Real Estate's agent when tendering payment (which would be fatal to his claim), and thus it appears that this issue will be disputed between the two actions.  In that light, it appears that the Texas state court would not be an adequate forum to protect Plaintiff's interests with respect to that payment because only DML Real Estate is present in that action, and presumably, DML Real Estate will not concede that it failed to pay the Second Performance Fee Payment such that its claims require dismissal.  Consequently, one could argue that the Texas forum would be inadequate for Plaintiff, but only because Plaintiff failed to intervene to dispute DML Real Estate's contention that it paid the Second Performance Fee Payment and that Plaintiff allegedly has an entitlement to those funds, apparently refused to sue there, and instead prefers to litigate with not all parties present to litigate contradictory allegations.

Of course, that same argument could be applied here to counsel in favor of abstention.  Plaintiff chose not to include DML Real Estate in this *Federal Action* even though his allegations concern obligations created by DML Real Estate's Performance Agreement and allegations that apparently undermine any interest that DML Real Estate may have in the disputed Second Performance Fee Payment.  This *Federal Action*, therefore, is an inadequate forum in the sense that not all parties with a claim to the Second Performance Fee Payment are present here, and Plaintiff cannot represent DML Real Estate's interests here in light of Plaintiff's contradictory claim to the Second Performance Fee Payment.

The influence of this sixth factor is unclear, but because it appears that the factor focuses on Plaintiff, it would appear the factor leans slightly against abstention. This Court, however, may consider the context of the allegations and the various lawsuits when evaluating these factors, and thus Mr. Brown agrees with CBE Touring and submits that in light of that context, this factor is, at best, neutral.

> **vii.** **_Seventh Factor_: The Texas state court is further ahead and already issued an order in one of the underlying matters, and therefore the seventh factor weighs in favor of abstention.**

The seventh factor – relative progress of the actions – weighs in favor of abstention (albeit, not overwhelmingly). Both the _Consolidated Texas Action_ and this _Federal Action_ are largely at the pleadings stage. DML Real Estate, however, already received an adverse ruling with respect to injunctive relief in _Texas Action One_, which was based on The One Night Only Tour concert and Performance Agreement that will be at issue in this _Federal Action_. Because the _Consolidated Texas Action_ has already received an order related to injunctive relief, it would appear that the _Consolidated Texas Action_ is further along than this proceeding.

Of course, in the spirit of transparency, it is clear that both actions are very much at the pleadings stage and not all parties have filed responsive pleadings (and may not be required to do so yet). Mr. Brown also acknowledges that CBE Touring recently filed a motion to dismiss related, in part, to a forum-selection clause. [_See_ Part III(D), _infra_.] The Texas courts have not considered the import of that clause on the _Consolidated Texas Action_.

Consequently, if the seventh factor weighs in favor of any direction, it likely weighs in favor of abstention.

> **viii.** **_Eighth Factor_: Because state and federal courts have concurrent jurisdiction, the eighth factor weighs in favor of abstention.**

Mr. Brown agrees with CBE Touring that the eighth factor – the presence of concurrent jurisdiction – counsels in favor of abstention. State and federal courts both have jurisdiction to hear state-based claims, especially when they concern damages exceeding $500,000. Accordingly, the factor weighs in favor of abstention. *See Preferred Care of Delaware, Inc.*, 676 Fed. App'x at 397 ("where the source of the relevant law lies partly with the state, this factor accordingly tips, however slightly, in favor of abstention").

As referenced above, Mr. Brown acknowledges that it is unclear how the Texas state court will address CBE Touring's argument with respect to forum-selection clauses. [*See* Part III(D), *infra*.] The Texas state court has not adjudicated that issue, and it is unclear how that forum-selection clause will affect the *Consolidated Texas Action*. In any event, regardless of the import of that provision, this case and the *Consolidated Texas Action* concern state-based contract, quasi-contract, or tort claims. There are no federal claims that would otherwise counsel against abstention. Accordingly, this eighth factor weighs in favor of abstention.

**c.      Dismissal rather than a stay is appropriate under the circumstances.**

*Colorado River* abstention can result in either a stay or dismissal. Although a stay may be favored in the Sixth Circuit, *Colorado River* itself authorized dismissal when abstention was warranted. *See, e.g., Colorado River*, 424 U.S. at 821 (affirming dismissal); *Blake v. Wells Fargo Bank*, 917 F. Supp. 2d 732, 738 (S.D. Ohio 2013) (staying case).

Dismissal is most appropriate under the circumstances presented here. Plaintiff's claims are a small sliver of the overarching dispute concerning The One Night Only Tour, and there is no reasonable justification for allowing that small sliver to continue here while the *Consolidated Texas Action* unfolds in light of the significant impact this case could have in Texas. It is also unclear why Plaintiff has not attempted intervention or otherwise filed suit in Texas. Plaintiff has

essentially created multiple, intertwined causes of action spread between multiple parties and two states, with the resolution of one likely impacting the resolution of others. Plaintiff compounded the problem created by that strategy by failing to name all affected parties in this litigation.

Additionally, the timing of Plaintiff's case is troublesome. Plaintiff did not file suit until after DML Real Estate failed to obtain injunctive relief in a Texas state court. While DML Real Estate continued to litigate in the *Consolidated Texas Action*, Plaintiff filed this *Federal Action*, which unnecessarily will lead to duplicative litigation in two separate forums, before two different judges, and using two different discovery standards and sources of law. The Court should not condone the filing of piecemeal litigation across the United States simply because one proceeding received an adverse ruling.

Dismissal is proper. Nevertheless, if the Court is not inclined to dismiss this action, Mr. Brown asks the Court to stay the matter pending final judgment in the *Consolidated Texas Action*.

### 2. The Court Should Stay the Matter Under Its Inherent Authority.

If the Court concludes that *Colorado River* abstention is not warranted, the Court should nevertheless stay this Federal Action pursuant to its inherent authority. This power to "stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936).

Importantly, the Court can exercise this inherent authority to stay this Federal Action pending a resolution in state court <u>*even if*</u> the Court declines to do so under *Colorado River*. *See Rosenbuaer America, LLC v. Advantech Service & Parts, LLC*, 437 F. Supp. 2d 1081, 1084 (D.S.D. 2006) ("The inapplicability of abstention doctrines in this case does not preclude a stay."); *e.g., Gray v. Saltalmaccia*, No. 11-11877, 2011 U.S. Dist. LEXIS 115999, at *4 (E.D. Mich. Oct.

24

7, 2011) (staying case under inherent authority even after declining to do so under *Colorado River*).  In determining whether a stay is appropriate, the Court considers the (1) the dispositive effect of the *Consolidated Texas Action*, (2) whether judicial economy would be served, (3) whether the public welfare will be served, and (4) any prejudice or hardship to the party opposing the stay.  *See Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 931 (N.D. Ohio 2021) (quotation omitted).  All of these factors weigh in favor of a stay here.

First, because the core factual allegations in the *Consolidated Texas Action* are the heart of the allegations in this *Federal Action*, a decision in Texas would very well affect this *Federal Action*.  Whether Mr. Brown owed any contractual duty and/or breached any duty is also at issue in the *Consolidated Texas Action*, as is DML Real Estate's allegation that it (not Plaintiff) paid the Performance Fee and that fee must be returned to DML Real Estate (not Plaintiff).  [*See, e.g.,* DML Real Estate's Third Party Petition ¶¶ 76–78, Doc. No. 19-1, Page ID# 202–203.]  Consequently, any defenses that Mr. Brown here necessarily overlap with allegations made in Texas.  Similarly, if a Texas court finds that DML Real Estate – not Plaintiff – paid the Second Performance Fee Payment – this *Federal Action* should disappear, or otherwise, this Court risks inconsistent judgments and duplicative judgment obligations.  Finally, if Mr. Brown (or CBE Touring) did indeed breach the Performance Agreement, a critical issue is whether DML Real Estate mitigated its damages, and if not, the lack of mitigation could very well eat away at any reimbursement of the full Performance Fee available, which again, could lead to this Court issuing an inconsistent judgment here if it nevertheless requires reimbursement in full to Plaintiff.

Second, staying the matter will conserve resources.  Plaintiff's claims largely mirror those made by DML Real Estate in the *Consolidated Texas Action*, and thus there will be overlapping discovery, discovery on duplicative points, and potential discovery disputes that would be

resolved by different judicial officers. There is also the issue of what governing law should apply. Between the two actions, it is unclear how a choice-of-law analysis will turn considering there are conflicting allegations of *who* made the payment (which could have originated in *either* Ohio or Texas), *who* received the payment (which could be a California person, a California company, a Delaware company, a Texas company, or something in between), and who was involved in negotiations and any decisions regarding any such payment (which could involve any number of states). [*See, e.g.,* Compl. ¶¶ 3–4, Doc. No. 1, Page ID# 1–2; DML Real Estate's Third-Party Petition ¶ 4 (stating CBE Touring is a "foreign" corporation registered to do business in Texas), Doc. No. 19-1, Page ID# 183.] This Court and the Texas state court may very well reach different decisions on what law governs the same core issues.

Third, a stay will not harm the public. Rather, the public has an interest in the efficient use of judicial resources and in having state courts resolve claims that rely upon state law. Furthermore, the public has an interest in ensuring that as many parties that claim a right to damages surrounding The One Night Only Tour can be heard as possible – and at present, the *Consolidated Texas Action* presents that opportunity.

Finally, Plaintiff will not be prejudiced by a stay. The core of this dispute – whether Mr. Brown (or CBE Touring) breached responsibilities because of Mr. Brown's alleged non-appearance – is being litigated in the *Consolidated Texas Action*. Plaintiff can conserve resources here as that issue is decided elsewhere. More importantly, to the extent Plaintiff's alleged payment was on DML Real Estate's behalf, any interest Plaintiff has in recouping the $500,000 payment is already protected by DML Real Estate. Should DML Real Estate prevail and collect the same $500,000 in damages that Plaintiff claims here, Plaintiff's claim is properly against DML Real Estaet for reimbursement.

Therefore, if the Court concludes that it should not abstain under *Colorado River*, the foregoing factors still weigh in favor of the Court exercising its inherent authority to stay this *Federal Action*.  Mr. Brown submits that allowing this *Federal Action* to continue while the *Consolidated Texas Action* remains pending would be a waste of resources, and thus a stay is a proper use of the Court's inherent authority.

**B.      If the Court Elects Not to Dismiss or Stay the Action in Light of the *Consolidated Texas Action*, Plaintiff's Complaint Should be Dismissed for the Failure to Join a Necessary and Indispensable Party.**

Mr. Brown joins CBE Touring's Motion with respect to CBE Touring's argument for the failure to join a necessary and indispensable party, while he acknowledges that he is not an individual party to that agreement.  He does so because Plaintiff does not hide the fact that DML Real Estate is a central figure to this dispute: Plaintiff explicitly alleges that it was DML Real Estate that organized the event at issue and that it was DML Real Estate that entered into the Performance Agreement to secure Mr. Brown's attendance at The One Night Only Tour.  [Compl. ¶ 7, Doc. No. 1, Page ID# 2.]  Despite alleging DML Real Estate's importance to this litigation, Plaintiff failed to join DML Real Estate to this case.  That was improper – and unless Plaintiff does so, Plaintiff's Complaint must be dismissed.

Whether DML Real Estate must be joined is rooted in Rule 19 of the Federal Rule of Civil Procedure.  Rule 19 "furthers several related policies, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them."  *Acton Co. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982).

Application of the rule is a three-step process.  *See United States v. City of Detroit*, 712 F.3d 925, 948 (6th Cir. 2013).  "First, the court must determine whether the person or entity is a necessary party under Rule 19(a)."  *Glancy*, 373 F.3d at 666.  "Second, if the person or entity is a necessary party, the court must then decide if joinder of that person or entity will deprive the court of subject matter jurisdiction."  *Id.*  "Third, if joinder is not feasible because it will eliminate the court's ability to hear the case, the court must analyze the Rule 19(b) factors to determine whether the court should 'in equity and good conscience' dismiss the case because the absentee is indispensable."  *Id.*

**1.      DML Real Estate is a necessary party to this *Federal Action*.**

DML Real Estate is a necessary party because DML Real Estate has an interest in this action and its absence threatens that interest and subjects CBE Touring to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

As provided by Rule 19, a necessary party is defined as:

(a) Persons Required to Be Joined if Feasible.

> (1)      *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A)      in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B)      that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i)      as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii)      leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). This threshold consideration has a low bar, as the mere possibility of harm should be sufficient. *See* 4 Moore's Federal Practice – Civil § 19.05 (2022) ("The basic possibility of such harm justifies joining the abstenee").

Rule 19(a)(1)(B) likely presents the most straight-forward argument. DML Real Estate is a necessary party because it has an interest subject to the action here. "Under this provision of the rule, an absent party need only possess an interest 'relating to' the subject matter of the action and need not have a direct interest in the action at bar." *Dealers Assur. Co. v. Fid. Bank & Trust*, No. 2:13-CV-987, 2014 U.S. Dist. LEXIS 136134, at *9–10 (S.D. Ohio Sep. 26, 2014) (quotation omitted). Importantly, this includes situations in which a party "could" have an interest. *See id.* (quotation and citation omitted).

DML Real Estate has an interest for several reasons. As an initial matter, this *Federal Action* focuses on the arrangement made to secure Mr. Brown's appearance at The One Night Only Tour. [*See, e.g.,* Compl. ¶ 7, Doc. No. 1, Page ID# 2.] He alleges that DML Real Estate "contracted" with Mr. Brown with respect to that appearance. [*Id.*] Setting aside the fact that the allegation is clearly not true as the Performance Agreement is obviously not with Mr. Brown, Plaintiff's allegation nevertheless acknowledges that this case will focus on, among other things, (a) an interpretation and application of that Performance Agreement, (b) whether the Performance Agreement's provisions were satisfied (by all parties) such that Mr. Brown should appear, and (c) to what extent the Performance Agreement dictates parties may obtain remedies for a breach. Consequently, DML Real Estate must be present here before this case can proceed forward. *See Dealers Assur. Co.*, 2014 U.S. Dist. LEXIS 136134, at *9–10 (citing cases); *see also Sch. Dist. v. Sec'y of the United States Dep't of Educ.*, 584 F.3d 253, 303 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation.");

*e.g.*, *Dollison v. Antero Res. Corp.*, 2022 U.S. Dist. LEXIS 205626, *12 (S.D. Ohio Feb. 11, 2022).

Additionally, both DML Real Estate and Plaintiff claim an interest in reimbursement of the same Second Performance Fee Payment of $500,000.  [DML Real Estate's Third-Party Petition ¶ 51, Exhibit 1-F; Compl. ¶ 12–15, Doc. No. 1, Page ID# 3.]  Although their theories of recovery are different, they both claim separate and independent interests in obtaining the same reimbursement, whether through a breach of contract claim or some other theory.  Because both parties cannot obtain the same reimbursement, DML Real Estate obviously has an interest in how this Court enters a judgment with respect to that reimbursement.

Finally, DML Real Estate's interests are affected through the potential of "negative precedent."  Courts recognize how absent parties can be impaired by decisions in other litigation.  For example, at the heart of unjust enrichment is that the circumstances in which a benefit has been retained were "unjust."  *See, e.g., United States Health Practices v. Blake*, 10th Dist. Franklin No. 00AP-1002, 2001 Ohio App. LEXIS 1291, at *4–5 (Mar. 22, 2001) (the heart of the doctrine involves "circumstances render it unjust to permit the defendants to retain the benefit").  But if this Court finds that Mr. Brown was not required to appear at The One Night Only Tour, or Mr. Brown suffered his own damages because of malfeasance such that a full reimbursement of the Second Performance Fee Payment is not required, that decision would be a "negative precedent" that something untoward occurred related to The One Night Only Tour, which could significantly impair DML Real Estate's interests in enforcing any contractual obligation to have Mr. Brown perform.  *See Deliverance Poker, LLC v. Tiltware, LLC*, 771 F. Supp. 2d 658, 656–66 (W.D. Tex. 2011) (recognizing "negative precedent against a non-party is an adequate reason to label someone a 'Required Party' under Rule 19(a)").  Similarly, if this Court finds that Plaintiff

– and no one else – tendered the Second Performance Fee Payment, DML Real Estate's ability to argue to the contrary is significantly questioned, if not undermined.

DML Real Estate is also a necessary party because without DML Real Estate present in this action, there is a significant risk of double recovery and/or inconsistent judgments. *See, e.g., Collins v. Teachers Ins. & Annuity Asso.*, 587 F. Supp. 403, 405 (D. RI. 1984) (joining an estate and widow to the action to prevent double recovery against the insurer); *Capitol Med. Ctr., LLC v. Amerigroup Md., Inc.*, 677 F. Supp. 2d 188, 193 (D. D.C. 2010) (dismissing a case when a missing party was necessary to prevent double recovery but could not be joined).  Setting aside the fact that Plaintiff alleges the existence of a contract with Mr. Brown (and not CBE Touring), and the obvious falsity in that statement, his conflicting allegation illustrates the risk of inconsistency.  The Performance Agreement cannot be between DML Real Estate and both CBE Touring and Mr. Brown (unless they were both signatories, which they are not), thereby risking that two courts in different states speak conflicting truths.  Similarly, without DML Real Estate present in this *Federal Action* to protect its interests, Mr. Brown runs the risk of having to reimburse the Second Performance Fee Payment that Plaintiff alleges was sent to him [Compl. ¶ 8, Doc. No. 1, Page ID# 2–3], even though DML Real Estate alleges that any payment was made to CBE Touring.  Consequently, Plaintiff's Complaint risks two courts in different states determining that the same payment went to two completely separate recipients, and those two completely separate recipients must each reimburse the same payment to different payors.

Of course, Plaintiff is not without risk either.  As unjust enrichment is a claim of equity, it does not permit a double payment. *See Booher Carpet Sales v. Erickson*, 1998 Ohio App. LEXIS 4643, at *17 (2d Dist. Oct. 2, 1998).  One might argue that if the *Consolidated Texas Action* concludes or that issue is otherwise resolved, Mr. Brown (or CBE Touring) could attack

this *Federal Action* in equity, and ask the Court to dismiss even after Plaintiff spends significant resources preparing this case for trial.  It is unclear how this Court would resolve that issue.

### 2.    Joinder of DML Real Estate is feasible.

Because DML Real Estate is a necessary party, the Court must consider whether joining DML Real Estate would "deprive the court of subject matter jurisdiction."  *Glancy*, 373 F.3d at 666.  Mr. Brown, like CBE Touring, knows of no reason why this Court would be deprived of subject matter jurisdiction.  This is a diversity action, and upon information and belief, DML Real Estate is a Texas entity, thereby preserving diversity of citizenship.  [*See* DML Real Estate's Third-Party Petition ¶ 2, Doc. No. 19-1, Page ID# 182.]

The only question, therefore, is whether this Court would have personal jurisdiction over DML Real Estate.  Based solely upon Plaintiff's Complaint, this Court should have jurisdiction for the same reason that this Court would presumably have personal jurisdiction over CBE Touring and Mr. Brown.  Plaintiff's Complaint makes clear that the Second Performance Fee Payment was made pursuant to DML Real Estate's Performance Agreement.  [Compl. ¶ 7, Doc. No. 1, Page ID# 2.]  Based upon Plaintiff's allegations, Plaintiff obviously had knowledge of the Performance Agreement and the requirement to tender the Second Performance Fee Payment, and because Plaintiff's allegations focus on completing the Performance Fee to necessitate Mr. Brown's appearance, Plaintiff's involvement with DML Real Estate brings DML Real Estate under this Court's jurisdiction.

Accordingly, at the very least, this Court should order DML Real Estate's joinder, and should Plaintiff fail to do so, the case should be dismissed.

### 3.    Alternatively, if joinder is not feasible, the case should be dismissed.

32

The third-step of the Rule 19 inquiry concerns whether joinder is not feasible.  If DML Real Estate cannot be joined – for example, because this Court lacks personal jurisdiction over DML Real Estate – the Court must consider whether this case should be dismissed because DML Real Estate is indispensable.  That is the case here.

To determine whether the action can proceed, the Court considers:

(1)     the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)     the extent to which any prejudice could be lessened or avoided by:

    (A)      protective provisions in the judgment;

    (B)      shaping the relief; or

    (C)      other measures;

(3)     whether a judgment rendered in the person's absence would be adequate; and

(4)     whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

With respect to the first factor – whether a judgment rendered in DML Real Estate's absence might prejudice it or the existing parties – the factor clearly leans in favor of requiring DML Real Estate's presence.  This first factor overlaps with the considerations in Rule 19(a)(1)(B), and thus as a practical matter, the factor is satisfied.  *See* 4 Moore's Federal Practice – Civil § 19.05(2)(a) (2022) ("This provision clearly overlaps with the considerations of whether an absentee is necessary . . . ."); *see also Burger King Corp. v. Am. Natl. Bank & Trust Co.*, 119 F.R.D. 672, 679 (N.D. Ill. 1988) ("Having found that Patel is a necessary party here, this court has already determined that the first Rule 19(b) factor . . . weighs in favor of dismissing the case.").  Indeed, this conclusion is appropriate considering the discussion above regarding how

DML Real Estate's interests will be affected by the outcome of this *Federal Action*. Similarly, the prejudice to Mr. Brown (and CBE Touring) is overwhelming. If this case proceeds without DML Real Estate, there is a significant risk of double-judgments and inconsistent judgments, not to mention duplicative discovery, litigation expenses, pleadings, potentially conflicting discovery rulings and applications of different law, and other issues with overlapping litigation.

Of course, this conclusion is inevitable considering the relationship between DML Real Estate and Plaintiff's same claim to the same Second Performance Fee Payment at issue here. *See* 4 Moore's Federal Practice – Civil § 19.05(2)(d) ("If the claims of a party and an absentee are mutually exclusive, prejudice from nonjoinder is virtually inescapable."). Competing claims to the same pool of money is a classic example of when an absentee will be prejudiced. *See, e.g., Deere & Co. v. Diamond Wood Farms, Inc.*, 152 F.R.D. 158, 161 (E.D. Ark. 1993) (absentee prejudiced when absentee would have claim to amount that plaintiff believes should be applied in some manner other than to reimburse absentee); *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986) ("Conflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence.").

With respect to the second factor – whether any such harm can be minimized – Mr. Brown (like CBE Touring) cannot fathom a scenario in which the risk of harm can be mitigated, especially with respect to any potential prejudice to Mr. Brown. One important interest to consider with respect to this second factor is avoidance of "multiple litigation [or] inconsistent relief." *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109, 88 S. Ct. 733 (1968). Any judgment here without DML Real Estate risks this concern materializing. Because Mr. Brown's alleged obligation to appear under the Performance Agreement could differ

depending on wherever DML Real Estate decides to sue (or wherever CBE Touring decides to sue DML Real Estate), there will always be a risk of "multiple litigation," the potential for duplicative judgments, and "inconsistent relief" depending on how the litigation unfolds.

The last factor – whether Plaintiff has an adequate remedy if the matter is dismissed – also leans in favor of finding DML Real Estate indispensable such that the action cannot proceed. Setting aside contractual limitations, nothing prohibits Plaintiff from suing in Texas (or any other state, for that matter) – a state he once funneled a half-million dollars toward in an attempt to cause a concert involving Mr. Brown.  The Texas Rules of Civil Procedure permit Plaintiff to intervene to assert his competing claim to the Second Performance Fee Payment.  *See* Texas Civ. P. R. 60.

On balance, the factors weigh in favor of finding indispensability such that this case should be dismissed if DML Real Estate cannot be joined.  The conclusion is the best case scenario for all involved.  As one treatise put it:

> Dismissing a federal case to allow complete resolution in state court serves the interest of justice by avoiding duplicative litigation and serves the interests of the absentee and defendant by permitting joinder to avoid the harm which threatened them.  Importantly, it also recognizes and honors the plaintiff's right to seek redress . . . . The focus on an adequate alternative forum can thus funnel the overall dispute to the only court that can handle it as a single unit.

4 Moore's Federal Practice – Civil § 19.05(5).

Accordingly, if DML Real Estate cannot be joined, the Court should dismiss the case for the failure to join a necessary, indispensable party.  Plaintiff can thereafter join the pending *Consolidated Texas Action*, together with the other parties who are already litigating their claims related to the same subject matter.

**C.      If the Court Proceeds with This Action Despite the Risk of Inconsistent Judgments from State Courts and Duplicative Litigation, Then Plaintiff's Complaint Should Be Dismissed for the Failure to State a Claim.**

  1. **Count One:  Plaintiff's Unjust Enrichment Claim Fails Because, Among Other Things, Plaintiff Attempts to Convert a Contract-Based Claim Into a Separate Quasi-Contract Claim, and Additionally, any Alleged "Benefit" was Conferred upon DML Real Estate and Not Mr. Brown.**

  Plaintiff's claim in Count One for unjust enrichment is premised upon Plaintiff's payment of the Second Performance Fee Payment and Mr. Brown's alleged non-appearance at The One Night Only Tour.  The claim should be dismissed for two reasons.

  *First*, Plaintiff cannot transform a contractual obligation into a quasi-contractual claim simply because Plaintiff paid the amount.  The Complaint is clear that Plaintiff's entire case focuses on an alleged obligation to perform at The One Night Only Tour, which as alleged by Plaintiff, arose out of a contract entered into by DML Real Estate (the Performance Agreement).  [*See* Compl. ¶ 6 (stating Mr. Brown "agreed to give a live performance"); *id.* ¶ 7 (stating "Mr. Brown contracted . . . to receive a fee for his appearance . . ."); *id.* ¶ 8 (stating Plaintiff sent Mr. Brown the Second Performance Fee, which was "one-half" of the aforementioned fee for an appearance).]  Indeed, Plaintiff's own Complaint alleges that Mr. Brown allegedly "agreed" [*id.* ¶ 6] and "contracted" [*id.* ¶ 7] for what Plaintiff alleges was owed here.  No matter whether one argues that the Performance Agreement controls or some other agreement controls, the reality is that a contract controls the subject matter of the litigation, and thus Count One must be dismissed.  *See RLFShop, LLC v. Am. Express Co.*, No. 3:17-CV-405, 2019 U.S. Dist. LEXIS 20506, at *21 (S.D. Ohio Feb. 8, 2019) ("It is clearly the law in Ohio that an equitable action in quasi-contract for unjust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact.") (quotation omitted).

  The reason why this conclusion is proper here is illustrated by both the development of the unjust enrichment doctrine and the dangerous precedent that would be created by allowing

Plaintiff's clam to proceed.  The existence of an unjust enrichment claim is premised upon the idea that there was no "meeting of the minds" related to the subject matter involved (such that a contract exists), and thus a contract must be implied by law.  *See Legros v. Tarr*, 44 Ohio St. 3d 1, 6–7, 540 N.E.2d 257 (1989) ("In contracts implied in law there is no meeting of the minds . . . ."); *see also Byler v. Air Methods Corp.*, 823 F'App'x 356, 362 (6th Cir. 2020) (unpublished) (observing that contracts implied in law "do not require an agreement between the parties").  Not surprisingly, therefore, when parties have expectations and argue that performance did not occur as expected, there can be no contract implied by law.  *See, e.g., CONRAIL v. Grand Trunk W.R.R.*, No. 09-10179, 2009 U.S. Dist. LEXIS 98152, at *27–28 (E.D. Mich. Oct. 22, 2009) ("It appears from the pleading that the legal duty arising under GTW's unjust enrichment counterclaim is, once again, the same legal duty that arises under its contract counterclaim . . . Accordingly, GTW's unjust enrichment counterclaim against CR is dismissed."); *Progressive American v. State Farm*, 647 S.E.2d 111, 116 (N.C. Ct. App. 2007) ("When one [party] confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjust enriched . . . .") (alteration supplied, quotation omitted);

Here, Plaintiff alleges the existence of a contract and alleges that payments were made pursuant to that contract, thereby foreclosing any quasi-contract claim.  His allegations focus on Mr. Brown's performance at The One Night Only Tour.  [Compl. ¶ 6, Doc. No. 1, Page ID# 2.]  The One Night Only Tour, however, arose out of a contract that Plaintiff alleges was entered into by DML Real Estate.  [*Id.* ¶ 7.]  The Second Performance Fee Payment that Plaintiff alleges that he paid was to satisfy the Performance Fee obligation created by that same DML Real Estate contract.  [*Id.* ¶¶ 7–8 (alleging the Performance Fee created by the Performance Agreement and Plaintiff's payment as "one-half" of that fee).]  Any obligation owed, therefore, flows from the

Performance Agreement, and as Plaintiff concedes, his claim focuses on what Mr. Brown allegedly "agreed to give" in exchange for payment. [*Id.* ¶¶ 6–7, Doc. No. 1, Page ID# 2.] Consequently, in light of Plaintiff's allegations, the subject matter involved is already covered by a contract, and thus the Court cannot (and should not) imply another exists by law.

Additionally, from a practical perspective, permitting Plaintiff's claim to proceed here places contractual rights in jeopardy. Plaintiff alleges that he helped satisfy DML Real Estate's contractual obligation under the Performance Agreement. [*Id.* ¶ 8.] Consequently, the existence of any unjust enrichment claim requires the Court to accept that DML Real Estate can outsource its payment obligation under that Performance Agreement to Plaintiff, and so long as Plaintiff makes that payment, Plaintiff can unilaterally demand that all other parties to that Performance Agreement perform their contractual obligations. This is dangerous precedent.

For example, suppose DML Real Estate breached the Performance Agreement such that Mr. Brown need not perform. Ordinarily, DML Real Estate's breach excuses performance, and claims for damages can be mitigated by set-off and other defenses.[8] Plaintiff, however, asserts a claim requiring that the Court accept that he has a standalone claim *regardless* of whether there was any underlying breach to excuse performance. He alleges that so long as he made payment, he can demand performance (apparently by any party), even if the performance was excused. This type of claim would permit contracting parties to outsource their obligations to third-parties (with or without notice to all other parties in privity), and so long as those third-parties perform, the underlying contractual obligations are rendered meaningless and enforceable by those third-parties.

---

[8] Notably, Plaintiff did <u>not</u> allege whether DML Real Estate fully performed its obligations under the Performance Agreement. In any event, Plaintiff would need to prove that the Performance Agreement required Mr. Brown's appearance at The One Night Only Tour here, thereby further demonstrating that a contract is at the heart of this dispute and, furthermore, DML Real Estate must be a party to this case.

_Second_, as pled, the true beneficiary of any "benefit" is DML Real Estate – not Mr. Brown. As pled, DML Real Estate was contractually obligated to pay the full Performance Fee. [Compl. ¶ 7, Doc. No. 1, Page ID# 2.] Plaintiff, however, paid one-half of that fee, thereby allowing DML Real Estate to reduce its contractual obligation for payment by one-half. [_See id._ ¶ 8 (alleging Plaintiff paid "one-half" of the "fee to appear").] Because the recipient of the Performance Fee was already owed that fee, the true beneficiary of Plaintiff's payment was DML Real Estate – the party that, at least as alleged by Plaintiff, no longer was under the obligation pay the Second Performance Fee Payment. To the extent that there was a breach of the Performance Agreement providing for a return of the Performance Fee, that claim that must be brought by DML Real Estate – and it is DML Real Estate that is the actual defendant to Plaintiff's claim.

Therefore, Plaintiff's unjust enrichment claim in Count One fails to state a cognizable claim and must be dismissed.[9]

**2.      Count Two:  Plaintiff's Promissory Estoppel Claim Fails Because a Contract Governs the Subject Matter of This Dispute.**

Count Two alleges promissory estoppel based upon promises made that "Mr. Brown would appear and perform at [The One Night Only Tour" on March 19, 2022" if Plaintiff paid the Second Performance Fee Payment "towards [_sic_] the [Performance Fee] . . . ." [Compl. ¶ 17, Doc. No. 1, Page ID# 4.] Plaintiff failed to allege a cognizable promissory estoppel claim because like the unjust enrichment claim, Plaintiff's allegations either arise out of the Performance Agreement [_see, e.g.,_ Compl. ¶¶ 7, 17 (alleging that his payment was based on the Performance

---

[9] Plaintiff references "quantum meruit" as part of his unjust enrichment claim in Count One, but it is unclear whether he actually alleges such a claim. "[Q]uantum meruit is a distinct claim or right of action," but Plaintiff has not alleged quantum meruit as such a claim. _See In re Estate of Suchodolski_, 9th Dist. Lorain No. 10-CA-009833, 2011-Ohio-6333, ¶ 8. To the extent Plaintiff alleges a standalone claim, the claim fails because his unjust enrichment claim fails. _See id._ ¶ 8 (recognizing that quantum meruit and unjust enrichment claims are "intertwined" and the elements of the claims are "identical").

Fee, which was part of the Performance Agreement)] or some other agreement or contract that Plaintiff alleges he had with Mr. Brown [*see, e.g.,* Compl. ¶ 6 (stating that Mr. Brown "agreed"), ¶ 7 (stating that Mr. Brown "contracted"), ¶ 8 (stating that Mr. Brown, as one of the "Defendants," had "agreed").]

The gravamen of Plaintiff's claim is that Mr. Brown should have appeared at The One Night Only Tour, but for whatever reason, he did not.  Mr. Brown's appearance, however, together with Plaintiff's payment of the Second Performance Fee Payment to complete DML Real Estate's obligation to tender the Performance Fee requirement, focuses solely upon the rights and obligations contained within the Performance Agreement itself or some other "contract[]" [Compl. ¶ 7] or "agree[ment]" [Compl. ¶¶ 6, 8].  The law in Ohio is clear: "A claim for promissory estoppel cannot be pursued where there is a contract covering the same subject matter."  *Han v. Univ. of Dayton*, 2015-Ohio-346, 28 N.E.3d 547, ¶ 46 (2d Dist.).  Because a contract controls the subject matter of this case, Plaintiff's promissory estoppel claim fails as a matter of law.

**3.**     **Count Three:  Plaintiff's Fraud Claim Should be Dismissed Because it is Duplicative of a Contract-Based Claim And, in Any Event, Fails to State a Claim or Otherwise State a Claim With Particularity.**

Count Three is a "Fraud" claim premised upon an alleged misrepresentation by "Defendants."  Plaintiff alleges that "Defendants misrepresented to [Plaintiff] that Mr. Brown would appear and perform at the Event if [Plaintiff] paid the $500,000 portion of the appearance and performance fee by March 15, 2022."  [Compl. ¶ 23.]  Plaintiff alleges that he (and no one else) wired that $500,000 to "him" – *i.e.*, Mr. Brown – on March 15, 2022.  [*Id.* ¶ 24.]  Plaintiff alleges fraud because, allegedly, "Mr. Brown had no intention of appearing or performing at the Event . . . ."  [*Id.* ¶ 23.]  Plaintiff's fraud claim fails for several reasons.

**a.**     **Plaintiff cannot convert a contract-based claim into a tort.**

40

As an initial matter, Plaintiff's "fraud" claim is a contract or quasi-contract claim disguised as a tort. As stated throughout, Plaintiff's claim for reimbursement focuses on whether the Performance Agreement (or some other contract or agreement) required Mr. Brown to perform, and if so, whether Mr. Brown did so. This is not fraud – this is a contract claim.

Plaintiff cannot claim fraud by claiming the breach of the same duty already embraced by a contract. "A tort action [such as fraud] will lie only if a party breaches a duty separate and distinct from the duties that arise under the contract." *Ebenisterie Beaubois Ltee. v. Marous Bros. Constr., Inc.*, No. 02-CV-985, 2002 U.S. Dist. LEXIS 26625, at *29 (N.D. Ohio Oct. 17, 2002) (citations omitted). But even assuming Plaintiff pled a separate duty, an award of damages for fraud must be separate from the damages on any contract-based claim. *Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir. 2000); *see also MISC Berhad v. Advanced Polymer Coatings, Inc.*, No. 1:14-CV-1188, 2014 U.S. Dist. LEXIS 143523, at *5-6 (N.D. Ohio Oct. 8, 2014).

Plaintiff's fraud claim fails both requirements. First, any duty with respect to Mr. Brown's appearance arises out of the Performance Agreement or some other agreement or contract – *i.e.*, that Mr. Brown would appear and perform if the Second Performance Fee Payment had been paid as required by that Performance Agreement or some other agreement or contract. Second, Plaintiff does not allege damages associated only with fraud not otherwise embraced by Plaintiff's attempt to plead contract-based claims. The *same* "fraud" damages are the same damages alleged for his quasi-contract claims – the $500,000 Second Performance Fee Payment. [Compl. ¶ 27.] Because Plaintiff failed to allege separate damages for fraud, his fraud claim must be dismissed.

**b.    Plaintiff fails to allege its fraud claim with particularity.**

Count Three should also be dismissed because Plaintiff failed to state his fraud claim with particularity. "Pursuant to Federal Rule of Civil Procedure 9(b), a party must state with particularity the circumstances constituting fraud . . . ." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quotation omitted). At a minimum, a party must allege the "time, place, and content of the alleged misrepresentation." *Cadence Bank, N.A. v. Hurl*, No. 2:20-CV-6403, 2022 U.S. Dist. LEXIS 44213 at *5 (S.D. Ohio Mar. 14, 2022) (quotation omitted). There must also be allegations of (a) a fraudulent scheme, (b) fraudulent intent, and (c) injury resulting from the fraud. *Id.* (quotation omitted).

Here, Plaintiff fails to allege the minimum allegations to support a fraud claim. As an initial matter, there are no allegations about the "time, place, and content" of any alleged misrepresentation. At a minimum, he must allege, among other things, the identity of the speaker of the alleged misrepresentation and the "where and when" the statements were made. *In State Dist. Cnl. Of Labor v. Omni*, 583 F.3d 935, 942 (6th Cir. 2009) (quotation omitted); *see also Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F3d 239, 255 (6th Cir. 2012) (holding similar requirements apply to fraud-by-omission claims).

The Complaint contains *no allegations* about *who specifically* made the "misrepresentations," much less *when* those misrepresentations were made. Plaintiff merely states, in conclusory and vague terms, that "Defendants" made misrepresentations. [Compl. ¶ 23, Doc. No. 1, Page ID# 4.] Generalized allegations attributing misrepresentations to all Defendants are improper because he failed the threshold requirement of pleading fraud with respect to each individual defendant. *See United States ex rel. Kramer v. Doyle*, 2022 U.S. Dist. LEXIS 92919 at *22 (S.D. Ohio Apr. 21, 2022) ("Rule 9(b) requires plaintiffs to allege fraud with particularity *on a defendant-by-defendant basis*, and not generally as to all defendants.") (emphasis added).

42

The lack of particularity is further illustrated by Plaintiff extending Mr. Brown (and CBE Touring's) alleged liability for fraud based to statements by unidentified "agents and/or representatives." [Compl. ¶ 8, Doc. No. 1, Page ID# 2–3.] Setting aside issues of pleading vicarious liability, Plaintiff's failure to identify those "agents and/or representatives" also fails to meet the particularity requirement. *See, e.g., Hamilton v. Fid. Warranty Servs.*, No. 2:15-CV-01142, 2016 U.S. Dist. LEXIS 104473, at *3–4 (N.D. Ala. Aug. 9, 2016) (finding that attributing statements to an "unknown 'representative'" fails to state a claim with particularity because the allegation "Failed to state the person responsible for making the statements"); *Vann v. Aurora Loan Servs., LLC*, No. 10-CV-04736, 2011 U.S. Dist. LEXIS 60223, at *12 (N.D. Cal. June 3, 2011) (finding that a plaintiff falls "far short of the heightened pleading requirement imposed on claims of fraud" when alleging misrepresentations by an "unidentified 'Agent'"); *cf. Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (dismissing a claim against "controlling shareholders" on Rule 9(b) grounds because "the Defendants [were] left to guess which controlling shareholders were responsible for this alleged fraud").[10]

Additionally, there are no facts suggesting fraudulent intent, let alone facts suggesting intent with particularity or even with plausibility *See Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 882 (N.D. Ohio 1998) ("[C]ourts require plaintiffs in fraudulent misrepresentation cases to allege facts that either show direct evidence or provide a strong inference of fraudulent intent."). While intent may be pled generally, to survive a motion to dismiss, Plaintiff must still

---

[10] The Complaint also fails to plausibly allege the existence of agency or representative capacity. The Complaint's vagueness with respect to the universe of potential "agents and/or representatives" who allegedly bound Mr. Brown cannot be determined, especially when Plaintiff alleges that those unidentified agents and/or representatives apparently made representations that allegedly bind Mr. Brown. This is the very type of allegation that fails to provide notice and fails to satisfy the particularity requirement. *See, e.g., Barba v. Seung Heun Lee*, No. 09-1115, 2010 U.S. Dist. LEXIS 153381, at *25–26 (D. Ariz. Aug. 24, 2010) ("Plaintiffs also allege that the corporate Defendants are liable for the fraudulent conduct of their agents . . . Plaintiffs' conclusory allegations of agency relationships between the corporate Defendants and their unidentified agents are not sufficient to meet the particularity requirements of Rule 9(b) for Plaintiffs' fraud based claims.").

plead "*facts* demonstrating . . . [an] intent to defraud." *Garcia*, 2019 U.S. Dist. LEXIS 41955, at *16 (E.D. Cal. Mar. 14, 2019) (emphasis supplied) (citation omitted).  Here, Plaintiff pleads *no* facts – none – suggestive of intent.  His only allegation is conclusory in nature.  [Compl. ¶ 25.] Aside from the fact that such conclusory allegations cannot be accepted as true for purposes of a motion to dismiss, there are also no facts to suggest that conclusion is true.

Simply put, Plaintiff failed to adequately allege an actionable fraud claim.  Accordingly, Count Three should be dismissed.

### 4.    Count Four:  Plaintiff Failed to Allege the Conversion of Specific, Identifiable Funds, and Thus His Conversion Claim Fails as a Matter of Law.

Count Four alleges conversion of the $500,000 in funds that was half of the Performance Fee owed under the Performance Agreement.  [Compl. ¶ 30, Doc. No. 1, PageID# 5.]  This claim, however, fails as a matter of law.

In Ohio, a conversion claim for money "lies only where the money involved is 'earmarked' or is specific money capable of identification, *e.g.*, money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum." *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 U.S. Dist. LEXIS 41649, at *86 (N.D. Ohio Mar. 5, 2021).  Count Four is nothing more than a catch-all claim demanding that certain money be returned, which is insufficient to state a claim. *See id.* (finding a claim that "a sum of money . . . should have been returned" is insufficient unless there specific identification of money at issue).  Notably, there are *no* allegations regarding the specific identity of any funds at issue, which as a matter of law, renders Count Four improper.

Accordingly, Count Four should be dismissed for the failure to state a claim upon which relief can be granted.

**D.**     <u>**Should This Court Hear Any Claim In This *Federal Action* That Survives Dismissal, the Case Should Be Transferred to a Federal Court in New York County.**</u>

As the CBE Touring Motion makes clear, Plaintiff's allegations are that (1) Plaintiff paid the Second Performance Fee Payment, which was established by the Performance Agreement and (2) Plaintiff expected Mr. Brown perform at The One Night Only Tour in exchange for that Second Performance Fee Payment as provided by the Performance Agreement. Those two allegations demonstrate that the Performance Agreement controls this action – and demonstrate why the Performance Agreement's forum-selection clause must be applied. Because that forum-selection clause requires suit in a federal or state court in New York County, this case should be transferred to the U.S. District Court for the Southern District of New York.

Plaintiff's entire case is premised upon the notion that Mr. Brown was required to perform at The One Night Only Tour. As Plaintiff concedes, however, that alleged requirement arose out of the Performance Agreement. [Compl. ¶ 7, Doc. No. 1, Page ID# 2.] In fact, Plaintiff's own Complaint makes clear that the Second Performance Fee Payment that he demands as damages in this action was "one-half" of the same Performance Fee that was Mr. Brown's "fee to appear and to perform," which was an arrangement established by the Performance Agreement. [*See id.* ¶¶ 7–8, Page ID# 2–3.] Consequently, no matter how Plaintiff frames his case, his claims focus on the Performance Agreement, the requirements contained in that Performance Agreement, and the rights and obligations established by that Performance Agreement.

Notably absent from the Complaint, however, is any reference to the Performance Agreement's forum-selection clause. Paragraph 15 of the Performance Agreement states, in relevant part:

> The parties agree to submit to the jurisdiction of the Federal or State courts located in New York County in any action which may arise out of this Agreement and said

courts shall have exclusive jurisdiction over all disputes between the parties pertaining to this Agreement and all matters related thereto.

[Performance Agreement ¶ 15, EXHIBIT 2 to CBE Touring's Motion.]

Although Plaintiff is not a signatory to the Performance Agreement, application of the forum-selection clause is required.  In the Sixth Circuit, a non-signatory is bound by a contractual forum-selection clause if the non-signatory is closely related and it is foreseeable that the party would be bound.  *See Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997).  Whether a non-signatory is "closely related" such that it would be foreseeable asks whether the "non-signatory should have reasonably foreseen that he might be required to appear in another jurisdiction."  *H.H. Franchising Sys. v. Brooker-Gardner*, No. 1:14-CV-651, 2015 U.S. Dist. LEXIS 94827, at *9 (S.D. Ohio July 21, 2015).

Determining whether Plaintiff is "closely related" to DML Real Estate and the Performance Agreement is a "common sense" approach based on the "totality of the circumstances," with a focus on "whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum-selection clause."  *M3 USA Corp. v. Qamoum, D.D.C.*, No. 20-2903, 2021 U.S. Dist. LEXIS 105923, at *36–37 (D.D.C. June 7, 2021) (quotation and alteration omitted).  One district court in the Sixth Circuit explained:

> [C]ourts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquiries into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. . . . [T]his approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute.

*Regions Bank v. Wyndham Hotel Mgmt.*, Case No. 3:09-1054, 2010 U.S. Dist. LEXIS 23371, *16–17 (M.D. Tenn. Mar. 12, 2010).

Here, common sense counsels in favor of applying the New York forum-selection to this dispute. As CBE Touring explains in CBE Touring's Motion, Plaintiff's Complaint acknowledges the Performance Agreement and the Performance Fee obligation (created by the Performance Agreement) that led to Plaintiff allegedly tendering the Second Performance Fee Payment. [*See* Compl. ¶¶ 7–8, Doc. No. 1, Page ID# 2.] The crux of Plaintiff's case is that he paid the remaining Performance Fee, and thus Mr. Brown's appearance should have been triggered because the Performance Agreement's Performance Fee had been satisfied. [*See id.* ¶ 7.] In other words, Plaintiff acquiesced to the forum-selection clause by becoming a key player in the performance of the Performance Agreement's obligations. *Cf. Affiliated Mtg. Protection, LLC v. Tareen*, No. A-06-4908, 2007 U.S. Dist. LEXIS 5106 (D.N.J. Jan. 24, 2007) (holding where a third party's conduct is closely related to the contractual relationship and that third-party enjoys a benefit of that contract, the forum-selection clause applies). Stated differently, Plaintiff cannot both demand that Mr. Brown appear and perform (*i.e.*, demand that CBE Touring and/or Mr. Brown perform) as established by the Performance Agreement while, at the same time, asking the Court to ignore the forum selection clause in that Performance Agreement.

This is particularly true because the Complaint reads as if Plaintiff's Second Performance Fee Payment was made to ensure that DML Real Estate's Performance Fee obligation had been satisfied to ensure Mr. Brown's appearance, similar to an agent acting on behalf of a principal who would otherwise be bound by the forum-selection clause. *See, e.g., Green Technology Lighting Corp. v. Liberty Surplus Ins. Corp.*, No. 1:17-CV-00432, 2018 U.S. Dist. LEXIS 32927, at *15–16 (D. Idaho Feb. 26, 2018) (recognizing parties as closely related when the parties were "agents in obtaining the disputed insurance" such that they could "foresee a dispute over the Policy might arise and would be subject to the Policy's forum-selection clause"). To the extent

47

Mr. Brown had any duty owed, that duty had to have arisen from the Performance Agreement, and thus the Performance Agreement compels the Court to transfer this case to New York.

Finally, permitting Plaintiff to escape the forum-selection clause sets dangerous precedent.  Parties similar to DML Real Estate could agree to forum-selection clauses and then negate those clauses by outsourcing the contractual obligations to third-parties, and should there be a breach, those third-parties could litigate in foreign forums to deprive the party in privity of the agreed-upon forum.  Similarly, business entities could shift responsibilities to a subsidiary or affiliated entity to nullify the clause.  As the Seventh Circuit observed:

> Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against affiliates of signatories, such clauses often could easily be evaded. For example, a signatory of a contract containing such a clause might shift the business to which the contract pertained to a corporate affiliate—perhaps one created for the very purpose of providing a new home for the business—thereby nullifying the clause.

*Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 441 (7th Cir. 2012); *cf. Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgt.*, 364 F.3d 884, 888 (7th Cir. 2004) (observing that a plaintiff's selection of legal theories to press and parties to sue cannot be used to circumvent forum-selection clauses because doing so renders the clauses "empty").

Accordingly, Mr. Brown concurs with CBE Touring in that a "common sense" application of the rule here requires a New York court to adjudicate Plaintiff's claims – if for no other reason that Plaintiff cannot acknowledge the Performance Agreement at issue, allegedly participate in the contractual obligation at issue in that contract, and then sue in a new forum not otherwise permitted by the forum-selection clause.  *See Little v. XL Ins. Co. SE*, No. 18-CV-11919, 2019 U.S. Dist. LEXIS 200828, at *9 (S.D.N.Y. Nov. 18, 2019) ("It is well settled that a non-signatory to an agreement containing a forum selection clause cannot seek to exploit certain provisions of the agreement and, at the same time, avoid others.").

48

Accordingly, because Plaintiff filed suit in an improper forum this case should be dismissed.  Alternatively, because the Performance Agreement requires the case to be brought in New York, this case should be transferred to the United States District Court for the Southern District of New York, which embraces New York County, New York.

### IV.  CONCLUSION

This case should not move forward in this Court for several reasons.  First, there is parallel state litigation currently underway in the State of Texas, and this Court should dismiss or otherwise stay this case until that litigation concludes.  Second, Plaintiff's case should also be dismissed – or he should be required to join as a necessary party – DML Real Estate, which has an interest in this action and would be affected by this case regardless of how it concludes.  Third, Plaintiff failed to state a cause of action against Mr. Brown because, as explained above, each of his causes of action is flawed.  Finally, Plaintiff is closely related to DML Real Estate and his case is based, at least in part, on the Performance Agreement, and thus the case should be dismissed or transferred to the Southern District of New York pursuant to a forum selection clause.

Accordingly, for the reasons stated above, Mr. Brown moves the Court to:

- Dismiss this action in its entirety pursuant to the *Colorado River* doctrine or stay this action pursuant to *Colorado River* or this Court's inherent authority until the *Consolidated Texas Action* concludes;

- Dismiss the action because Plaintiff failed to join a necessary party, or otherwise order Plaintiff to join DML Real Estate;

- Dismiss the Complaint because Plaintiff failed to state a cognizable cause of action; or,

- Dismiss the Complaint because Plaintiff filed this action in an improper venue, or otherwise transfer the case to the Southern District of New York.

Respectfully submitted,

_/s/ William M. Mattes_

William M. Mattes (0040465)
Justin M. Burns (0093686)
DINSMORE & SHOHL LLP
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
Tel:    (614) 628-6880
Fax:    (614) 628-6890
Email: bill.mattes@dinsmore.com;
justin.burns@dinsmore.com

_Counsel for Defendants CBE Touring, LLC
and Chris Brown_

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 25, 2023, the foregoing was filed through the Court's CM/ECF

system, which will provide notice of filing to all parties who have entered an appearance.  A copy

has also been served on the following by electronic mail:

**CHRISTOPHER R. PETTIT**
1160 Dublin Road, Suite 400
Columbus, Ohio 43215
Email: cpettit@lnlattorneys.com

*and*

**JUSTIN FOX**
620 East Broad Street, Suite 200
Columbus, Ohio 43215
Email:  jfox@columbusattorney.net

*Counsel for Plaintiff John Waldron*

<u>*s/ William M. Mattes*</u>
William M. Mattes (0040465)