# EXHIBIT A

1/20/2023 4:36 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 72005709
By: Kathy Givens
Filed: 1/20/2023 4:36 PM

## CAUSE NO. 2022-50234

| | | |
|---|---|---|
| **DML REAL ESTATE INVESTORS AND CONSTRUCTION, LLC** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **CHRIS BROWN; CBE TOURING, LLC; CLUTCH CITY SPORTS & ENTERTAINMENT, LP** | § | |
| | § | |
| | § | |
| *Defendants.* | § | **61st JUDICIAL DISTRICT** |

### THIRD PARTY PLAINTIFF DML REAL ESTATE INVESTORS AND CONSTRUCTION, LLC'S INITIAL DISCLOSURES TO ALL PARTIES

TO:     Third Party Defendants, Chris Brown and CBE Touring, LLC, by and through their attorneys of record, Tom Van Arsdel and Ciara Perritano, WINSTEAD PC, 600 Travis, Suite 5200, Houston, Texas 77002.

COMES NOW DML REAL ESTATE INVESTORS AND CONSTRUCTION, LLC (as "Third Party Plaintiff") in accordance with Texas Rules of Civil Procedure, and hereby serve its Initial Disclosures to all parties.

Respectfully submitted,

THE BENNETT LAW FIRM, PLLC

By:    /s/ *Kimmie R. Bennett*    .
KIMBERLY R. BENNETT
Texas State Bar No. 24012146
710 Flying Bridge Way
Crosby, Texas 77532
kbennetttx@earthlink.net
Telephone: 832.423.3795
Facsimile:  281.328.7310

And

JOSEPH M. GOURRIER
Texas State Bar No. 24007258
THE GOURRIER LAW FIRM, PLLC
4900 Fournace Place, Suite 456

Bellaire, Texas 77401
joseph@gourrierlaw.com
Telephone: 713.533.9077
Facsimile: 713.533.9376

And

BYRON M. BUCHANAN
Texas State Bar No. 00796268
THE BUCHANAN LAW OFFICE, P.C.
1002 Gemini, Ste 225C
Houston, TX 77058
Byron@thebuchananlawoffice.com
Telephone:  713.936.0783
Facsimile: 713.583.0444

ATTORNEYS FOR DEFENDANT/THIRD PARTY PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Texas Rules of Civil Procedure via U.S. Mail, certified, return receipt requested, e-filing, email and/or facsimile, on this 20th day of January 2023.

| | |
|---|---|
| GULF COAST INSURANCE LAWYERS, P.C.<br>Danny Ray Scott<br>State Bar No. 24010920<br>The Jones Building<br>708 Main Street<br>danny@gulfcoastinsurancelawyers.com<br>Houston, Texas 77002<br>Telephone: (713) 941-9309<br>Facsimile: (844) 270-0740<br>***Attorney for Plaintiff 7 Kings 1 Limited Liability Company*** | WINSTEAD PC<br>Tom Van Arsdel<br>Texas Bar No. 24008196<br>tvanarsdel@winstead.com<br>Ciara Perritano<br>Texas Bar No. 24096440<br>cperritano@winstead.com<br>600 Travis, Suite 5200<br>Houston, Texas 77002<br>Telephone: (713) 650-8400<br>Facsimile: (713) 650-2400<br>***Attorneys for Third Party Defendants CBE Touring, LLC and Chris Brown*** |

*/s/ Kimmie R. Bennett*

Kimberly R. Bennett

## DEFENDANT/THIRD PARTY PLAINTIFF'S INITIAL DISCLOSURES

a.      Provide the correct names of the parties to this lawsuit.

**RESPONSE:**

DML Real Estate Investors and Construction, LLC states that its correct name has been used by the parties in this lawsuit. DML Real Estate Investors and Construction has no knowledge if the other parties have been correctly named.

b.      Provide the name, address and telephone number of any potential parties.

**RESPONSE:**

None at this time. DML Real Estate Investors and Construction, LLC specifically reserves the right to supplement this response as discovery progresses in this lawsuit.

c.      Provide the legal theories and, in general, the factual bases of your claims or defenses.

**RESPONSE:**

**FACTS**

October 6, 2022, Plaintiff **7** Kings Limited Liability Company filed its suit against Defendant/Third Party Plaintiff DML Real Estate Investors and Construction, LLC, alleging breach of contract arising out of a cancelled concert to be held at Toyota Center. That suit was assigned to the 129th District Court.

A suit arising out of the same facts and circumstances had previously been filed in this Court.

Defendant/Third Party Plaintiff filed a motion to consolidate Plaintiff **7** Kings Limited Liability Company's lawsuit into the previously filed lawsuit on October 12, 2022.

The motion to consolidate was granted, and an order consolidating the causes of action was entered on October 25, 2022.

Defendant/Third Party Plaintiff brings this action against Third Party Defendants CHRIS BROWN and CBE TOURING, LLC for actual and exemplary damages caused by the last-minute cancellation of a benefit concert at the Toyota Center that was to be headlined by internationally known music performing and recording artist, Third Party Defendant CHRIS BROWN, due to BROWN's failure to appear and perform as contractually agreed. The failure to appear and perform form the basis of Plaintiff **7** Kings Limited Liability Company's claims against Defendant/Third Party Plaintiff DML Real Estate Investors and Construction, LLC.

Defendant/Third Party Plaintiff alleges that on September 22, 2021, it entered into a written "Live Performance Agreement" ("LPA") with Third Party Defendant BROWN's touring company, Third Party Defendant CBE TOURING, LLC, for BROWN to perform

along with other music artists at a live concert at the Toyota Center in Houston, Texas on November 21, 2021:

---

LIVE PERFORMANCE AGREEMENT

This live performance agreement ("Agreement"), dated as of September 22, 2021, sets forth the agreement between CBE Touring, LLC ("Company"), c/o 16000 Ventura Blvd #600, Encino, CA 91436, Att: David Weise, and DML Real Estate Investors and Construction LLC ("Purchaser"), located at 26 Commanders Cove, Missouri City, TX 77459, Att: LaJuan (Jodie) Bailey.

WHEREAS, Purchaser desires to engage Company to furnish the services of Christopher Brown p/k/a "Chris Brown" ("Artist") to perform at one (1) live performance (the "Performance") in connection with Purchaser's event known as "The One Night Only Tour" (the "Event") to be held on November 21, 2021 (the "Date") at the Toyota Center (the "Venue") located in Houston, Texas (the "City") solely for the attendees of such Event (collectively, the "Attendees"), and Purchaser desires to provide all necessary production services and requirements in connection with the Performance, all in accordance with and subject to the terms set forth herein; and

---

Defendant/Third Party Plaintiff alleges that the music event was named "The One Night Only Tour" and that some of the proceeds from the event would be used to assist indigent homeowners repair their homes which had been damaged by Hurricanes Ida and Nicholas.

Defendant/Third Party Plaintiff alleges that it also entered into a written lease with Clutch City Sports & Entertainment, LP ("CCS&E") to lease the Toyota Center for "The One Night Only Tour" concert:

---

**TOYOTA CENTER USE AGREEMENT**

This **TOYOTA CENTER USE AGREEMENT** ("Agreement") is executed as of the _____ day of September, 2021, by and between **CLUTCH CITY SPORTS & ENTERTAINMENT, L.P.**, a Texas limited partnership ("CCS&E"), and **DML REAL ESTATE INVESTORS LLC AND HOB ENTERTAINMENT.** (collectively, "Licensee").

---

Defendant/Third Party Plaintiff alleges that after the LPA was executed, Defendant/Third Party Plaintiff paid $500,000 as the first installment of the $1 million performance fee that was due under the LPA to Defendant CBE by wire transfers.

Defendant/Third Party Plaintiff alleges that for the $100,000 travel buyout that was due under the LPA, Defendants' authorized agent, Boubacar Diallo, travelled to Houston, Texas to obtain the payment from Defendant/Third Party Plaintiff on behalf of Third Party Defendants CBE and BROWN.

Defendant/Third Party Plaintiff alleges that upon arriving, Third Party Defendants' authorized agent, Boubacar Diallo, requested Defendant/Third Party Plaintiff pay the $100,000 travel buyout in cash and when Defendant/Third Party Plaintiff refused, Diallo requested that a check be made out to his construction company, One Source Construction, Inc.

Defendant/Third Party Plaintiff alleges that because its representative thought Diallo's request was strange, she made a point to note on the check's subject line that it was for "Chris Brown Travel Buyout" on the check dated October 1, 2021:



Defendant/Third Party Plaintiff alleges that it subsequently received an email from Third party Defendants' legal counsel claiming that Defendant/Third Party Plaintiff had not paid the $100,000 travel buyout and that Defendant/Third Party Plaintiff was in breach of the LPA.

Defendant/Third Party Plaintiff alleges that it advised Third party Defendants' legal counsel that: (1) a $100,000 check had been given to Third Party Defendants' authorized agent, Boubacar Diallo, (2) that Diallo had requested that the check be made out to his construction company, and (3) that the check had been deposited and paid by Defendant/Third Party Plaintiff's bank:



Defendant/Third Party Plaintiff alleges that after being confronted with this information, Third party Defendants' legal counsel did not raise the issue of payment of the $100,000

travel buyout again and the production of concert continued forward, although slowly because the Defendants failed to timely provide necessary production information, as discussed further below.

Defendant/Third Party Plaintiff alleges that after the LPA was executed and the $500,000 first installment and the $100,000 travel buyout due under the LPA to Third Party Defendant CBE had been paid, Defendant/Third Party Plaintiff began to aggressively promote the benefit concert in an attempt to sell out the tickets for the venue, since the purpose of the event was to raise funds for hurricane victims.

Defendant/Third Party Plaintiff alleges that as part of its promotion efforts and under the LPA, Third Party Defendants BROWN, CBE and/or its authorized agents approved a promotional flyer for the event.

Defendant/Third Party Plaintiff alleges that the promotional flyer was approved by Third Party Defendants' authorized agent, Boubacar Diallo, because Defendant/Third Party Plaintiff was unable to reach Third Party Defendant BROWN's manager, Anthony Wilson, by telephone or email. Indeed, Defendant/Third Party Plaintiff alleges that its representatives never communicated with Defendant BROWN's manager, Anthony Wilson, during the term of the LPA, in spite of trying to reach him on numerous occasions by telephone and email to discuss the event.

Defendant/Third Party Plaintiff alleges that the approved promotional flyer depicted Third Party Defendant BROWN and other music artists who would be performing at the November 21st concert, including Bryson Tiller, Monica, and Tone Stith:



Defendant/Third Party Plaintiff alleges that most of its communications were with the Third Party Defendants' authorized agent, Boubacar Diallo, who was included on multiple emails along with Wilson discussing issues related to the event.

Defendant/Third Party Plaintiff alleges that as the November 21st event was being finalized, an unfortunate incident occurred on November 5, 2021 in Houston, Texas, when ten (10) people died and hundreds were injured in a stampede while local music artist, Travis Scott, was performing during the Astroworld Music Festival at NRG Park.

Defendant/Third Party Plaintiff alleges that on November 18, 2022, after earlier efforts to obtain a new date failed, Defendant/Third Party Plaintiff invoked the force majeure clause in the LPA and demanded that the Defendants return the monies that had been paid to that point and documented the numerous issues Defendant/Third Party Plaintiff had with the Third Party Defendants' conduct:

The unforeseeable tragedy of the Astroworld Festival has been deemed a force majeure event herein. As stated above, my client has attempted on multiple occasions to arrange a new performance date, however, has received little to no communication from your client—see the attached Exhibit "A" which is a text message thread between my client and Boubacar Diallo, your client's representative. My client repeatedly requested a response to proposed dates for a reschedule; however, Mr. Diallo failed to respond in kind. In fact, on November 11, 2021, my client proposed December 17, 2021, January 8, 2022, February 11, 2022, or February 12, 2022, as potential reschedule dates. Mr. Diallo requested until November 15, 2021, to respond with an affirmative date. Ultimately, he failed to respond or communicate with my client until Wednesday November 17, 2021, only to convey he did not yet have a reschedule date, and by which point several of the proposed reschedule dates were no longer available. Unfortunately, this lack of communication is wholly indicative of your client's behavior towards my client. For example, despite the Agreement being executed on September 22, 2021, my client didn't receive the production rider until November 9, 2021 (and received a *partial* production rider), less than two (2) weeks before the scheduled date of the performance and despite constant requests and demands for the same. As you know, this is a basic—yet absolutely necessary— component of arranging a performance, especially of the caliber of performer like Chris Brown. Moreover, my client lost its *Fifty-Thousand Dollars* ($50,000.00) deposit with the original production company due to your client's failure to provide the production rider within a reasonable time. The production rider situation in conjunction with other incidents throughout (withholding of technical rider, lack of promotion, demand for certain supporting acts, *et cetera*) lead to an inclination regarding your client's intent to perform.

Defendant/Third Party Plaintiff alleges that after the letter from its counsel, the parties mutually agreed to change the date of the concert from November 21, 2021 to March 19, 2022 and Defendant/Third Party Plaintiff was also able to secure the new event date of March 19, 2022 for the Toyota Center.

Defendant/Third Party Plaintiff alleges on information and belief and unknown to Defendant/Third Party Plaintiff DML Real Estate Investors and Construction, LLC, that sometime after the November 21st event date was changed to March 19, 2022, Third Party Defendants CBE and/or BROWN entered into a performance agreement with international concert promoter, Live Nation and/or Rolling Loud, to conduct a 27-city tour with hip hop artist Lil Baby, entitled "Chris Brown & Lil Baby: One of Them Ones Tour," which includes a tour stop in Houston, Texas on August 17, 2022:



Defendant/Third Party Plaintiff alleges on information and belief that the Third Party Defendants' performance agreement for the "Chris Brown & Lil Baby: One of Them Ones Tour," contains what is known in the live music industry as a radius clause.

Defendant/Third Party Plaintiff alleges that a radius clause prohibits the artist from performing and often for advertising for another live performance for a specific time period within a designated geographical radius and are used by large concert promoters to protect the significant, upfront financial investments made to put on the live performances.

Defendant/Third Party Plaintiff alleges that the radius clause secures exclusive access to artists for the term of the clause and shield the promoter's ticket sales from competing promotions.

Defendant/Third Party Plaintiff alleges that radius clauses used in the live music industry include enforcement mechanisms for violations such as performing at or advertising for another music concert, including but not limited to: (1) reclaiming the artist's performance

fee, (2) prohibiting the artist from performing at the second concert, and/or (3) waiving the radius clause in exchange for a percentage of the second promoter's profits.

Defendant/Third Party Plaintiff alleges that large music promoters, like Live Nation and its main competitor, Anschutz Entertainment Group (AEG), have been sued over radius clauses by litigants claiming that the clauses are anti-competitive and unfairly restrict live performances.

Defendant/Third Party Plaintiff alleges that its Live Performance Agreement with Third Party Defendant CBE includes the following radius clause in Paragraph 6 (b):

> 6.    REPRESENTATIONS AND WARRANTIES.
>
>        (a)    Company represents and warrants that Company has the full right, power and authority to enter into and perform this Agreement, to grant all of the rights herein granted to Purchaser and to cause Artist to perform all of the services required of Artist herein.
>
>        (b)    Company represents and warrants that, as of execution date of this Agreement herein, through the Term, and continuing for thirty (30) days following the expiration of the Term, it does not, will not, and shall not, have any outstanding, or enter into, any other or further contractual obligation(s) to perform or engage any live concert performance utilizing the services of the Artist within the City, or within a one hundred (100) mile radius thereto, which the Company acknowledges and agrees is a reasonable geographic and time restriction. For the avoidance of doubt, the foregoing restriction shall not apply to any so called "hosting" or club engagements, appearances and/or performances.

Defendant/Third Party Plaintiff alleges that its LPA with Third Party Defendant CBE defines the words "Term" and "Performance" as:

> 1.    TERM. The term of this Agreement (the "Term") shall begin on the date hereof and shall end at the conclusion of the Performance.

> WHEREAS, Purchaser desires to engage Company to furnish the services of Christopher Brown p/k/a "Chris Brown" ("Artist") to perform at one (1) live performance (the "Performance") in connection with

Defendant/Third Party Plaintiff alleges that in other words—from September 22, 2021 when the LPA was executed and continuing through the time of BROWN's performance under the LPA and for 30 days after his performance under the LPA—Defendant CBE represented and warranted that it had authority to cause Third Party Defendant BROWN to perform under the LPA and that Third Party Defendant CBE would not enter into another contractual obligation for BROWN within the city of Houston and surrounding 100 mile radius.

Defendant/Third Party Plaintiff alleges that because Third Party Defendant BROWN never gave the "Performance" required under the terms of the LPA between Defendant/Third Party Plaintiff and Third Party Defendant CBE, Third Party Defendant CBE was prohibited by the radius clause in the LPA from entering into the performance

agreement for the "Chris Brown & Lil Baby: One of Them Ones Tour" in Houston, Texas on August 17, 2022.

Defendant/Third Party Plaintiff alleges on information and belief that after the Third Party Defendants' entered into the performance agreement for the "Chris Brown & Lil Baby: One of Them Ones Tour", Live Nation sent the Third Party Defendants a cease and desist letter advising that if Third Party Defendant BROWN performed under Defendant/Third Party Plaintiff DML Real Estate Investors and Construction, LLC's LPA on March 19, 2022 in Houston, Texas, that he would be in breach of the performance agreement with Live Nation and/or Rolling Loud and that Live Nation would seek to recoup the performance fee it had paid to Third Party Defendants.

Defendant/Third Party Plaintiff alleges that instead of informing Defendant/Third Party Plaintiff that the Third Party Defendants had received a cease and desist letter from Live Nation and returning Defendant/Third Party Plaintiff DML Real Estate Investors and Construction, LLC's performance fee, the Third Party Defendants decided to pretend as if Third Party Defendant BROWN would perform on March 19, 2022 in Houston, Texas, although the Third Party Defendants had no intention of BROWN actually performing because they did not want to risk violating the radius clause in the Live Nation and/or Rolling Loud performance agreement

Defendant/Third Party Plaintiff alleges on information and belief that the Third Party Defendants began secretly plotting to undermine and sabotage Defendant/Third Party Plaintiff DML Real Estate Investors and Construction, LLC's "The One Night Only Tour" event to avoid violating the radius clause in the Live Nation and/or Rolling Loud performance agreement and losing the performance fee that the Third Party Defendants had been paid—which is estimated to be several million dollars.

Defendant/Third Party Plaintiff alleges that the Third Party Defendants failed to timely provide the production specifications for Third Party Defendant BROWN's live performance that caused Defendant/Third Party Plaintiff to incur over $50,000 in additional production costs.

Defendant/Third Party Plaintiff alleges that the Third Party Defendants refused to participate in any promotion activities for "The One Night Only Tour" event, even something as simple as Third Party Defendant BROWN posting a promotional flyer on his official Instagram page, like he was all too happy to do for the "Chris Brown & Lil Baby: One of Them Ones Tour" event and reach his 118 million followers. *See*, ¶28, above.

Defendant/Third Party Plaintiff alleges that when another scheduled artist, Bryson Tiller, demanded more money because of the changed performance date and Plaintiff refused, he withdrew from the event.

Defendant/Third Party Plaintiff alleges that when the Third Party Defendants were approached to approve new promotional materials for the event without Bryson Tiller, they refused to respond Defendant/Third Party Plaintiff's requests for approval.

Defendant/Third Party Plaintiff alleges on information and belief that the Third Party Defendants received a second cease and desist letter from Live Nation, again threatening to recoup the large performance fee it had paid for Third Party Defendant BROWN's services if he performed for Defendant/Third Party Plaintiff's event.

Defendant/Third Party Plaintiff alleges that instead of informing Defendant/Third Party Plaintiff that the Third Party Defendants had received a second cease and desist letter from Live Nation and returning Defendant/Third Party Plaintiff's performance fee, the Third Party Defendants had their legal counsel send Defendant/Third Party Plaintiff a demand letter on March 15, 2022, demanding that Defendant/Third Party Plaintiff pay the back end of the performance fee—another $500,000—even though the parties had not agreed on a new date for the second payment and the industry standard is that the back end performance fee is not paid until the day of the performance when the artist is in the city to insure that the artist actually performs at the concert.

Defendant/Third Party Plaintiff alleges that this was consistent with the Third Party Defendants' plan to take the full $1 million performance fee and $100,000 travel buyout from Defendant/Third Party Plaintiff knowing that the Third Party Defendants had no intention of BROWN showing up to perform at Defendant/Third Party Plaintiff's event because of the cease and desist letters from Live Nation and the danger of losing millions.

Defendant/Third Party Plaintiff alleges that because the Third Party Defendants were threatening to terminate the LPA and not show up for the event days before it was scheduled to start, the Defendant/Third Party Plaintiff wired Third Party Defendant CBE another $500,000 on or about March 15, 2022.

Defendant/Third Party Plaintiff alleges that when the attempt to terminate the LPA due to nonpayment of the back-end performance fee failed on March 15, 2022, the Third Party Defendants had their legal counsel email another termination notice to Defendant/Third Party Plaintiff on March 17, 2022, this time complaining about the lineup change due to the loss of Bryson Tiller.

Defendant/Third Party Plaintiff alleges that according to the March 17, 2022 letter from Third Party Defendants' counsel:

> Company have been informed that, without Company or Artist's approval, Bryson Tiller has been removed from the One Night Only lineup and has been replaced with Tone Stith.
>
> As you are aware, pursuant to subparagraph 2(e)(ii) of the Agreement, *"All other musical artists who perform at the Event other than Artist shall require Company's and/or Artist's prior written approval (which approval shall not be unreasonably withheld)"*. Please be advised that Tone Stith has not been (nor will be) approved by Company or Artist. Tone Stith is not a reasonable replacement for Bryson Tiller and this change in the lineup (especially at the last moment and without seeking prior approval) is completely unacceptable.

Defendant/Third Party Plaintiff alleges that the March 17th letter continued by stating the Third Party Defendants' true intent—that BROWN would not be performing at the Defendant/Third Party Plaintiff's event—even though the alleged reason for the alleged termination is demonstrably false:

> **Please be advised that this is a material breach of the live performance agreement and that, as time is of the essence and the Performance is less than two (2) days away, Company is hereby terminating the Agreement and Artist will not be performing at the Event.**

Defendant/Third Party Plaintiff alleges that under Paragraph 7(d) of the LPA, a complaint about the artist lineup does not give either party a right to unilaterally terminate the agreement, instead the party has a right to cure any alleged breach within five (5) days or commence to cure:

> (d)     Neither party hereto shall be deemed to be in breach of any of their respective obligations hereunder unless and until the other party shall have given written notice, describing in detail the breach, and the party in default shall have failed to cure that breach within five (5) days after receipt of that written notice (or such other time as may be reasonable under the circumstances, it being understood and agreed by the parties hereto that time is of the essence with respect to the Performance in the absence of a Force Majeure Event) or, if the breach cannot be cured within said five (5) day period, if the party in default does not commence to cure such breach within said five (5) day period and continue to so cure with reasonable diligence.  Notwithstanding anything to the contrary contained in this Agreement, nothing contained in this

Defendant/Third Party Plaintiff alleges that the email transmitting the March 17th letter from Third Party Defendants' counsel recognized that Defendant/Third Party Plaintiff had a right to cure, even though the Third Party Defendants' counsel only gave Plaintiff a mere four (4) hours to attempt to cure the alleged breach:

On Thu, Mar 17, 2022 at 1:01 PM Matthew Kamen <mkamen@qispc.com> wrote:

Kris—as you are already aware, this firm represents the performing and recording artist Chris Brown ("Artist") and his related and affiliated entities, including CBE Touring, LLC ("Company"). Reference is made to that certain live performance agreement between Company and DML Real Estate Investors and Construction LLC ("Purchaser"), dated as of September 22, 2021, as amended (the "Agreement"), pursuant to which Artist was scheduled to perform at the Toyota Center in Houston, Texas on November 21, 2021 (with such performance was subsequently rescheduled for March 19, 2022) (the "Performance"). Except as provided herein, all terms defined in the Agreement shall have the same meaning when used herein. A copy of the fully executed Agreement is enclosed herein

Company have been informed that, without Company or Artist's approval, Bryson Tiller has been removed from the One Night Only lineup and has been replaced with Tone Stith.

As you are aware, pursuant to subparagraph 2(e)(ii) of the Agreement, *"All other musical artists who perform at the Event other than Artist shall require Company's and/or Artist's prior written approval (which approval shall not be unreasonably withheld)"*. Please be advised that Tone Stith has not been (nor will be) approved by Company or Artist. Tone Stith is not a reasonable replacement for Bryson Tiller and this change in the lineup (especially at the last moment and without seeking prior approval) is completely unacceptable.

Please be advised that this is a material breach of the live performance agreement and that, as time is of the essence, this must be remedied by the close of business today (3/17/22) or we will consider the agreement terminated.

Defendant/Third Party Plaintiff alleges that more importantly, there was no breach due to the artist lineup!

Defendant/Third Party Plaintiff alleges that although the LPA gave the Third Party Defendants a right to approve artists in the performance lineup, Tone Stith was not a new addition to the performance lineup, he was part of the original performance lineup from the November 21, 2021 and had already been approved by the Third Party Defendants—as evidenced by his appearance on the original promotional materials from when the event was scheduled for November 21st:



Defendant/Third Party Plaintiff alleges that because no artist was being added to the performance lineup for the Third Party Defendants to approve and Tone Stith had already been approved by the Third Party Defendants months before, there was no breach by the Defendant/Third Party Plaintiff and this flimsy excuse to justify the Third Party Defendants' failure to appear for Defendant/Third Party Plaintiff's event is exposed for the flagrant lie that it is.

Defendant/Third Party Plaintiff alleges that even if the Third Party Defendants did not want to appear for Defendant/Third Party Plaintiff's event as they were contractually obligated to do because of the fear of losing the Live Nation performance fee, all they had to do was tell Defendant/Third Party Plaintiff and return the $1.1 million that they had been paid—but no—the Third Party Defendants wanted to keep both the Live Nation performance fee and Defendant/Third Party Plaintiff's performance fee and fraudulently tried to keep both by failing to disclose the existence of the Live Nation and/or Rolling Loud performance agreement while manufacturing phony breaches by Defendant/Third Party Plaintiff in a blatant attempt to terminate the LPA.

Defendant/Third Party Plaintiff alleges that the Third Party Defendants added insult to injury on March 19, 2022, the day of Plaintiff's event, because Plaintiff still believed BROWN was going to appear and perform for the sold out show, only to learn that he was not from a post on BROWN's Instagram page:



Defendant/Third Party Plaintiff alleges that upon learning that Chris Brown, the headlining act of the sold out "The One Night Only Tour" event had cancelled at 2:30 p.m. on the day of the performance, in spite of having been paid $1.1 million, Defendant/Third Party Plaintiff made the difficult decision to cancel the entire event to avoid what certainly would have been pandemonium in the Toyota Center had paying guests not gotten the show that they had paid their hard-earned money to see.

Defendant/Third Party Plaintiff alleges that cancelling the event was only the beginning of the financial harm caused by the Third Party Defendants' blatantly fraudulent and criminal conduct.

Defendant/Third Party Plaintiff alleges that it lost all of the performance fees paid to the other artists, had to refund all of the paid ticket funds, lost all of the money on the production costs and leasing fees and worse, because she was forced to cancel on the day of the event without a performance, Defendant/Third Party Plaintiff was sent a demand letter by CCS&E for approximately $400,000 for losses suffered by the Toyota Center. Defendant/Third Party Plaintiff alleges that the worst victims are the indigent homeowners whose houses were damaged by hurricanes who still have not been able to get their homes repaired—but Third Party Defendants CBE and BROWN don't care—they are still coming to Houston for a concert on August 17, 2022.

## CAUSES OF ACTION

### FRAUD

Defendant/Third Party Plaintiff alleges that after entering into the written LPA with Defendant/Third Party Plaintiff and expressly representing and warranting that it would not enter into another contractual agreement for a live performance by Third Party Defendant BROWN in Houston, Texas during the term of the LPA, Third Party Defendant CBE entered into a written performance agreement with Live Nation and/or Rolling Loud for the "Chris Brown & Lil Baby: One of Them Ones Tour" which included a tour stop in Houston, Texas.

Defendant/Third Party Plaintiff further alleges that the Third Party Defendants' written performance agreement with Live Nation for the "Chris Brown & Lil Baby: One of Them Ones Tour" included a radius clause which conflicted with the Third Party Defendants' contractual obligations under the LPA with Plaintiff to perform on March 19, 2022 as part of Plaintiff's "The One Night Only Tour" event.

**Defendant/Third Party Plaintiff alleges that because of the express warranties and representations contained in the LPA, Third Party Defendants CBE and BROWN had a duty to disclose to Defendant/Third Party Plaintiff the following material facts that: (1) they had entered into the written performance agreement with Live Nation for the "Chris Brown & Lil Baby: One of Them Ones Tour", (2) that the agreement contained a radius clause which conflicted with the Defendants' contractual obligations under the LPA, (3) that the Third Party Defendants had received two cease and desist letters from Live Nation advising the Third Party Defendants not to participate or otherwise perform in Defendant/Third Party Plaintiff's event on March 19, 2022, and (4) that the Third Party Defendants did not intend to perform in Defendant/Third Party Plaintiff's event on March 19, 2022 as contractually obligated by the LPA because of the performance agreement with Live Nation and/or Rolling Loud.**

Defendant/Third Party Plaintiff alleges that the Third Party Defendants CBE and BROWN knew: (1) that Defendant/Third Party Plaintiff was unaware of the fact that they had entered into the written performance agreement with Live Nation and/or Rolling Loud for the "Chris Brown & Lil Baby: One of Them Ones Tour", that the agreement contained a radius clause which conflicted with the Third Party Defendants' contractual obligations under the LPA, that the Third Party Defendants had received two cease and desist letters from Live Nation advising the Third Party Defendants not to participate or otherwise perform in Defendant/Third Party Plaintiff's event on March 19, 2022, that the Third Party Defendants did not intend to perform in Defendant/Third Party Plaintiff's event on March 19, 2022 as contractually obligated by the LPA because of the performance agreement with Live Nation and/or Rolling Loud, and (2) that Defendant/Third Party Plaintiff did not have an equal opportunity to discover these material facts.

Defendant/Third Party Plaintiff alleges that the Third Party Defendants were deliberately silent when they had a duty to speak and that the Third Party Defendants have never

disclosed to Defendant/Third Party Plaintiff the material facts that they entered into a written performance agreement with Live Nation and/or Rolling Loud for the "Chris Brown & Lil Baby: One of Them Ones Tour", that the agreement contained a radius clause which conflicted with the Third Party Defendants' contractual obligations under the LPA, that the Third Party Defendants had received two cease and desist letters from Live Nation advising the them not to participate or otherwise perform in Defendant/Third Party Plaintiff's event on March 19, 2022, and that the Third Party Defendants did not intend to perform in the event on March 19, 2022 as contractually obligated by the LPA because of the performance agreement with Live Nation and/or Rolling Loud.

Defendant/Third Party Plaintiff alleges that by failing to disclose the material facts listed above, the Third Party Defendants intended: (1) to induce Defendant/Third Party Plaintiff to make the back end performance fee payment of $500,000 on March 15, 2022, (2) to induce Defendant/Third Party Plaintiff not to terminate the LPA and demand repayment of the $500,000 for the first half of the performance fee and the $100,000 travel buyout which had previously been paid, (3) to induce Defendant/Third Party Plaintiff to continue expending monies for the production of Plaintiff's March 19, 2022 "The One Night Only Tour" event, and (4) to prevent Defendant/Third Party Plaintiff from exercising the legal and equitable remedies that were available to it for the Third Party Defendants' breach of the LPA.

Defendant/Third Party Plaintiff alleges that it relied on Third Party Defendants' nondisclosure of the material facts listed above to its detriment by: (1) making the back end performance fee payment of $500,000 to Third Party Defendant CBE on March 15, 2022, (2) not terminating the LPA and demanding repayment of the $500,000 for the first half of the performance fee and the $100,000 travel buyout which had previously been paid, (3) continuing to expend monies for the production of Plaintiff's March 19, 2022 "The One Night Only Tour" event, and (4) not exercising the legal and equitable remedies that were available to it for the Third Party Defendants' breach of the LPA.

Defendant/Third Party Plaintiff alleges that it has suffered significant injuries and damages as a result of acting without knowledge of the material facts listed above which the Third Party Defendants deliberately and intentionally failed to disclose to Defendant/Third Party Plaintiff.

### BREACH OF CONTRACT

Defendant/Third Party Plaintiff alleges that it had a valid and existing contract with Third Party Defendant CBE for a live performance by Third Party Defendant BROWN, as evidenced by the written LPA.

Defendant/Third Party Plaintiff alleges that it paid good and valuable consideration of $1.1 million to Third Party Defendant CBE in exchange for receiving Third Party Defendant BROWN's services at a live performance in Houston, Texas.

Defendant/Third Party Plaintiff alleges that it fully performed its obligations under the LPA, but that Third Party Defendants CBE and BROWN breached their obligations under

the LPA and that Third Party Defendant BROWN has never provided a live performance for Defendant/Third Party Plaintiff in Houston, Texas, as set forth above.

Defendant/Third Party Plaintiff alleges that its actual damages are a natural, probable and foreseeable consequence of ThirdParty Defendants' breach of the LPA and Defendant/Third Party Plaintiff seeks to recover from Third Party Defendants all damages suffered as a result of their collective breach.

## VICARIOUS LIABILITY

Pursuant to Texas law, Defendant/Third Party Plaintiff pleads a cause of action against Third Party Defendants for vicarious liability. The allegations contained in all of the paragraphs of this petition are hereby reaverred and realleged, for all purposes, and incorporated herein with the same force and effect as though set forth verbatim herein.

At the time of the incident in question, and at all times relevant to the lawsuit, various vice-principals, agents, servants, and/or employees of Third Party Defendants were acting in the course and scope of their respective employment as vice-principals, agents, servants, and/or employees of their respective employers and/or principals.

Pursuant to the doctrines of apparent authority and *respondeat superior*, any negligence, gross negligence, or fraud of their vice-principals, agents, servants, and/or employees is imputed to the Third Party Defendants.

## EXEMPLARY DAMAGES AND UNCAPPED EXEMPLARY DAMAGES

Pursuant to TEX. CIV. PRAC. & REM. CODE §41.003(a)(1), Defendant/Third Party Plaintiff alleges that it is entitled to exemplary damages because Third Party Defendants committed fraud.

Pursuant to TEX. CIV. PRAC. & REM. CODE §41.008(c)(12), Defendant/Third Party Plaintiff alleges that the limit on exemplary damages does not apply because Third Party Defendants secured execution of a document by deception, as set forth in TEX. PENAL CODE §32.46.

Defendant/Third Party Plaintiff alleges that under TEX. PENAL CODE §32.46 (a)(1):

**A person commits an offense if the person, with the intent to defraud or harm any person: (1) causes another person, without that person's effective consent, to sign or execute any document affecting property or service or the pecuniary interest of any person.**

Defendant/Third Party Plaintiff alleges that under TEX. PENAL CODE §32.46 (d)(1), "Deception" means any of the following, according to TEX. PENAL CODE §31.01(1):

**(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;**

**(B)  failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;**

**(C)  preventing another from acquiring information likely to affect his judgment in the transaction; or**

**(E)  promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed…**

Defendant/Third Party Plaintiff alleges that under TEX. PENAL CODE §32.46 (d)(3), a person's consent is not effective if it is induced by deception and that an offense under §32.46(a)(1) is a first degree felony if the value of the property, service, or pecuniary interest is $300,000 or more, under TEX. PENAL CODE §32.46 (b)(7).

Defendant/Third Party Plaintiff alleges that Third Party Defendants violated TEX. PENAL CODE §32.46 by obtaining the execution of the "Live Performance Agreement" without Defendant/Third Party Plaintiff's effective consent through deception with the intent to defraud Defendant/Third Party Plaintiff by:

- creating or confirming by words or conduct a false impression of fact that affected Defendant/Third Party Plaintiff's judgment in the transaction, and that the Third Party Defendants did not believe to be true;

- failing to correct a false impression of fact that affected Defendant/Third Party Plaintiff's judgment in the transaction, that the Third Party Defendants previously created or confirmed by words or conduct, and that the Third Party Defendants do not later believe to be true;

- preventing Defendant/Third Party Plaintiff from acquiring information likely to affect Defendant/Third Party Plaintiff's judgment in the transaction; and

- promising performance that was likely to affect Defendant/Third Party Plaintiff's judgment in the transaction and that the Third Party Defendants did not intend to perform or knew would not be performed…

Defendant/Third Party Plaintiff alleges that Third Party Defendants' deception in regarding the live performance by Third Party Defendant BROWN under the LPA affected Defendant/Third Party Plaintiff's pecuniary interest because the Third Party Defendants received $1.1 million from Defendant/Third Party Plaintiff, making the violation a first degree felony.

As such, Defendant/Third Party Plaintiff alleges that Third Party Defendants CBE and BROWN are all liable for uncapped exemplary damages.

Based on the forgoing, Third Party Defendants are liable to Defendant/Third Party Plaintiff as well as to Plaintiff **7** Kings Limited Liability Company for damages it has suffered as a result of the event not going forward, if any.

**PRE-JUDGMENT AND POST-JUDGMENT INTEREST**
Defendant/Third Party Plaintiff seeks pre- and post-judgment interest as allowed by law.

**CONDITIONS PRECEDENT**
Defendant/Third Party Plaintiff alleges that all conditions precedent have been performed or have occurred.

**ATTORNEY'S FEES**
Pursuant to TEX. CIV. PRAC. & REM. CODE §§37.001, et seq. and 38.001, *et seq*., Defendant/Third Party Plaintiff is entitled to recover attorney's fees for breach of contract.

DML Real Estate Investors and Construction, LLC incorporates by reference its most recent Original Answer and Third Party Cross Claim filed in this lawsuit the same as if fully set forth herein.

d.    A computation of each category of damages claimed by the responding party--who must also make available for inspection and copying the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

**RESPONSE:**

DML Real Estate Investors and Construction, LLC is seeking all actual damages as the evidence may show and the jury may determine to be proper including but not limited to all damages stemming from Third Party Defendant's failure to perform, all damages Third Party Defendants unjustly received, exemplary damages, pre- and post-judgment interest as allowed by law and attorney's fees for breach of contract and any other damages to which DML may show itself justly entitled.

DML Real Estate Investors and Construction, LLC has incurred the following damages and damages are still accruing:

| | |
|---|---|
| Chris Brown Performance Fee | $1,000,000.00 |
| Travel Buyout Fee | $  100,000.00 |
| Toyota Center Outstanding balance | $  395,000.00 |
| Toyota Center booking fee | $    50,000.00 |
| 7 Kings 1 Limited Liability Company | $    40,000.00 |
| Performer Bryson Tiller | $    61,000.00 |
| Performer Monica | $    51,000.00 |
| Performer Tone Stith | $    12,000.00 |
| Darryl Hill booking fee for Bryson Tiller | $    17,500.00 |
| Chris Brown booking fee | $    25,000.00 |

| | | |
|---|---|---|
| Four On Stage Performances | $ | 30,000.00 |
| Production Costs | $ | 185,000.00 |
| Press Conferences | $ | 15,000.00 |
| Airfare Sabrina | $ | 187.20 |
| Airfare Leesa | $ | 372.20 |
| Airfare Alan and Amanda | $ | 689.53 |
| Airfare Barry Wallace | $ | 1,200.00 |
| Doubletree Galleria for Tone | $ | 898.03 |
| Doubletree Galleria | $ | 152.25 |
| Doubletree Galleria for Staff | $ | 769.74 |
| Doubletree Greenway | $ | 375.94 |
| Air BnB for Sabrina | $ | 439.24 |
| Doubletree Alan and Amanda | $ | 1,138.36 |
| Avis Car Rental | $ | 277.91 |
| Cage Insurance Policy | $ | 4,078.12 |
| Costco supplies for hospitality rider | $ | 221.75 |
| Sam's Club for hospitality rider | $ | 130.15 |
| Central Market for hospitality rider | $ | 200.00 |
| Hard Body Kiotti for show date | $ | 1,500.00 |
| Hard Body Kiotti referral fee | $ | 2,000.00 |
| Trent | $ | 3,500.00 |
| Barry Wallace | $ | 2,000.00 |
| Show Date Staff | $ | 27,500.00 |
| Promotions | $ | 50,000.00 |
| Attorney's Fees | $ | 25,000.00 |
| Miles from Colorado Opening Act | $ | 7,500.00 |
| Sabrina booking fee | $ | 750.00 |
| Julee | $ | 3,900.00 |
| Sharon | $ | 1,000.00 |
| Boubacar Diallo | $ | 7,500.00 |
| Sabrina and Leesa PR fees | $ | 7,500.00 |
| Rhonda Manuel | $ | 4,000.00 |
| Janet Bell | $ | 13,000.00 |
| Promotional Costs | $ | 2,500.00 |

Third Party Plaintiff is also seeking uncapped exemplary damages and attorney's fees which are still accruing for breach of contract pursuant to TEX. CIV. PRAC. & REM. CODE §§37.001, et seq. and 38.001, *et seq.*

e.      Provide the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case.

**RESPONSE:**

**DML Real Estate Investors and Construction, LLC**
c/o     Joseph M. Gourrier
        joseph@gourrierlaw.com

THE GOURRIER LAW FIRM, PLLC
4900 Fournace Place, Suite 456
Bellaire, Texas 77401
Telephone: 713.533.9077
Facsimile: 713.533.9376

And

Kimmie R. Bennett
kbennetttx@earthlink.net
THE BENNETT LAW FIRM, PLLC
710 Flying Bridge Way
Crosby, Texas 77532
Telephone:  832.423.3795
Facsimile:   281.328.7310

And

Byron M. Buchanan
Byron@thebuchananlawoffice.com
THE BUCHANAN LAW OFFICE, P.C
1002 Gemini, Ste 225C
Houston, TX 77058
Telephone:  713.936.0783

Defendant/Third Party Plaintiff

**7 Kings 1 Limited Liability Company**
c/o    Danny Ray Scott
       danny@gulfcoastinsurancelawyers.com
       GULF COAST INSURANCE LAWYERS, P.C.
       The Jones Building
       708 Main Street
       Houston, Texas 77002
       Telephone: 713.941.9309
       Facsimile: 844.270.0740

       Plaintiff

**Chris Brown and Chris Brown Touring Company**
c/o    Tom Van Arsdel
       tvanarsdel@winstead.com
       Ciara Perritano
       cperritano@winstead.com
       WINSTEAD PC
       600 Travis, Suite 5200

Houston, Texas 77002
Telephone:  713.650.8400
Facsimile:  713.650.2400

Third Party Defendants

**John Waldron**
c/o    Justin Fox
jfox@columbusattorney.net
THE FOX LAW FIRM, LLC
620 East Broad Street, Suite 200
Columbus, Ohio 43215
Telephone: 614.407.8998
Facsimile:  614.573.7446

And

Christopher R. Pettit
cpettit@lnlattorneys.com
LUPER, NEIDENTHAL & LOGAN
1160 Dublin Road, Suite 400
Columbus, Ohio 43215
Telephone:  614.229.4407
Facsimile:  866.345.4948

John Waldron has knowledge about the performance fee paid to Third Party Plaintiffs.

**Kristopher R. Romero**
GUERRA DAYS LAW GROUP, PLLC
515 N. Sam Houston Pkwy. E., Suite 250
Houston, Texas 77060
Telephone:  281.760.4295
Facsimile:   866.325.0341

Kristopher Romero has knowledge about the subject matter of this litigation.

**Matthew Kamen**
mkamen@gispc.com
GRUBMAN SHIRE MEISELAS & SACKS, P.C.
152 West 57th St. New York
New York 10019
Telephone:  212.554.0420
Facsimile:   212.554.0444

Matthew Kamen has knowledge about the subject matter of this litigation.

**Hustlaz On Tha Block, LLC**
2646 S. Loop West, Suite 180B
Houston, Texas 77054
c/o   Lesli Cross
THE CROSS FIRM, P.C.
11601 Shadow Creek Parkway, Suite 111 #658
Pearland, Texas 77584
Telephone:  281.687.3316

Hustlaz On Tha Block, LLC has knowledge about damages incurred as result of Third Party Defendant's failure to perform.

**Boubacar Diallo**
facetagency@gmail.com
Telephone:  310.995.0247

Boubacar Diallo has knowledge about the subject matter of this litigation and fees paid to secure Third Party Plaintiff's performance.

**Clay Allen**
claya@rocketball.com
General Counsel Houston Rockets Toyota Center
Toyota Center
1510 Polk Street
Houston, Texas 77002
Telephone:  713.758.7306

Clay Allen has knowledge about the damages incurred by the Toyota Center as a result of Third Party Defendants' failure to show up and perform.

**Hillary Thomas**
Vice President of Booking and Event Operations Toyota Center
hillaryt@rocketball.com
Toyota Center
1510 Polk Street
Houston, Texas 77002
Telephone: 713.758.7397
Facsimile:  713.758.7407

Hillary Thomas has knowledge about the damages incurred by the Toyota Center as a result of Third Party Defendants' failure to show up and perform.

f.   A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the responding party has in its possession, custody, or control, and may use to support its claims or defenses, unless the use would be solely for impeachment.

**RESPONSE:**

DML Real Estate Investors and Construction, LLC believe the following documents are relevant and material to this litigation. Those documents that are in the care, custody and possession of DML legal team will be produced in this litigation. Certain documents identified below will be produced after receipt from Third Parties over which DML has no control.

Contract between DML and Brown
Correspondence
Text Messages
Wire Transfers
Instagram Posting
Photographs
Credit Card Transactions

DML Real Estate Investors and Construction, LLC will continue to supplement pursuant to Texas Rules of Civil Procedure should additional documents and information become available.

g.    Provide any indemnity and insuring agreements described in Rule 192.3(f).

**RESPONSE:**

None known.

h.    Provide any settlement agreements described in Rule 192.3(g).

**RESPONSE:**

DML Real Estate Investors and Construction, LLC is not aware of any at this time but specifically reserves the right to supplement or amend its response.

i.    Provide any witness statements described in Rule 192.3(h).

**RESPONSE:**

None.

j.    In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, provide all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

**RESPONSE:**

Not Applicable.

k.  In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, provide all medical records and bills you have obtained by virtue of an authorization furnished by the requesting party.

   **RESPONSE:**

   Not Applicable.

l.  Provide the name, address and telephone number of any person who may be designated as a responsible third party.

   **RESPONSE:**

   None at this time. Defendant/Third Party Plaintiff reserves the right to amend or supplement as additional information becomes available.