UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN WALDRON,

        **Plaintiff,**

                              **Case No. 2:22-cv-03556**
    **v.**                        **Judge Edmund A. Sargus, Jr.**
                              **Magistrate Judge Elizabeth Preston Deavers**

CHRIS BROWN, ET AL.,

        **Defendants.**

## OPINION & ORDER

This matter arises on Defendant CBE Touring, LCC's Motion to Dismiss, Stay, or to Transfer for Improper Venue.  (ECF No. 19.)  Also considered is Defendant Chris Brown's Motion to Dismiss, Stay or to Transfer for Improper Venue.  (ECF No. 25.)  For the reasons stated below, Defendants' Motions are **GRANTED IN PART** and **DENIED IN PART**.

### I.      Background

On October 3, 2023, Plaintiff filed suit in the Southern District of Ohio against Defendants CBE Touring and Chris Brown, a musician/artist.  (ECF No. 1.)  Plaintiff joined no other party.  Plaintiff's suit stems from Mr. Brown's failure to perform at the Toyota Center in Houston, Texas on March 19, 2022.  (*Id.*, at 1.)  Plaintiff alleges that he sent Defendants $500,000 in exchange for Brown's performance, that Defendants accepted this money knowing that Brown would not perform, and that Defendants have refused to return the money.  (*Id.*, at 2–3.)

Plaintiff's suit against Defendants came on the heels of another, similar lawsuit.  On August 15, 2022, DML Real Estate filed suit in Harris County, Texas against Mr. Brown, CBE

Touring, and Clutch City Sports & Entertainment, LP.  (DML Complaint, ECF No. 19, Exhibit 1,

A, at 1.)  Like the instant Plaintiff, DML alleged that it sent Defendants $500,000 in exchange

for Brown's performance, that Defendants accepted this money, and that Defendants have

refused to return the money.  (*Id*., 3–4, 12–17.)  However, unlike Waldron, DML brings a breach

of contract claim.  (*Id*., at 19.)  Specifically, DML alleges that Brown's failure to perform broke

the "Performance Agreement."   (*Id*.)  Waldron was not a party to the performance agreement,

nor was he listed as a party in DML's suit.   (*Id,* at 1.); (Performance Agreement, ECF No. 29,

Exhibit 1.)

On January 9, 2023, Defendant CBE Touring, LLC filed the first instant Motion to Dismiss.

(ECF No. 19.)  Several weeks later, Defendant Chris Brown filed his own Motion to Dismiss.

(ECF No. 25.)  Chris Brown's motion contained much the same arguments as CBE's filing.  The

next month, on February 13, 2023, Plaintiff filed his Response.  (ECF No. 30.)  Defendants filed

a combined reply two weeks later, on February 27, 2023.  (ECF No. 33.)

## II.    Analysis

### a.  Forum Selection Clause

Defendants maintain that Plaintiff's claim should be transferred to a Federal Court in

New York County.  (ECF No 19, at 4.)  (ECF No. 25, at 45.)  The basis of their argument is a

forum selection clause contained in their performance agreement with DML Real Estate

Investors and Construction, LCC.  The Forum Selection Clause is as follows:

> "APPLICABLE LAW AND CHOICE OF FORUM. This Agreement shall be
> deemed to have been made in the state of New York and its validity, construction,
> performance and breach shall be governed by the laws of that State applicable to
> agreements made and to be wholly performed therein. The parties agree to submit
> to the jurisdiction of the Federal or State courts located in New York County in any
> action which may arise out of this Agreement and said courts shall have exclusive

2

jurisdiction over all disputes between the parties pertaining to this Agreement and all matters related thereto…"

(ECF No. 29, Exhibit 1, at 1.)

Plaintiff points out that he is not a signatory to the performance agreement between DML and Defendants. Plaintiff elaborates, stating "Mr. Waldron is not a signatory to the Performance Agreement, he is also not a party to the Agreement, is not a beneficiary of the Agreement and is not an assignee of the Agreement. (ECF No. 30, at 37.) Mr. Waldron has no obligations or duties under the Agreement and enjoys no benefits under or rights conferred by the Agreement." (*Id*.)

As authorized by 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought."

> The moving party bears the burden of demonstrating that a change of venue is warranted. *Centerville ALF, Inc. v. Balanced Care Corp.,* 197 F. Supp.2d 1039, 1049 (S.D. Ohio 2002). District courts have broad discretion in ruling on a motion to transfer under § 1404. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988). This provision codifies the doctrine of forum non conveniens for the subset of cases in which the transferee forum is another federal Court. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 61, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). When a forum selection clause is not implicated, a district court considering a § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations. Id. at 62.

> Normally this analysis involves three steps. *Hefferan v. Ethicon Endo-Surgery Inc*., 828

F.3d 488, 493 (6th Cir. 2016). However, this is not the case when the parties agree to a litigate their dispute in a particular place.

> "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 31). First, the plaintiff's choice of forum is accorded no deference. *Id*. Ordinarily, a plaintiff may exercise its "venue privilege" by choosing among the available forums where

jurisdiction and venue are proper. "But when a plaintiff agrees by contract to bring suit only in a specified forum—presumably in exchange for other binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id*.

Second, the parties' private interests are given no consideration. *Id*. at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. Therefore, as the plaintiff's choice of forum and the parties' private interests carry no weight, all that remains is for the court to evaluate the public interest factors. *Id*. "Because those factors will rarely defeat" a forum selection clause, "the practical result is that forum-selection clauses should control except in unusual cases." *Id*. Indeed, the Supreme Court has emphasized that "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. at 59-60 (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J. concurring)).

*Sharper Impressions Painting Co. v. Thiede*, 2021 U.S. Dist. LEXIS 111521 (S.D. Ohio June 15, 2021)

Further, a non-signatory may be bound by a forum selection clause in the right circumstances. "[T]o bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993)). "[C]ourts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause*." Regions Bank v. Wyndham Hotel Mgmt*., U.S. Dist. LEXIS 23371, *16–17 (M.D. Tenn. Mar. 12, 2010).

Defendants acknowledge that Plaintiff is not a signatory to the performance agreement. However, they argue that he is "closely related" enough to DML, that he should be bound. (ECF No. 19, at 42.) (ECF No. 25, at 45.) They explain that "[b]ecause Plaintiff's case focuses on the Performance Fee obligation created by the Performance Agreement, Mr. Brown's appearance at

a concert that was regulated by the Performance Agreement, and CBE Touring's apparent connection to the dispute because of the Performance Agreement, Plaintiff's claim represents a dispute that is related to the Performance Agreement such that Paragraph 15 should apply." (ECF No. 19, at 42.)  "In other words, Plaintiff acquiesced to the forum selection clause by becoming a key player in the performance of the Performance Agreement's obligations." (*Id.*, at 43.)  Defendants also add that "any finding that Plaintiff is not bound by the forum selection clause sets dangerous precedent." (*Id.*, at 44.)  As legal support, Defendants rely primarily on *Cf. Affiliated Mtg. Protection, LLC v. Tareen*, No. A-06-4908, 2007 U.S. Dist. LEXIS 5106 (D.N.J. Jan. 24, 2007).  (ECF No. 19, at 43.)  (ECF No. 25, at 47.)  They state that this case stands for the proposition that "where a third party's conduct is closely related to the contractual relationship and that third-party enjoys a benefit of that contract, the forum selection clause applies."  (ECF No. 19, at 43.)

Plaintiff acknowledges "that the $500,000 paid by Mr. Waldron on March 15, 2022 was the payment of the last half of the fee due to CBE and Mr. Brown under Paragraph 3(a) of the Performance Agreement."  (ECF No. 30, at 19.)  However, Plaintiff asserts that "Mr. Waldron has nothing to do with DML or CBE. He is not a member of either company, nor is he an employee, agent or contractor of these companies. Mr. Waldron has no affiliation whatsoever with Mr. Brown."  (ECF No. 30, at 38.)  He goes on to state "Mr. Waldron's payment of the $500,000 was made in reliance upon promises and representations made by CBE and Mr. Brown outside of the Performance Agreement and seeks recovery of that money based on claims other than breach of contract."  (ECF No. 30, at 39.)  The Court concurs with Plaintiff.

Defendants have not shown that Plaintiff is bound by an agreement that he did not sign. Defendants very may well be correct that Plaintiff acted as an agent of DML, and therefore is

5

closely related enough to be bound by its agreement. However, the facts that the Court must parse at this stage do not yet establish such a relationship. In his Response, Plaintiff denies acting as an agent of DML, disclaims any benefit from DML's contract, and asserts that the "payment of the $500,000 was made in reliance upon promises and representations made by CBE and Mr. Brown outside of the Performance Agreement." (ECF No. 30, at 39.) Likewise, Plaintiff's Complaint states that "Plaintiff John Waldron was not a party to the contract" and makes no mention of him acting as DML's agent. Further, *Cf. Affiliated Mtg. Protection, LLC v. Tareen* is distinguishable from the present case. It is out of circuit and the Court's ruling hinged on the undisputed fact that the plaintiff was to receive a benefit under the contract. Our instant Plaintiff disclaims any benefit under the instant performance agreement. *Affiliated Mortg. Prot., LLC v. Tareen*, Civil Action No. 06-4908 (DRD), 2007 U.S. Dist. LEXIS 5106 (D.N.J. Jan. 23, 2007).

Finally, Plaintiff is an individual, an Ohio citizen, who brought suit in the Southern District of Ohio. (ECF No. 1, at 1.) Defendants have not borne their burden of demonstrating that a change of venue is warranted. *Centerville ALF, Inc. v. Balanced Care Corp*., 197 F.Supp.2d 1039, 1049 (S.D. Ohio 2002). Defendants' forum selection argument is **DENIED**.

### b. Failure to Join a Necessary Party

In the alternative, Defendants argue that Plaintiff's suit should be dismissed for failure to join a necessary and indispensable party. (ECF No. 19, at 25.) (ECF No. 25, at 27.) Defendants identify DML as such a necessary party. Plaintiff argues that DML is not necessary to the resolution of his claim. The Court agrees with Defendant in part.

Rule 19 of the Federal Rules of Civil Procedure governs the joinder of required parties.

> Rule 19 requires the Court to engage in a three-step inquiry when whether a case should continue in the absence of a particular party. *See Local 670, United Rubber v. International Union, United Rubber*, 822 F.2d 613, 618 (6th Cir. 1987); PaineWebber, Inc. v. Cohen, 276 F.3d 197, 200 (6th Cir. 2001). First, the Court must determine if the absent party is a "necessary" party. *Id.* The absent party qualifies as a necessary party if either: (1) complete relief cannot be accorded among the current parties; or (2) a ruling on the complaint in the party's absence may impair that party's ability to protect its interests or subject current parties to a substantial risk of inconsistent obligations. Fed. R. Civ. Proc. 19(a).
>
> If the Court decides the absent party is not a necessary party, neither joinder nor further analysis is required. *Local 670, United Rubber*, 822 F.2d at 618.

*Pedersen v. Dreams Come True Aviation*, *LLC*, 2019 U.S. Dist. LEXIS 73696 (S.D. Ohio May 1, 2019).

Here, Defendants focus on the second of the two routes for showing a necessity of a party.  They argue that DML is a necessary party because "DML Real Estate has an interest in this action and its absence threatens that interest and subjects CBE Touring to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  (ECF No. 19, at 26.)  (see also ECF No. 25, at 28.)  Defendants identify several reasons for this interest.  First, "this Federal Action focuses on the arrangement made to secure Mr. Brown's appearance at The One Night Only Tour."  (ECF No. 19, at 29.)  Second, "both DML Real Estate and Plaintiff claim an interest in reimbursement of the same Second Performance Fee Payment of $500,000."  (*Id.*, at 30.)  And third, "DML Real Estate's interests are affected through the potential of 'negative precedent.'"  (*Id.*)

Plaintiff responds by first pointing out that Defendants have the burden of establishing the necessity of DML.  (ECF No. 30, at 24.)  Plaintiff states that joinder is not necessary for three reasons.  Plaintiff notes the differences in claims.  First, "Mr. Waldron is asserting claims for unjust enrichment, promissory estoppel, fraud and conversion against CBE and Mr. Brown," claims that DML has not made.  (*Id.*, at 25.)  Next, Plaintiff has not "asserted any claims

pursuant to the Performance Agreement," as DML has done. (*Id*.) Second, Plaintiff argues that there is no risk of inconsistent judgments, as "if Mr. Waldron were to receive a judgment of $500,000 against CBE and Mr. Brown in this case, both would have a basis under the doctrine of issue preclusion to set off that $500,000 against any potential judgment DML may receive in the Texas case." (ECF No. 30, at 26.) Finally, Plaintiff rejects the entire premise of Defendants' argument. He states that Defendants' "arguments in support of dismissal are generally misleading and misconstrue the basis of Mr. Waldron's case." (*Id*., at 27.) The Court concurs with Defendant.

Under the Rule 19 necessary party analysis, "the court is more or less concerned with whether nonjoinder could have one of the adverse effects addressed by that Rule. The basic possibility of such harm justifies joining the absentee." See 4 Moore's Federal Practice – Civil § 19.05 (2022); *see also Dealers Assur. Co. v. Fid. Bank & Trust*, 2014 U.S. Dist. LEXIS 136134, at *9–10 (S.D. Ohio Sep. 26, 2014) ("For example, a sufficient interest under Rule 19(a)(1)(B) exists where an absent party 'could' claim an interest in a contract between existing parties.") Here, Defendants have shown the existence of another court case involving the same Defendants, involving the same concert, and allegedly involving the same $500,000. While the court, admittedly, does not know if the $500,000 Plaintiff claims he sent to Defendants was the same $500,000 that DML claims it sent to Defendants, it is not implausible that it is. Defendants have the burden of showing that DML is a necessary party and they have satisfied Rule 19's low threshold. DML is a necessary party.

Next, the Court moves onto the second step in the Rule 19(a) analysis.

However, if the absent party is deemed necessary, the Court must proceed to step two—determining whether joinder is feasible. *Id*. Rule 19 requires joinder where

8

the necessary absent party is "subject to service of process and "will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1). *See also Painewebber*, 276 F.3d at 200 (finding that joinder is feasible where the necessary party is "subject to personal jurisdiction and can be joined without eliminating the basis for subject matter jurisdiction"). In addition, Rule 19 notes that joinder is not feasible where "a joined party objects to venue and the joinder would make venue improper." Fed. R. Civ. P. 19(a)(3). *See also Local 670, United Rubber*, 822 F.3d at 618 ("If personal jurisdiction is present, the party shall be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court") (emphasis in original).

Third, if the Court determines that joinder is not feasible, the Court must decide whether: (1) the case should proceed without the necessary party, or (2) the case should be dismissed because the necessary party is "indispensable" under Rule 19(b). *Id.* Rule 19(b) instructs courts to weigh this question in "equity and good conscience," with four factors in mind: (1) the extent to which a judgment rendered in the party's absence might be prejudicial to that party or existing parties; (2) the extent to which the court may lessen or avoid prejudice; (3) whether the court can render adequate judgment in the party's absence; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

Finally, the Sixth Circuit has held that Rule 19 requires a pragmatic analysis. *Keweenaw Bay Indian Community v. Michigan*,11 F.3d 1341, 1345-46 (6th Cir. 1993). "Simply because some forms of relief might not be available due to the absence of certain parties, the entire suit should not be dismissed if meaningful relief can still be accorded." *Id*.

*Pedersen v. Dreams Come True Aviation*, *LLC*, 2019 U.S. Dist. LEXIS 73696 (S.D. Ohio May 1, 2019).

Defendants argue that the joinder of DML is feasible.  (ECF No. 19, at 30.); (ECF No. 25, at 32.)  They explain "[t]his is a diversity action, and upon information and belief, DML Real Estate is a Texas entity, thereby preserving diversity of citizenship."  (*Id*.)   Plaintiff does not respond to this argument.  Given this lack of disagreement, the Court will treat the point as accepted.  As such, the Court has no need to move on to step three.  Plaintiff is **ORDERED** to join DML Real Estate Investors and Construction, LCC.

### c. Stay

In the alternative, Defendants maintain that the Court should stay this case until the Texas

suit has resolved.  Defendants argue such a stay is warranted under two sources of authority.

The Colorado River abstention doctrine, and the Court's own inherent authority: Plaintiff asserts

that a stay under either theory is inappropriate.  As the Court has ordered the joinder of DML,

there is no reason to stay this case.  Defendants' objection is **MOOT**.

### d. Failure to State a Claim

Defendants argue that Plaintiff's suit should be dismissed for failure to state a claim.

They argue that all four of the counts Plaintiff has brought are deficient.  Plaintiff argues against

the dismissal of all counts.  When deciding motions to dismiss for failure to state a claim, the

Court applies the following analysis:

> Federal Rule of Civil Procedure 12 authorizes dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  In considering a Rule 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

> Nonetheless, the Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief.  *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013).  Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007).  Further, "the tenet that courts must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662.  As such, while a plaintiff is

not required to set forth detailed factual allegations at the pleading stage, a complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *See id*. at 679; Fed. R. Civ. P. 8(a).

*Lloyd v. Pokorny*, No. 2:20-cv-2928, 2020 U.S. Dist. LEXIS 162998 (S.D. Ohio Sep. 8, 2020).

### i. Count One

Plaintiff claims that Defendants are liable under quantum meruit and/or unjust enrichment theories. (ECF No. 1, at 3.) Defendants argue that Count One should be dismissed for three reasons. First, "Plaintiff's allegations fail to plead CBE Touring's receipt of benefit with plausibility." (ECF No. 19, at 34.) Second, "Plaintiff failed to allege with plausibility that any benefit was retained 'under circumstances where it would be unjust to do so,' which is a necessary element of any unjust enrichment claim." (*Id*., at 35.) And third, "Plaintiff cannot transform a contractual obligation into a quasi-contractual claim simply because Plaintiff paid the amount." (*Id*.) In their Reply, Defendants expand on this argument. They assert that "the entirety of [Plaintiff's] unjust enrichment claim fails" because "Plaintiff concedes that an express contract governs, and thus his unjust enrichment claim fails as a matter of law." (ECF No. 35.) The Court does not agree with Defendants.

The Court will address each of Defendants' arguments in turn. First, Plaintiff did plead CBE Touring's receipt of a benefit. As Plaintiff points out, "[i]n his Complaint, Mr. Waldron alleged that the 'Defendants knowingly received a $500,000 wire transfer from Mr. Waldron on March 15, 2022 as payment of one-half the fee for Mr. Brown to appear and to perform at the Event.'" (ECF No. 30, at 28) (Citing ECF No. 1, at 3.) Earlier in his Complaint, Plaintiff

specified that Defendants were "Chris Brown ('Mr. Brown') and CBE Touring, LLC ('CBE Touring')." (ECF No. 1, at 1.)  Plaintiff not failed to plead CBE Touring's receipt of a benefit.

Second, Plaintiff plead that Defendants retained the benefit under circumstances in which it would be unjust to do so.  As Plaintiff notes, his Complaint states that he paid Defendants for a service that they did not perform. "It would be unjust for the Defendants to keep Mr. Waldron's $500,000, which was paid to secure Mr. Brown's performance at a concert, when Mr. Brown never showed up or performed at the concert." (ECF No. 30, at 28.) (Citing ECF No. 1, at 2–3.) Further, Plaintiff asserts that Defendants accepted this money knowing that Mr. Brown would not be able to perform.  Plaintiff has not failed to allege that a benefit was retained under circumstances in which it would be unjust to do so.

Defendants' third argument is slightly more convincing, but ultimately fails as well. Plaintiff has plausibly alleged a quasi-contractual claim.  Plaintiff's Complaint does not state that Plaintiff sent Defendants the $500,000 pursuant to the Performance Agreement between DML and Defendants.  Further, although Plaintiff does state in his Response that "[i]t is true that the $500,000 paid by [Plaintiff] . . . was the payment of the last half of the fee due to CBE and Mr. Brown under Paragraph 3(a) of the Performance Agreement," he also states that he "is not a party to the Performance Agreement and does not have standing to bring a claim under that Agreement." (ECF No. 30, at 30.)   This statement is confirmed by the Performance Agreement itself, which does not mention Plaintiff.  Plaintiff also states that, "Mr. Waldron's case focuses upon CBE and Mr. Brown's acceptance of $500,000 under false pretenses and misrepresentations that Mr. Brown would appear at the One Night Only Tour as long as the $500,000 was paid by March 15, 2022. CBE's or Mr. Brown's obligations under the Performance Agreement have nothing to do with Mr. Waldron's claims." (ECF No. 30, at 27–28.)  Plaintiff's imprecise word

choice in one sentence in a forty-five-page brief cannot overcome his numerous other clear assertions that he is not suing under the Performance Agreement.  (ECF No. 30, at 2, 7, 14, 18, 19, 23, 27, 30, 37.)  This is particularly true given that Plaintiff explicitly states in his Complaint that he is not a party to the contract between DML and Defendants.  (ECF No. 1, at 2.)  The Performance Agreement provides no guidance here.  All of Defendants' arguments fail.

### ii.  Count Two

In Count Two of his complaint, Plaintiff asserts "Mr. Brown and CBE Touring are liable to Mr. Waldron under the doctrine of promissory estoppel."  (ECF No. 1, at 4.)  Defendants contend that this count should be dismissed because "Plaintiff failed to allege a cognizable promissory estoppel claim."  (ECF No. 25, at 39.)  Defendants explain that "Plaintiff's allegations either arise out of the Performance Agreement [see, e.g., Compl. ¶¶ 7, 17 (alleging that his payment was based on the Performance Fee, which was part of the Performance Agreement)] or some other agreement or contract that Plaintiff alleges he had with Mr. Brown." (*Id*., at 39–40.)  In response, Plaintiff argues that his "Complaint states a claim for promissory estoppel" because "Mr. Waldron's claim does not focus upon whether or not Mr. Brown should have appeared at the One Night Only Tour event in Houston on March 19, 2022.  (ECF No. 30, at 30–31.)

In Ohio "[a] claim for promissory estoppel cannot be pursued where there is a contract covering the same subject matter." *Han v. Univ. of Dayton*, 2015-Ohio-346, 28 N.E.3d 547, ¶ 46 (2d Dist.)  However, Plaintiff does not base his claim on any contract to which he is party.  As mentioned in the previous section, Plaintiff alleged that he is not party to the Performance Agreement.  (ECF No. 1, at 2.)  Further, Plaintiff does not assert that he paid the $500,000 because of a separate contract.  Finally, at the motion to dismiss stage, the Court must make all

inferences in the non-movant's favor.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).
Under this standard, Plaintiff has plausibly alleged a promissory estoppel claim.  Defendants'
argument fails.

### iii.  Count Three

In Count Three, Plaintiff alleges that Defendants are liable for fraud.  (ECF No. 1, at 5.)
Defendants argue that this count must be dismissed for two reasons.  First, because Plaintiff's
claim is actually "a contract or quasi-contract claim disguised as a tort."  (ECF No. 25, at 41.)
And second, because "Plaintiff failed to state his fraud claim with particularity."  (*Id*., at 42.)  In
response, Plaintiff contends that "Mr. Waldron's fraud claim is sufficiently independent to stand
on its own" and that "Mr. Waldron has satisfied the pleading requirements of Civil Rule 9(b)."
(ECF No. 30, at 32, 36.)  The Court agrees with Plaintiff in part and Defendant in part.

In Ohio, "a tort claim based upon the same actions as those upon which a claim of
contract breach is based will exist independently of the contract action only if the breaching
party also breaches a duty owed separately from that created by the contract, that is, a duty owed
even if no contract existed." *Cadence Bank, NA. v. Hurl*, 2022 U.S. Dist. LEXIS 44213, *10
(S.D. Ohio 2022) (citing, *Textron Financial Corp. v. Nationwide Mutual Insurance Co*., 115
Ohio App. 3d 137 (Ohio App. 9 Dist. 1996)).  As the Court has mentioned in the past two
sections, Plaintiff alleges that he is not a party to the Performance Agreement.    Instead, Plaintiff
asserts that he paid the fee because Defendants "misrepresented to Mr. Waldron that Mr. Brown
would appear and perform at the Event if Mr. Waldron paid the $500,000 portion of the
appearance and performance fee by March 15, 2022." (ECF No. 1, at 4.)  Plaintiff argues that
this duty exists separate from the Performance Agreement because it is based on Defendants
promises and misrepresentations to him.  (ECF No. 30, at 32.)  Essentially, Plaintiff argues that

14

Defendants had two duties.  These duties stemmed from separate sources, but both required Defendants to perform at the same concert.  If Plaintiff is correct, Defendants would have a duty "even if no contract existed." *Cadence Bank, NA. v. Hurl*, 2022 U.S. Dist. LEXIS 44213, *10 (S.D. OH 2022).  Defendants' first argument fails.

Defendants' argument that Plaintiff's Complaint did not allege fraud with sufficient particularity, however, succeeds.  "Pursuant to Federal Rule of Civil Procedure 9(b), 'a party must state with particularity the circumstances constituting fraud or mistake.'"  *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quotation omitted).  The Sixth Circuit interprets "Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)).  Plaintiff's Complaint falls short of this heightened standard.

While Plaintiff argues in his Response that he included sufficient information in his Complaint, the document tells otherwise.  Plaintiff states that his Complaint contains information regarding "fraudulent statements (Mr. Brown and his agents, including CBE), when those statements were made (before and on March 15, 2022), and what the content of the misrepresentations were (Mr. Brown would appear and perform at the One Night Only Tour event if Mr. Waldron paid the $500,000 before March 15, 2022)."  (ECF No. 30, at 35.)  The Complaint does mention the rough time during which this fraud took place.  However, beyond broad generalizations, it does not mention who made these representations.  ("CBE Touring, LLC and Mr. Brown, either directly or through agents and/or representatives, regularly and consistently solicited Mr. Waldron.")  (ECF No. 1, at 2–3.)  Plaintiff does not specify any names of individuals who contacted him, nor does he note which Defendant employed which agents.

This last failing is particularly problematic, as plaintiffs in the Sixth Circuit, must plead fraud on a "defendant-by-defendant basis, and not generally as to all defendants." *United States ex rel. Kramer v. Doyle*, 2022 U.S. Dist. LEXIS 72919, at *22 (S.D. Ohio Apr. 21, 2022).  Further, the Complaint does not speak to what misrepresentations were made, except in the broadest of terms. (ECF No. 1, at 2–3.)    Plaintiff's fraud claim falls far short of the heightened pleading requirement for fraud.  Count Three is **DISMISSED**, unless a motion to amend the complaint in compliance with this Opinion and Order is filed within ten days of today.

### iv.  Count Four

Finally, in Count Four, Plaintiff alleges that Defendants are liable for conversion.  (ECF No. 1, at 5.)  Defendants argue that the Court should dismiss this count because "Count Four is nothing more than a catch-all claim demanding that certain money be returned, which is insufficient to state a claim."  (ECF No. 25, at 44.)  They explain that, under Ohio law, "a conversion claim for money 'lies only where the money involved is 'earmarked' or is specific money capable of identification'" and argue that "there are no allegations regarding the specific identity of any funds at issue, which as a matter of law, renders Count Four improper."  (*Id.*, at 41.)  In response, Plaintiff asserts that "Mr. Waldron has plead sufficient facts to proceed with this conversion claim" because "money can be the subject of an action for conversion" if, as here, "'the funds in question were specific or sequestered, identifiable monies or funds entrusted to the defendants' care for a specific purpose.'"  (ECF No. 30, at 36–37.)  The Court agrees with Defendants.

When a party makes a conversion claim for money in Ohio, they must prove that purportedly lost money was specifically identifiable.  Their claim "lies only where the money involved is 'earmarked' or is specific money capable of identification, e.g., money in a bag,

coins or notes that have been entrusted to the defendants' care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum." *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 U.S. Dist. LEXIS 41649, at *86 (N.D. Ohio Mar. 5, 2021).   "[T]he plaintiff must prove that there was an obligation to keep intact and deliver the specific, earmarked money rather than merely deliver a certain sum." *Kodu v. Medarametla*, 2016-Ohio-8020 (Ct. App.) Courts dismiss claims based on allegedly converted money that has not been earmarked.  The Court in *NPF IV v. Transitional Health Services*, found that their plaintiff's conversion claim failed because ""[t]here are no allegations that Cardinal or any of the individual defendants had any contractual obligation to place funds obtained from plaintiffs in a specific or separate account rather than in Cardinal's general business account." 922 F. Supp. 77, 81 (S.D.Ohio 1996) (*See also STE Invs., LLC v. Macprep, Ltd*., 6th Dist. Ottawa No. OT-21-036, 2022-Ohio-2614, ¶ 29.

Plaintiff's Complaint alleges "Mr. Waldron sent Mr. Brown $500,000.00 by wire transfer, which represented one-half of Mr. Brown's fee to appear and to perform at the Event."  (ECF No. 1, at 2.)  The Complaint does not contain any information indicating that the sum was specifically identifiable.  Instead, Plaintiff merely transferred a certain sum.  Count Four is **DISMISSED**.

### III.    Conclusion

For the reasons stated herein, Defendants Chris Brown and CBE Touring's motions to dismiss are **GRANTED** in part and **DENIED** in part.  (ECF Nos. 19, 25.)  Count Three is dismissed unless Plaintiff moves to properly amended the Complaint within ten days.  Count

Four is **DISMISSED**. Further, Plaintiff is **ORDERED** to join DML Real Estate Investors and

Construction, LCC.

      **IT IS SO ORDERED.**

**9/28/2023**                                                    **s/Edmund A. Sargus, Jr.**

**DATE**                                                              **EDMUND A. SARGUS, JR.**

                                                            **UNITED STATES DISTRICT JUDGE**