UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN WALDRON,

        Plaintiff,

                                   **Case No. 2:22-cv-3556**

v.                              **JUDGE EDMUND A. SARGUS, JR.**
                                   **Magistrate Judge Elizabeth P. Deavers**

CHRIS BROWN, *et al.*,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants Chris Brown and CBE Touring, LLC's (together referred to as "Brown") Motion to Dismiss (ECF No. 49) and Motion for Leave to Supplement Motion to Dismiss (ECF No. 70), and DML Real Estate Investors and Construction, LLC's Motion to Dismiss (ECF No. 63). For the reasons set forth below, the Court **GRANTS** Brown's Motion for Leave, **GRANTS in part and DENIES in part** Brown's Motion to Dismiss, and **DENIES** DML's Motion to Dismiss.

## BACKGROUND

This case arises from a payment made in support of a concert that never happened.

### I.    Factual Background

### A.    Plaintiff's Investment Falls Through

Chris Brown, a musical artist, was scheduled to perform at the "The One Night Only Tour" in Houston, Texas on March 19, 2022 (the "Event"). (Am. Compl., ECF No. 46, ¶ 6.) Charles A. Warren and LaJuan Bailey set up the event and worked with DML to promote it. (*Id.* ¶ 7.) Brown contracted with DML to receive $1,000,000.00 for his performance. (*Id.*) This payment and Brown's failure to perform is the subject of this lawsuit, a separate consolidated lawsuit against

Brown in Texas state court, and, as was revealed to the Court later, another lawsuit in Ohio state court.

In the days leading up to the concert, half of the performance payment remained outstanding, prompting Warren and Bailey to seek financing from Plaintiff John Waldron.  (*Id.* ¶ 8.)  On March 14, 2022, Warren asked Plaintiff to pay Brown $500,000 to secure Brown's performance.  (*Id.*)

On March 14 and 15, Plaintiff spoke with Warren and a man named Mangara Boubacar, who represented that he was working on behalf of Brown to finalize the $500,000 payment.  (*Id.* ¶¶ 9–10.)  Boubacar represented that paying $500,000 was the last step to secure Brown's performance and provided Plaintiff and Warren with Brown's bank account information.  (*Id.* ¶¶ 10–11.)

On March 15, Plaintiff wired $500,000 to Brown's bank account at Boubacar's urging. (*Id.* ¶¶ 12–13.)  Then, on March 18, Brown announced that he was cancelling his appearance at the event.  (*Id.* ¶ 13.)  Plaintiff attempted to contact Boubacar, but Boubacar never responded.  (*Id.*)  Plaintiff alleges that Brown never returned the $500,000 and continues to retain those funds.  (*Id.* ¶ 14.)  Plaintiff alleges that Brown never intended to appear or perform at the Event.  (*Id.* ¶ 15.) Others who invested their money in the Event sued Brown in Texas state court, and then Plaintiff sued Brown in this Court.

### B.    Plaintiff's State Court Litigation

Until DML was added to this case pursuant to the Court's Order (ECF No. 37), the Court was unaware that Plaintiff had already pursued litigation involving the same incident.  In April 2022, Plaintiff sued Warren and Bailey in the Athens County Court of Common Pleas.  (State Court Compl., ECF No. 70-1, at PageID # 771.)  There, Plaintiff alleged that Warren and Bailey—

2

the two people he had been in contact with for the Event—had failed to perform their obligations under a Promissory Note.[1]  (*Id.*)

In Plaintiff's state court case, he stated that he "remitted payment of the $500,000 to [Warren and Bailey] on March 15, 2022."  (Pl. State Court MSJ, ECF No. 70-1, at PageID # 787.) He sued Warren on a cognovit note; Bailey for one count of "Claim on the Note"; and Bailey for one count of unjust enrichment.  (*Id.* at PageID # 771–75.)  Plaintiff obtained a cognovit judgment against Warren on April 27, 2022, but has not collected on that judgment.  (*Id.*)  Bailey was not subject to the cognovit provisions in the note.  (*Id.* at PageID # 787.)  In his summary judgment briefing before the Athens County Court of Common Pleas, Plaintiff argued that he loaned Bailey $500,000, and Bailey never paid the money owed to him.  (*Id.* at PageID # 791–92.)  The Court granted Plaintiff's motion for summary judgment, and Bailey is currently appealing that Order. (*Id.* at PageID # 800; ECF No. 71-5, at PageID # 908–12.)

## II.    Procedural Background

The Court previously denied in part Brown's motion to dismiss and ordered Plaintiff to join DML as a necessary party.  (ECF No. 37.)  Plaintiff did so and filed his Amended Complaint.

Plaintiff's Amended Complaint brings six Counts.  (Am. Compl., ECF No. 46.)  Count One ("Apparent Authority") alleges that Brown held out Boubacar as an agent possessing sufficient

---

[1] The Promissory Note refers to Charles A. Warren—undisputedly the same Charles A. Warren involved in the Event—and "Bailey Cecile" or "Cecile Bailey."  (Promissory Note, ECF No. 70-1, at PageID # 777–81.)  Plaintiff makes much of the fact the State Court litigation is against "Cecile Bailey," while his allegations in this case involve "LaJuan Bailey."  (*See, e.g.*, ECF No. 72, at PageID # 915.)  The fact remains that the allegations both concern the same transaction, the same Charles Warren, and that "Lajuan Bailey" and "Cecile Bailey" have the same email address.  (*Compare* ECF No. 72-1, at PageID # 928 ("Cecile Bailey" notice of appeal signature, identifying the email address "akalcb@yahoo.com"), *with* ECF No. 74-2, at PageID # 964 (Warren forwarding an email to "lajuan bailey," who has the email address "akalcb@yahoo.com").)  Regardless, Plaintiff's judgments in State Court against Warren and Bailey concern the same $500,000 that he seeks here.

authority to confirm that Brown would perform at the Event in exchange for the $500,000 payment. (*Id.* ¶¶ 16–20.) Count Two ("Ratification") alleges that in the alternative of apparent authority, Brown ratified Boubacar's acts by accepting the $500,000 payment and refusing to return it after Brown failed to appear at the March 19 event. (*Id.* ¶¶ 21–23.) Count Three ("Quantum Meruit/Unjust Enrichment") alleges that Brown has received and retained $500,000 under circumstances that would be unjust to do so. (*Id.* ¶¶ 24–28.) Count Four ("Promissory Estoppel") alleges that Plaintiff reasonably relied upon Brown's representations that he would perform at the Event, causing Plaintiff to wire the $500,000. (*Id.* ¶¶ 29–34.) Count Five ("Fraud") alleges that Brown misrepresented that he would appear at the Event, and that Brown had already prepared a termination letter to send to DML prior to March 15. (*Id.* ¶¶ 35–41.) Count Six ("Interested Party/Declaratory Judgment") seeks a Court declaration that DML does not have an interest in the $500,000 that Plaintiff seeks to recover from Brown. (*Id.* ¶¶ 42–44.)

Brown moves to dismiss, stay, or transfer venue of Plaintiff's Amended Complaint. (Brown Mot., ECF No. 49.) DML moves to dismiss Plaintiff's Amended Complaint for lack of subject matter and personal jurisdiction, and for failure to state a claim. (DML Mot., ECF No. 63.) Brown subsequently sought leave to supplement his motion to dismiss. (Brown Suppl. Mot., ECF No. 70.) Plaintiff opposes all motions (Pl. Resp., ECF Nos. 52, 71, 72), and each defendant filed replies in support of their motions (Brown Replies, ECF Nos. 55, 73; DML Reply, ECF No. 74). These matters are ripe for the Court's review.

## STANDARDS OF REVIEW

### I.   Federal Rule of Civil Procedure 12(b)(1) and Article III Standing

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (citing

4

*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).  Where a party raises a factual attack on subject-matter jurisdiction, "no presumptive truthfulness applies to the allegations.  When a factual attack, also known as a 'speaking motion,' raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

For a federal court to have subject matter jurisdiction over a case, the plaintiff must have standing to assert her claims.  A plaintiff lacks standing unless she demonstrates "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  "A 'concrete' injury is one that 'actually exist[s].'" *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).  "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (citing *Spokeo*, 578 U.S. at 340–341).

"The second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *All. for Hippocratic Med.*, 602 U.S. at 380–81 (quoting *Sprint*

*Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 288 (2008)).  Causation is sometimes referred to as "traceability."  *See, e.g.*, *California v. Texas*, 593 U.S. 659, 668–69 (2021) ("A plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") (internal quotation marks omitted).  "[T]he plaintiff's burden of alleging that their injury is fairly traceable to the defendant's challenged conduct is relatively modest."  *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 592 (6th Cir. 2022) (quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020)).

## II.     Federal Rule of Civil Procedure 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction.  "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists."  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)).  When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, as the Court does here, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  In such an instance, the plaintiff "need only make a *prima facie* showing of jurisdiction."  *Bird*, 289 F.3d at 871 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).  The court may not weigh "the controverting assertions of the party seeking dismissal."  *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

## III.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted.  While Rule 8(a)(2) requires a pleading to contain a

"short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying plausibility standard articulated in *Twombly*).  Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

The parties raise several arguments, some of which overlap.  First, the Court addresses Defendants' standing arguments as they pertain to the entire action.  Second, the Court considers arguments specific to Brown.  Third, the Court addresses arguments specific to DML.  Finally, the Court discusses whether a stay is warranted.

### I.  Plaintiff's Standing

Both Brown and DML argue that Plaintiff lacks standing.  (DML Mot., ECF No. 63, at PageID # 706–07; Brown Suppl. Br., ECF No. 70-1, at PageID # 760.)[2]  According to Defendants, once Plaintiff executed the Note, he loaned Warren and Bailey $500,000 and therefore lost ownership interest in the payment.  Thus, Brown argues, "the only ownership interest he has is a suit against his debtors because the debtors are the reason he lacks those funds."  (Brown Suppl.

---

[2] Because Brown's supplemental brief raises issues regarding subject matter jurisdiction based on facts not previously known to Brown, the Court **GRANTS** Brown's Motion for Leave to Supplement.  (ECF No. 70.)  Brown sought leave in a timely manner to put forth evidence and arguments pertaining to Plaintiff's litigation history.

Br., ECF No. 70-1, at PageID # 760; *see also* DML Mot., ECF No. 63, at PageID # 707 ("[T]he $500,000 [Plaintiff] is suing the Defendants over did not belong to him, rather, the $500,000 were loan proceeds belonging to Lajuan Bailey.").)

In support of his arguments, Brown primarily relies on a law journal article stating that "[o]nce physical possession of funds is transferred to the borrower or to a third-party on the borrower's behalf, ownership transfers with it." Laura Bartell, *The Lease of Money in Bankruptcy: Time for Consistency?*, 16 BANK. DEV. J. 267, 287 (2000). Brown also supports his position with citations to bankruptcy cases. *See, e.g.*, *In re Wierenga*, 431 B.R. 180, 186 (Bankr. W.D. Mich. 2010). By Brown's logic, the only persons against whom Plaintiff may bring claims are Warren and Bailey because once they executed the note, the $500,000 belonged to them, and Plaintiff wired *their* funds to Brown. Brown does not identify which element of standing Plaintiff lacks.

Plaintiff counters that he has standing to pursue his claims, and that his claims are brought against Brown because of the misrepresentations made to him by Boubacar on Brown's behalf. (Pl. Resp., ECF No. 72, at PageID # 921–23.) Moreover, Plaintiff appears to argue that even though he had a loan agreement with Warren and Bailey, he can still bring claims against Brown because Brown was responsible for Warren and Bailey's failure to repay Plaintiff. (*Id.* (citing *TRAX Constr. Co. v. Reminderville*, 165 Ohio St. 3d 1471, 2021-Ohio-3481, at ¶ 63 (11th Dist. Ct. App.) ("The mere existence of a plaintiff's inchoate cause of action against one party for breach of contract does not foreclose an action in tort against another party for all damages suffered by reason of the latter's inducement of such a breach.").) Plaintiff states that even if he no longer "owned" the funds, he retained standing to sue Brown. (Pl. Resp., ECF No. 72, at PageID # 921 ("Having a current 'ownership' interest in funds that have been previously stolen by the Defendants is not listed as an element of standing.").)

8

Neither Brown nor DML connect which element of standing that its "ownership" arguments pertain to. Presumably, such arguments pertain to whether Plaintiff's injury is traceable to Brown's conduct. "As it is generally understood, traceability requires that a plaintiff's claimed injury flow from the defendant's conduct rather than the plaintiff's own actions or the actions of a third party." *Grow Michigan*, 50 F.4th at 592 (citing *Turaani v. Wray*, 988 F.3d 313, 316 (6th Cir. 2021)). The Sixth Circuit noted that "[a]ny harm flowing from the defendant's conduct, even indirectly, is said to be 'fairly traceable,'" such that a plaintiff satisfies her "relatively modest" burden. *Id*. (citing *Buchholz*, 946 F.3d at 866).

The Court is not persuaded by Defendants' arguments and finds that Plaintiff has standing. He has pled injury: he has $500,000 less than he should. He has pled that such injury is fairly traceable to Defendants' conduct: he alleges that Boubacar's misrepresentations to him on behalf of Brown induced the $500,000 payment, and that Brown has retained the $500,000 under unjust circumstances. And his injury would be redressed by a favorable decision from this Court.

The harm is that Plaintiff invested $500,000 in an event that never happened, only to have never been paid back. Brown, as the party who allegedly received and retained $500,000 despite never performing at the Event, can be said to have directly or indirectly harmed Plaintiff.

Thus, the Court finds that Plaintiff has sufficiently alleged Article III standing to bring his suit.

## II.     Brown's Arguments

Brown moves for relief in two forms: (A) jurisdictional arguments; and (B) failure to state a claim.

A.      **Brown's Jurisdictional Arguments**

Brown argues that judicial estoppel bars Plaintiff's claims. (Brown Suppl. Br., ECF No. 70-1, at PageID # 761.) He also argues that this case should be transferred to the Southern District of New York. (Brown Mot., ECF No. 49, at PageID # 559.)

1.      **Judicial Estoppel**

"The raison d'[ê]tre of [judicial estoppel] is to protect the integrity of the judicial process." *Watkins v. Bailey*, 484 F. App'x 18, 24 (6th Cir. 2012) (quotation omitted). The Sixth Circuit has summarized judicial estoppel:

> [J]udicial estoppel applies to bar "a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). When applying the doctrine, courts consider (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal quotation marks omitted).

*Ohio ex rel. Yost v. Breen*, No. 22-3684, 2023 U.S. App. LEXIS 14478, at *20–21 (6th Cir. June 9, 2023); *see also Greer-Burger v. Temesi*, 879 N.E.2d 174, 183 (Ohio 2007). This Court is not bound by "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751.

Brown argues that Waldron's claims should be barred by judicial estoppel. Brown warns that were this Court to permit Waldron to advance his claims, "he will undermine the judgments in [the State Court action] because this Court will have determined that he did not pay Warren and Bailey at all, and in any event, the Note did not require payment because representations outside

10

of the Note did instead." (Brown Suppl. Br., ECF No. 70-1, at PageID # 766.)  Thus, according to

Brown, "[t]his Court cannot decide the claims in the Amended Complaint without 'creat[ing] the

perception that either the [state court] or [this federal court] was misled.'" (*Id.* (citing *Neff v.*

*Citizens Bank, N.A.*, No. 1:22 CV 2104, 2023 U.S. Dist. LEXIS 161804, at *7–8) (N.D. Ohio Sept.

12, 2023).)  Brown argues the following:

> Judicial estoppel bars Plaintiff's claims here. Plaintiff's judgments in *Waldron I*
> mean that the Note was valid and enforceable against Warren and Bailey, nothing
> untoward occurred in the circumstances leading to that Note, that Plaintiff paid the
> $500,000 to Warren and Bailey, and Warren and Bailey were the ones who caused
> Plaintiff damage. [] But here in federal court, Plaintiff asserts quasi-contract claims
> requiring the Court to accept that payment was actually made to the Artist
> Defendants instead, and contrary to *Waldron I*, the Artist Defendants did something
> to require payment of the $500,000 rather than the Note triggering the obligation.
> Similarly, Plaintiff's fraud claim requires the Court to find that the circumstances
> leading to Plaintiff's payment of $500,000 were fraudulent and Plaintiff's payment
> was premised upon a misrepresentation, which undermines Plaintiff's claim in
> *Waldron I* that the Note was valid and enforceable and he is owed money from
> Warren and Bailey because Plaintiff properly paid the $500,000 to them. Similar to
> *Neff*, Plaintiff cannot have it both ways.

(Brown Suppl. Br., ECF No. 70-1, at PageID # 765 (citations omitted).)

Plaintiff counters that his claims are not barred by judicial estoppel.  He cites to *Seifert v.*

*Burroughs*, 38 Ohio St.3d 108, 110 (1988) for the proposition that "[w]hen a plaintiff obtains a

judgment against one party, that plaintiff can still bring claims against other parties up to the

amount of that judgment until the amount of the judgment is actually paid." (Pl. Resp., ECF No.

72, at PageID # 921–22.)  Because neither Warren nor Bailey have paid the judgment, Plaintiff

argues that he may pursue recovery against other allegedly responsible parties.

Plaintiff further argues that "even if a plaintiff seeks damages against one party for a breach

of contract, that plaintiff may still recover against another party in tort, even if the damages

overlap." *TRAX Constr. Co.*, 2021-Ohio-3481, at ¶ 63.  "The mere existence of a plaintiff's

inchoate cause of action against one party for breach of contract does not foreclose an action in

11

tort against another party for all damages suffered by reason of the latter's inducement of such a breach." *Id.*; *see also Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App. 2d 177, 182 (1st Dist. Ct. App. 1977) (same).

Plaintiff argues that "the promissory note does not compel [him] to pay anything to anyone, and the note certainly does not provide that the $500,000 was to be paid at Ms. Bailey's instruction." (Pl. Resp., ECF No. 72, at PageID # 923.)  Rather, he argues that the note was "merely an instrument evidencing [] Warren's and [] Bailey's obligation to repay the $500,000 that was to be sent to the Artist Defendants." (*Id.* at PageID # 923–24.)  "The Athens action was to enforce the promissory note against those who signed it, and this case is to hold the Defendant Artists liable for their misrepresentations that ultimately induced Mr. Waldron to wire them $500,000." (*Id.*)

Here, absent additional facts, the Court is not convinced that Plaintiff's allegations in this case are "clearly inconsistent" with those made in the Athens County action.  "[T]he doctrine of judicial estoppel 'is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (quoting *Teledyne*, 911 F.2d at 1218).  Plaintiff frames the Athens case as one to enforce the Note against those who signed it—Warren and Bailey—while this case seeks to "hold the Defendant Artists liable for their misrepresentations that ultimately induced [him] to wire them $500,000." (*Id.* at PageID # 924.)  Plaintiff's allegations in this case paint a more holistic picture of this business transaction—Plaintiff paying Brown the final $500,000 owed to perform at the Event, with Bailey and Warren insuring repayment.

12

Accordingly, because judicial estoppel is to be applied with caution, the Court does not find that Plaintiff is judicially estopped from bringing his claims at this juncture.

### 2. Transfer to New York

Brown again argues that the forum selection clause contained in Brown's performance agreement with DML ("Performance Agreement") applies to this case. (Brown Mot., ECF No. 49, at PageID # 559–66.) The Court previously denied Brown's request that the Court bind Plaintiff to the forum selection clause contained in the Performance Agreement. (Order, ECF No. 37, at PageID # 475–76.) Though Plaintiff's Amended Complaint demonstrates a closer relationship with DML than what was articulated in his initial Complaint, the fact remains that Plaintiff was not a party to the Performance Agreement, and it remains true that the facts the Court must parse at this stage do not establish a close enough relationship to bind Plaintiff to the forum selection clause. The Court does not find that Plaintiff is sufficiently "closely related" to DML, and it will not bind him to the forum selection clause in the Performance Agreement. Brown's request for dismissal or a transfer to New York is **DENIED**.

### B. Brown's Rule 12(b)(6) Arguments

Brown moves this Court to dismiss each of Plaintiff's counts for failing to state a plausible claim for relief. The Court assesses each count: (1) Apparent Authority; (2) Ratification; (3) Quantum Meruit/Unjust Enrichment; (4) Promissory Estoppel; and (5) Fraud.

### 1. Count I: Apparent Authority

Plaintiff's first Count must be dismissed because it is not a cause of action. As Brown notes, "apparent authority" is a legal doctrine, rather than a tort by which one can sue. *See, e.g.*, *Rote v. Zel Custom Mfg., LLC*, 383 F. Supp. 3d 779, 789 (S.D. Ohio 2019) (referring to the "doctrine of apparent authority"). Plaintiff appears to concede as much in his response. (Pl. Resp.,

ECF No. 52, at PageID # 607 ("While it is true that the existence of an agency relationship is not a 'claim' per se . . . .").) Rather, Plaintiff argues that Count I was attempting to allege an agency relationship between Boubacar and Brown. (*Id.*)

Brown argues that Plaintiff fails to plead a plausible agency relationship. The Court assesses those arguments in discussing Plaintiff's substantive counts for unjust enrichment, promissory estoppel, and fraud.

For these reasons, Count I is **DISMISSED**.

### 2.    Count II: Ratification

As with Count I, Count II alleging "Ratification" fails to state a claim upon which relief may be granted because "Ratification" is not a cause of action. The Court will address whether Plaintiff plausibly pleads a ratification theory in support of his claims for unjust enrichment, promissory estoppel, and fraud in its analysis of those claims.

For these reasons, Count II is **DISMISSED**.

### 3.    Count III: Quantum Meruit/Unjust Enrichment

This Court denied Brown's motion to dismiss Plaintiff's original unjust enrichment claim, finding that Plaintiff had plausibly pled that Brown received and retained a benefit, and that it would be unjust to retain such a benefit under these circumstances. (Order, ECF No. 37, at PageID # 481–82.)

Now, Brown argues that Plaintiff's unjust enrichment claim fails because he does not plead facts to plausibly suggest the existence of an agency relationship. Brown argues that because Plaintiff does not plausibly allege that Boubacar was acting as an agent for Brown or CBE, Plaintiff's unjust enrichment and promissory estoppel claims rest on what a non-party said. (Brown Mot., ECF No. 49, at PageID # 575.) As Brown notes, "Plaintiff's theory . . . rests solely

14

on what Mr. Boubacar said and did," and not what Brown or CBE communicated to Plaintiff. (Brown Mot., ECF No. 49, at PageID # 571.)

First, the Court addresses apparent authority. "Under Ohio law, apparent agency has two elements: (1) the defendant made representations leading the plaintiff to reasonably believe that the wrongdoer was operating as an agent under the defendant's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship to his detriment." *S.C. v. Wyndham Hotels & Resorts, Inc.*, No. 1:23-CV-00871, 2024 U.S. Dist. LEXIS 60838, at *15–16 (N.D. Ohio Apr. 2, 2024); *see also Master Consol. Corp. v. Bancohio Natl. Bank*, 61 Ohio St. 3d 570, 576–77 (1991) ("[A] principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority.").

Brown argues that Plaintiff did not allege facts sufficient to demonstrate apparent authority. (Brown Mot., ECF No. 49, at PageID # 571.) Specifically, Brown contends that Plaintiff alleges no facts demonstrating that Brown or CBE held Boubacar out to the public as possessing authority to act on their behalf. The Court agrees that Plaintiff does not allege facts supporting his legal conclusion that Brown held Boubacar out to the public as an agent and alleges no communications between himself and Brown or CBE. Accordingly, Plaintiff has not sufficiently pled apparent authority.

Plaintiff has, however, sufficiently pled an agency relationship more broadly. "[T]he key factor in determining the existence of an agency relationship is the right of control vested in the principal." *Wyndham Hotels & Resorts, Inc.*, 2024 U.S. Dist. LEXIS 60838, at *12 (collecting cases). Brown argues that the Amended Complaint lacks sufficiently specific allegations to establish an agency relationship, such as whether Boubacar received compensation from Brown,

that Brown was controlling Boubacar, that Brown directed Boubacar to collect money, that Boubacar was involved in this transaction at Brown's direction, or that Brown was aware of what Boubacar was discussing with Plaintiff. (Brown Reply, ECF No. 55, at PageID # 639.)

Plaintiff alleges that Boubacar represented he was working on behalf of Brown to finalize the payment, that Boubacar pressured him to pay the $500,000 to confirm Brown's attendance at the Event, that Boubacar knew sensitive information such as bank account information and contractual details involving the Event. Plaintiff provides an affidavit from Warren, attesting that Boubacar contacted him multiple times to confirm payment for the Event. (Warren Aff., ECF No. 71-1, at PageID # 835.) Warren would join Plaintiff on the calls, and Boubacar confirmed that receiving Plaintiff's $500,000 would secure Brown's performance at the Event. (*Id.*) Plaintiff wired the funds directly to Brown's team, per Boubacar's instructions. (*Id.* at PageID # 835–36.)

Taking these allegations as true, as this Court must do at the motion to dismiss stage, Plaintiff's Amended Complaint plausibly alleges that Boubacar was acting as Brown's agent and suggests that Brown had control over Boubacar. Thus, while these allegations do not support an "apparent authority" agency relationship because Plaintiff does not allege how Brown held Boubacar out as an agent, they do support inferences that he was Brown's agent. Should discovery reveal that these allegations are unsupported, or additional facts are discovered that do not support an agency relationship, Brown may raise such arguments at the summary judgment stage.

Brown similarly argues that Plaintiff fails to plausibly allege a "ratification" theory in support of his claims. (Brown Mot., ECF No. 49, at PageID # 573.) Brown argues that because Plaintiff has not alleged that Brown or CBE had full knowledge of the facts and ratified Boubacar's action demonstrating "an intention to approve an earlier act performed by his agent which did not

16

bind him," Plaintiff's ratification theory fails. (*Id.* (quoting *McKee v. McCann*, 102 N.E.3d 38, 51 (Ohio Ct. App. 2017).)

The Court finds that Plaintiff has pled a plausible ratification theory. This Court has previously articulated the rules for ratification as follows:

> "A principal ratifies the unauthorized act of his agent if the 'principal, with full knowledge of the facts, conducts himself in a way which manifests his intention to approve an earlier act performed by his agent which did not bind him.'" Knowledge need not be actual; rather, the knowledge component of ratification also includes what the principal should have known. In addition, "[r]atification by the principal can be demonstrated by the retention of the benefits of the transaction." With retention of the benefit comes retention of liability.

*Kirby Devs. LLC v. XPO Glob. Forwarding, Inc.*, No. 2:18-CV-500, 2021 U.S. Dist. LEXIS 170709, at *58 (S.D. Ohio Sept. 9, 2021) (Morrison, J.) (citations omitted). Plaintiff's alleged interactions with Boubacar, payment to Brown, and Brown's subsequent retention of that payment plausibly allege ratification.

Because the Court rejects Brown's arguments that relate to whether Plaintiff alleges a plausible agency relationship and ratification, the Court **DENIES** Brown's motion to dismiss Count III.

### 4. Count IV: Promissory Estoppel

The Court previously denied Brown's motion to dismiss Plaintiff's promissory estoppel claim, finding that Plaintiff's claim was not barred by any contract-based claim. (Order, ECF No. 37, at PageID # 483.) Brown now argues that, like with the unjust enrichment claim, Plaintiff fails to plead a plausible agency relationship to support a promissory estoppel claim. For the reasons the Court found Plaintiff plausibly pleads an agency relationship and ratification in assessing Count III, the Court finds the same here. Accordingly, Brown's motion to dismiss Count IV is **DENIED**.

### 5.    Count V: Fraud

The Court previously dismissed Plaintiff's fraud claim without prejudice, permitting Plaintiff to file his Amended Complaint to include specific details regarding who made fraudulent misrepresentations and what those misrepresentations were.

Now, Brown argues that the Court should dismiss Plaintiff's fraud claim for two reasons. First, Brown argues that Plaintiff does not plead fraud-specific damages. Second, Brown argues that Plaintiff does not plead each element of fraud with particularity.

*First*, fraud-specific damages. Brown argues that Plaintiff's Amended Complaint does not plead facts suggesting that he suffered damages separate from the $500,000 payment forming the basis of his quasi-contract claims. (Brown Mot., ECF No. 49, at PageID # 576 (quoting *Ebenisterie Beaubois Ltee. v. Marous Bros. Constr., Inc.*, No. 02-CV-985, 2002 U.S. Dist. LEXIS 26625, at *29 (N.D. Ohio Oct. 17, 2002) ("A tort action [such as fraud] will lie only if a party breaches a duty separate and distinct from the duties that arise under the contract.").) Plaintiff counters that a quasi-contract is not a contract under Ohio law and argues that Brown cites no case law providing that this fraud-specific damages requirement applies to quasi-contract claims as well. (Pl. Resp., ECF No. 52, at PageID # 614.)

Brown previously raised the same arguments in its initial motion to dismiss briefing, which the Court rejected when dismissing Plaintiff's claim for lack of particularity. (*See* Order, ECF No. 37, at PageID # 484–85 (rejecting Brown's quasi-contract related arguments).) This Court previously rejected Brown's arguments that the duty owed to Plaintiff sounded in contract and therefore barred his fraud claim. The Court reiterates its ruling here.

*Second*, Plaintiff's second attempt to plead the alleged fraud with particularity. The Court previously laid out a fraud claim's specificity requirements. "Pursuant to Federal Rule of Civil Procedure 9(b), 'a party must state with particularity the circumstances constituting fraud or

mistake.'" *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (quotation omitted).  The Sixth Circuit interprets "Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* (citing *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559 (6th Cir. 2003)).

The Court listed several deficiencies in Plaintiff's original complaint: Plaintiff did not mention who made fraudulent misrepresentations, who contacted him, or which Defendant employed which agents.  (Order, ECF No. 37, at PageID # 485–86 ("This last failing is particularly problematic, as plaintiffs in the Sixth Circuit, must plead fraud on a 'defendant-by-defendant basis, and not generally as to all defendants.'").)  Plaintiff's Amended Complaint alleges that he communicated with Boubacar over the phone, who represented he was working on behalf of both Brown and CBE to finalize the $500,000 payment to secure Brown's performance at the Event.  (Am. Compl., ECF No. 46, ¶ 9.)  Plaintiff further alleges that Brown never intended to appear or perform at the Event because he was bound by another promoter's "vicinity clause," which barred him from performing at other events in the area.  (*Id.* ¶ 15.)

Because the Court found above that Plaintiff plausibly pled an agency relationship between Boubacar and Brown, and Plaintiff cured his deficient fraud claim in his initial pleading by identifying who contacted him, who made the fraudulent misrepresentations, and who the misrepresentations were made on behalf of, the Court finds that Plaintiff has pled his fraud claim with particularity to survive a motion to dismiss.  (*See* Order, ECF No. 37, at PageID # 485–86.)

Accordingly, the Court **DENIES** Brown's motion to dismiss Plaintiff's fraud claim.

## III.     DML's Arguments

DML raises three arguments specific to the claim against it: (A) res judicata bars Plaintiff's action against it; (B) this Court lacks personal jurisdiction over DML; and (C) Plaintiff has not stated a claim for relief.  The Court considers each in turn.

### A.     Res Judicata

DML claims that res judicata bars Waldon's claims against it. (DML Reply, ECF No. 74-1, at PageID # 958.)  The Court rejects DML's claim.

Res judicata is an equitable doctrine that bars successive suits seeking recovery for the same injury.  "Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Hivner v. Active Elec., Inc.*, 878 F. Supp. 2d 897, 901–02 (S.D. Ohio 2012) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  The Sixth Circuit has enumerated four elements for res judicata to apply: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Id.* at 902 (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006)).

Both DML and Plaintiff make few arguments regarding res judicata.  DML claims that if Bailey and/or Warren were acting as agents of DML in securing the $500,000 loan, "then the Final Judgment [Plaintiff] secured in the state court action against Bailey and Warren precludes further litigation arising out of the debt against Bailey, Warren and their privies—which would necessarily include DML if it were the principal as [Plaintiff] contends."  (DML Reply, ECF No. 74-1, at PageID # 958.)

20

Plaintiff's sole response to DML's res judicata argument is that DML presents no evidence to establish it is in privity with Bailey, so DML's argument fails on the "same parties or their privities prong." (Pl. Resp., ECF No. 71, at PageID # 832.) This argument fails to recognize that Plaintiff's Amended Complaint alleges that Warren and Bailey were acting with or on behalf of DML. (Am. Compl., ECF No. 46, ¶ 1 (alleging that the Event was set up by Warren and Bailey, "who were working with or on behalf of Defendant DML").) And, Plaintiff submits an affidavit signed by Charles Warren, who attests that he worked with Bailey as a promoter for DML to set up the Event. (*See* Warren Aff., ECF No. 71-1, at PageID # 834.) Yet, DML was not joined as a party in the Texas state court case, defeating application of the res judicata doctrine.

Accordingly, the Court **DENIES** DML's motion to the extent it seeks to bar Plaintiff's claims under the doctrine of res judicata.

### B.     Personal Jurisdiction

DML argues it should be dismissed from this case for lack of personal jurisdiction. (DML Mot., ECF No. 63, at PageID # 708.) The Court rejects DML's arguments.

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, for a court to constitutionally exercise personal jurisdiction over a defendant, the defendant must "have sufficient 'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'" *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (quoting *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). There are two kinds of personal jurisdiction: "(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Id.* at 712–13. Here, only specific jurisdiction is at issue.

21

For the court to exercise specific jurisdiction over a defendant, "[t]he plaintiff's claims 'must arise out of or relate to the defendant's contacts with the forum.'" *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021).

The Court may only exercise jurisdiction over DML if (1) Ohio's long-arm statute confers jurisdiction, and (2) doing so would not violate due process conferred by the Fourteenth Amendment. DML argues that both requirements are lacking. *See Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d 803, 818 (S.D. Ohio 2023).[3]

The Court first considers whether exercising specific jurisdiction over DML would satisfy the requirements of federal due process. To demonstrate specific jurisdiction, a plaintiff must show three requirements:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721–24 (6th Cir. 2000)).

Here, Plaintiff alleges that Warren and Bailey were working with or on behalf of DML, that Warren contacted Plaintiff about paying $500,000 for the event, and Warren and Bailey contracted with Plaintiff to obtain financing for the Event.[4] Warren attended multiple calls with

---

[3] While DML argues that Ohio's long-arm statute is not coterminous with the federal constitution, this Court has recently explained that there is uncertainty concerning the reach of Ohio's long-arm statute. *Arnold*, 681 F. Supp. 3d at 814, fn. 2 ("For the purposes of determining jurisdiction, the Court will assume—without deciding—that analyzing jurisdiction under Ohio's long-arm statute remains a separate inquiry. This assumption ultimately has no material effect on the adjudication of the jurisdictional issues Defendants' motions present . . . . [T]he Court's resolution of the jurisdictional challenges remains the same regardless of whether the Court collapses Ohio's standard into the federal standard.").

[4] Plaintiff contends in his briefing that "[t]here is nothing in the Amended Complaint or the outside materials to show that Mr. Warren was an employee, agent, or owner of DML." (Pl. Resp., ECF No. 52, at PageID # 605.) If Plaintiff is conceding that Warren is not an agent of DML, he may

22

Plaintiff. These facts demonstrate that DML, through its agents, were actively seeking financing from Plaintiff, who is an Ohio resident. Warren himself is an Ohio resident. Such activity easily satisfies the requirements for purposeful availment.

Those same allegations demonstrate that DML has minimum contacts with Ohio, such that specific jurisdiction exists. The subject matter of Plaintiff's lawsuit—his payment in support of the Event and failure to receive payment in return—relate to DML's contacts with Ohio. As alleged, Bailey and Warren contacted Plaintiff, who is an Ohio resident, to partially finance this event. Such allegations clearly demonstrate that DML, through Bailey and Warren, purposefully directed their conduct towards Ohio.

Exercising jurisdiction over DML also satisfies Ohio's long-arm statute. The Ohio long-arm statute allows for specific personal jurisdiction over any person who conducts business in the state of Ohio: "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state[.]" Ohio Rev. Code § 2307.382(A)(1). Thus, personal jurisdiction under the statute will lie if (1) the defendant has "transacted any business" in Ohio "directly or by an agent," and (2) the case deals with a "cause of action arising from" the business transacted in Ohio. The Court finds that DML's contact with Plaintiff—through Warren and Bailey—constituted transacting business in Ohio, and Plaintiff's declaratory judgment action against DML arises from this business transaction.

Finally, exercising personal jurisdiction over DML would not offend traditional notions of fair play and substantial justice. *See Arnold*, 681 F. Supp. 3d at 817 ("where the first two prongs of the Due Process inquiry are met, as is the case here, 'an inference of reasonableness arises' and

---

do so. However, allegations that Warren affirmatively reached out to Plaintiff to obtain financing for the Event that DML sought to pay Brown with may plausibly suggest an agency relationship.

'only the unusual case will not meet this third criteria'" (*quoting Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007)) (internal quotation marks omitted). Ohio has a clear interest in adjudicating disputes involving its citizens who allegedly finance events and receive no payment in return, even if those events occur outside state lines. "[I]t cannot be disputed that Ohio has an interest in resolving a suit brought by one of its residents against Defendants that purposefully availed themselves of acting and causing consequences in Ohio." *Scotts Co. v. Aventis S.A.*, 145 Fed. Appx. 109, 115 (6th Cir. 2005). And while DML claims an extraordinary burden litigating in this Court, it affirmatively sought financing in Ohio.

DML makes several arguments regarding the most convenient forum for it to defend this case—Texas. There is an ongoing state court case involving these same parties, absent Plaintiff. The Court addresses these points in section IV, *infra*.

For these reasons, the Court finds that it may exercise personal jurisdiction over DML and therefore **DENIES** DML's motion to dismiss for lack of personal jurisdiction.

### C. Failure to State a Claim

DML argues that Plaintiff's declaratory judgment claim should be dismissed for failing to state a claim. In Count VI, Plaintiff seeks a declaratory judgment that he paid $500,000 to Brown at their instruction and that DML does not have an interest in the $500,000. The Court ordered Plaintiff to join DML in this action. (ECF No. 37.)

DML claims there is no actual controversy between it and Plaintiff, stating that it is not asserting an independent interest in any money owed to Plaintiff by Brown. (DML Reply, ECF No. 74-1, at PageID # 950.) Rather, DML states that it is "seeking to recover Bailey's $500,000 loan proceeds from CBE, Brown and other liable parties involved in the loss of those funds." (*Id.*) But later in its Reply, DML argues it has no connection with Ohio—such that this Court cannot

exercise personal jurisdiction over it—because Bailey did not sign the Note acting as DML's agent. (*Id.* at PageID # 953.)

DML does not explain how both allegations can be true; specifically, how it can disclaim an interest in the funds, while also maintaining an action *on Bailey's behalf* to obtain those funds. As Plaintiff argues, "[c]learly, the payment on the Note was intended to come from the proceeds of the One Night Only Tour event." (ECF No. 72, at PageID # 919.) Because DML is actively litigating to obtain those funds in Texas state court, there remains an ongoing controversy regarding who is entitled to the $500,000 at issue.

The Court **DENIES** DML's motion to the extent it argues that Plaintiff does not plead a plausible claim.

## IV. Whether a Stay is Warranted

Brown previously moved this Court for a stay. This Court denied such request as moot because it required Plaintiff to add DML as a necessary party, which Plaintiff has done. However, in light of the new information concerning Plaintiff's state court judgment against Warren and Bailey, the Court finds that a stay of this litigation is prudent and exercises its inherent authority to do so here.

"In determining whether to grant a motion for a stay, a court may consider (1) the potentiality of another case having a dispositive effect on the case to be stayed, (2) the judicial economy to be saved by waiting on a dispositive decision, (3) the public welfare, and (4) the hardship/prejudice to the party opposing the stay, given its duration." *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 931 (N.D. Ohio 2021) (quoting *Bounty Minerals, LLC v. Chesapeake Expl.*, LLC, No. 5:17CV1695, 2017 WL 5971699, at *3 (N.D. Ohio 2017)). These factors weigh in favor of a stay, particularly given the unique procedure of this case.

As Brown has correctly pointed out, this case and the Texas Case concern the same concert, will involve the same defenses, and DML and Plaintiff seek to recover the same $500,000 in each case. (Brown's First Mot. to Dismiss, ECF No. 25, at PageID # 254–56.) Now, the Court is aware that Plaintiff has obtained a judgment in Ohio state court which, if paid to him, would likely render this action moot. Of course, he has not yet been paid. The Texas Case is still pending, involves the same parties (minus Plaintiff), and is further into discovery than this case. This federal forum is less convenient, in balance, because the majority of witnesses will be in Texas and the Event was set to occur in Texas. Jurisdiction in Texas was obtained prior to this action.

The Court hopes to avoid further "piecemeal litigation." Indeed, Plaintiff has already proceeded with piecemeal litigation by suing Warren and Bailey in Ohio state court—and obtaining a judgment against them.

The alleged facts surrounding this case are simple, but the procedure is complicated. Plaintiff has obtained judgment against two persons in Ohio state court who signed a cognovit note with him; DML and other entities are suing Brown in Texas state court over his failure to perform at the Event; and one of the defendants in Plaintiff's state court case is appealing that judgment. Thus, this is the third lawsuit, and the fourth court, to hear the case.

At the risk of inconsistent judgments, duplicative litigation, and foreclosing plausible avenues for relief without sufficient information, the Court finds that a stay is prudent. These same parties—except for Plaintiff—are currently litigating the same issues in Texas state court. The decisions in the Texas case will have consequences for whether Plaintiff will be able to obtain his relief from Bailey directly, or if he will need to pursue relief from Brown or DML. DML alleges it is suing Brown on Bailey's behalf to recover the precise $500,000 owed to Plaintiff, and as Brown has noted, its defenses will be the same in this and the Texas Case. The Texas Case issues

26

have consequences for this action. Because that case has progressed, and Plaintiff has already obtained an Ohio state court judgment against Warren and Bailey, the Court believes the most prudent route is to temporarily stay this action pending resolution of the Texas Case.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** Brown's Motion to Dismiss (ECF No. 49), **GRANTS** Brown's Motion for Leave to File Supplemental Brief (ECF No. 70), and **DENIES** DML's Motion to Dismiss (ECF No. 63). The Court will **STAY** this litigation for six months. The Parties shall file a Joint Notice within three months updating the Court of the status of the Texas case and Bailey's appeal of Plaintiff's state court judgment.

CBE Touring, LLC and DML are **ORDERED** to file corrected Disclosure Statements pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.1.1, identifying each member of their LLCs. Defendants shall file their disclosure statements within **fourteen days** from the date of this Order.

The Clerk is **DIRECTED** to **STAY** this case.

**IT IS SO ORDERED.**


**9/11/2024**                                    **s/Edmund A. Sargus, Jr.**

**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                  **UNITED STATES DISTRICT JUDGE**